No. 20-1891

# In the United States Court of Appeals for the Seventh Circuit

ALFRED BOURGEOIS,
PETITIONER-APPELLEE

v.

T.J. WATSON, WARDEN, AND
UNITED STATES OF AMERICA,
RESPONDENTS-APPELLANTS

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, D. CT. NO. 2:19-CV-392 (HON. JANE MAGNUS-STINSON)
**(CAPITAL CASE)**

**OPENING BRIEF FOR THE UNITED STATES**

JOSH J. MINKLER
    United States Attorney
    Southern District of Indiana

PAULA C. OFFENHAUSER
    Assistant United States Attorney
    Southern District of Texas

BRIAN A. BENCZKOWSKI
    Assistant Attorney General

CHRISTOPHER J. SMITH
    Attorney
    Appellate Section
    Criminal Division
    United States Department of Justice
    950 Pennsylvania Ave., NW
    Washington, DC 20530
    (202) 532-4154
    Christopher.J.Smith@usdoj.gov

## STATEMENT REGARDING ORAL ARGUMENT

This is an expedited appeal of the district court's order granting a stay of execution in a capital case. *See* 7th Cir. R. 22(e)(1) ("The panel's decision shall be made without undue delay."). In the government's view, the district court's error is clear, and the government therefore does not request oral argument insofar as it would delay this Court's resolution of the appeal. The government stands ready to present oral argument at the earliest opportunity, however, if argument would assist the Court's expeditious resolution of the case.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...................................................... i

TABLE OF AUTHORITIES ............................................................................... v

JURISDICTIONAL STATEMENT.................................................................... 1

ISSUE PRESENTED ...................................................................................... 1

STATEMENT OF THE CASE ......................................................................... 2

    I.    Procedural History ...................................................................... 2

    II.    Statement of Facts........................................................................ 4

        A.    Bourgeois Abuses and Murders His Two-Year-Old Daughter ........................................................................... 4

        B.    Bourgeois Is Convicted of First-Degree Murder and Sentenced to Death .............................................................. 6

        C.    The Texas District Court Denies Bourgeois's 28 U.S.C. § 2255 Motion, Rejecting Bourgeois's Intellectual-Disability Claim........................................................................... 8

        D.    The Fifth Circuit Denies Bourgeois's Motion to Relitigate His Intellectual-Disability Claim in a Second 28 U.S.C. § 2255 Motion ........................................................................ 9

        E.    Bourgeois Files a 28 U.S.C. § 2241 Habeas Petition in the Southern District of Indiana in a Second Attempt to Relitigate His Intellectual-Disability Claim ..................................... 10

    III.    Rulings Under Review ................................................................ 11

        A.    The District Court Grants Bourgeois a Stay of Execution........... 11

        B.    The District Court Denies Reconsideration ................................. 13

SUMMARY OF ARGUMENT ....................................................................... 14

ARGUMENT ............................................................................................... 16

BOURGEOIS CANNOT SUCCEED IN HIS SECOND ATTEMPT TO RELITIGATE HIS INTELLECTUAL-DISABILITY CLAIM, AND THE DISTRICT COURT THUS ERRED IN GRANTING A STAY OF EXECUTION ...................................................................... 16

    A.    Standard of Review.................................................................. 16

    B.    Bourgeois Cannot Establish the Likelihood of Success on the Merits Necessary to Warrant a Stay ........................................... 17

        1.    The District Court Erred in Finding that Bourgeois's Claim May Proceed Under 28 U.S.C. § 2241 ...................... 18

            a.    Background: The Saving Clause................................ 18

            b.    Bourgeois's Claim Does Not Meet the Saving Clause's Requirements................................. 24

            c.    Bourgeois's Attempt to Frame His Claim as Pertaining to the Execution of His Sentence Under the FDPA Does Not Alter This Conclusion................................. 27

            d.    Regardless, Bourgeois's Claim Is an Abuse of the Writ ................................. 33

        2.    The District Court Erred in Finding that Bourgeois's § 2241 Habeas Petition Can Proceed Based on an Alleged Waiver by the Government ..................................... 34

            a.    Background................................. 35

            b.    Because the Government's Arguments Encompassed the FDPA Aspect of Bourgeois's Claim, the District Court Incorrectly Found that the Government Had Waived Its Defenses................................. 36

c. Even If the Government's Response Somehow Did Not Encompass the FDPA Aspect of Bourgeois's Claim, It Was at Most a Forfeiture, and This Court Should Still Decide Whether Bourgeois's Claim May Proceed ............... 38

3. Even if Bourgeois's Habeas Petition Could Proceed Under § 2241, the District Court Still Erred in Finding that Bourgeois Has Demonstrated a Likelihood of Success in Relitigating His Intellectual-Disability Claim ..................................................................... 40

a. Background ............................................... 41

b. The District Court Erred in Concluding that Bourgeois Has Made a Strong Showing that He Is Likely to Succeed on the Merits of His Intellectual-Disability Claim ...................................... 44

c. Bourgeois's Additional Arguments Are Meritless ................................................... 45

C. The Other Stay Factors Likewise Do Not Warrant a Stay ........... 47

CONCLUSION ........................................................................... 49

CERTIFICATE OF SERVICE ..................................................... 50

CERTIFICATE OF COMPLIANCE ............................................. 51

# TABLE OF AUTHORITIES

**Cases**

*Arnaout v. Marberry*,
351 F. App'x 143 (7th Cir. 2009) ................................................................. 33

*Atehortua v. Kindt,*
951 F.2d 126 (7th Cir. 1991) ...................................................................... 32

*Atkins v. Virginia*,
536 U.S. 304 (2002) ..........................................................................passim

*Bailey v. United States*,
516 U.S. 137 (1995) .................................................................................. 19

*Blue v. Hartford Life & Acc. Ins. Co.*,
698 F.3d 587 (7th Cir. 2012) ...................................................................... 47

*Boumediene v. Bush*,
553 U.S. 723 (2008) .................................................................................. 19

*Bourgeois v. United States*,
547 U.S. 1132 (2006) ............................................................................. 2, 8

*Bourgeois v. United States*,
574 U.S. 827 (2014) ............................................................................... 2, 9

*Bruce v. Warden Lewisburg USP*,
868 F.3d 170 (3d Cir. 2017) ....................................................................... 19

*Bucklew v. Precythe*,
139 S. Ct. 1112 (2019) ..........................................................................47, 48

*Burris v. Parke*,
95 F.3d 465 (7th Cir. 1996) (en banc) ........................................................... 33

*Busby v. Davis*,
925 F.3d 699 (5th Cir. 2019) ...................................................................... 32

*Calderon v. Thompson*,
523 U.S. 538 (1998) .................................................................................. 48

*Chazen v. Marske,*
   938 F.3d 851 (7th Cir. 2019) ..............................................................21, 22, 25

*Davis v. United States,*
   417 U.S. 333 (1974) ........................................................................................ 18

*Day v. McDonough,*
   547 U.S. 198 (2006) ................................................................................... 16, 39

*Dunn v. McNabb,*
   138 S. Ct. 369 (2017) ...................................................................................... 17

*Dunn v. Price,*
   139 S. Ct. 1312 (2019) .................................................................................... 17

*Ex Parte Briseno,*
   135 S.W.3d 1 (Tex. Crim. App. 2004) .......................................................... 46

*Ford v. Wainwright,*
   477 U.S. 399 (1986) ........................................................................................ 31

*Garza v. Lappin,*
   253 F.3d 918 (7th Cir. 2001) ................................................................... 22, 26

*Granberry v. Greer,*
   481 U.S. 129 (1987) ........................................................................................ 39

*Hall v. Florida,*
   572 U.S. 701 (2014) ................................................................. 12, 30, 41, 42

*Hill v. McDonough,*
   547 U.S. 573 (2006) ................................................................................... 16, 17

*In re Bourgeois,*
   902 F.3d 446 (5th Cir. 2018) .......................................................................... 2

*In re Davenport,*
   147 F.3d 605 (7th Cir. 1998) ................................................................... 20, 21

*In re Fed. Bureau of Prisons' Execution Protocol Cases,*
   No. 1:19-mc-145, 2019 WL 6691814 (D.D.C. Nov. 20, 2019) .................. 3

*In re Federal Bureau of Prisons' Execution Protocol Cases*,
955 F.3d 106 (D.C. Cir. 2020) ................................................................ 3

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991) ................................................................................ 39

*Knight v. Florida*,
528 U.S. 990 (1999) .............................................................................. 48

*Kramer v. Olson*,
347 F.3d 214 (7th Cir. 2003) ................................................................ 26

*Krieger v. United States*,
842 F.3d 490 (7th Cir. 2016) ................................................................ 39

*Lambert v. Buss*,
498 F.3d 446 (7th Cir. 2007) .................................................17, 27, 48

*Lee v. Kelley*,
854 F.3d 544 (7th Cir. 2017) ................................................................ 16

*Light v. Caraway*,
761 F.3d 809 (7th Cir. 2014) ................................................................ 25

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*,
851 F.3d 1076 (11th Cir. 2017) (en banc) .......................................... 24

*McManus v. Neal*,
779 F.3d 634 (7th Cir. 2015) ................................................................ 46

*Middleton v. Roper*,
759 F.3d 867 (8th Cir. 2014) ................................................................ 1

*Moore v. Texas*,
137 S. Ct. 1039 (2017) ..................................................................passim

*Moore v. Texas*,
139 S. Ct. 666 (2019) ....................................................................passim

*Nelson v. Campbell*,
541 U.S. 637 (2004) .........................................................................17, 48

*Nken v. Holder,*
556 U.S. 418 (2009) .................................................................. 1, 11, 16, 47

*Nooner v. Norris,*
491 F.3d 804 (8th Cir. 2007) ................................................................ 17

*Prost v. Anderson,*
636 F.3d 578 (10th Cir. 2011) ............................................................. 24

*Queen v. Miner,*
530 F.3d 253 (3d Cir. 2008) ................................................................ 33

*Roundtree v. Krueger,*
910 F.3d 312 (7th Cir. 2018) ......................................................... 33, 34

*Smith v. Comm'r, Ala. Dep't of Corr.,*
924 F.3d 1330 (11th Cir. 2019), *petition for cert. filed*, No. 19-7745 (Feb. 24,
2020) ..................................................................................................... 26

*Teague v. Lane,*
489 U.S. 288 (1989) ...................................................................... 13, 38

*Triestman v. United States,*
124 F.3d 361 (2d Cir. 1997) ................................................................ 20

*United States v. Bourgeois,*
423 F.3d 501 (5th Cir. 2005) ................................................................. 2

*United States v. Bourgeois,*
537 F. App'x 604 (5th Cir. 2013) ........................................................... 2

*United States v. Bourgeois,*
No. 02-cr-216, 2011 WL 1930684 (S.D. Tex. May 19, 2011) ................. 2

*United States v. Carey,*
929 F.3d 1092 (9th Cir. 2019) ............................................................. 39

*United States v. Cook,*
406 F.3d 485 (7th Cir. 2005) ............................................................... 36

*United States v. Coonce,*
932 F.3d 623 (8th Cir. 2019), *petition for cert. filed*, No. 19-7862 (Mar. 3, 2020) ........ 29

*United States v. Ford,*
    683 F.3d 761 (7th Cir. 2012) ...................................................................................... 39, 40

*United States v. Freeman,*
    650 F.3d 673 (7th Cir. 2011) ............................................................................................ 17

*United States v. Garcia,*
    580 F.3d 528 (7th Cir. 2009) ............................................................................................ 38

*United States v. Hayman,*
    342 U.S. 205 (1952) .......................................................................................................... 18

*United States v. Jaimes-Jaimes,*
    406 F.3d 845 (7th Cir. 2005) ............................................................................................ 38

*United States v. Wesley,*
    422 F.3d 509 (7th Cir. 2005) ...................................................................................... 36, 38

*United States v. Wheeler,*
    886 F.3d 415 (4th Cir. 2018), *cert. denied,* 139 S. Ct. 1318 (2019) ............................. 37

*Valona v. United States,*
    138 F.3d 693 (7th Cir. 1998) ............................................................................................ 32

*Venckiene v. United States,*
    929 F.3d 843 (7th Cir.), *cert. denied,* 140 S. Ct. 379 (2019) ......................................... 17

*Webster v. Caraway,*
    761 F.3d 764 (7th Cir. 2014), *vacated sub nom. Webster v. Daniels,* 784 F.3d
    1123 (7th Cir. 2015) (en banc)........................................................................................ 37

*Webster v. Daniels,*
    784 F.3d 1123 (7th Cir. 2015) (en banc) .................................................................passim

*Williams v. Chrans,*
    50 F.3d 1358 (7th Cir. 1995) ...................................................................................... 16, 47

*Williams v. Kelley,*
    858 F.3d 464 (8th Cir. 2017) ...................................................................................... 31, 32

*Wood v. Milyard,*
    566 U.S. 463 (2012) .......................................................................................................... 39

## Statutes and Rules

18 U.S.C. § 7 .............................................................................................. 2, 6

18 U.S.C. § 922 ............................................................................................. 20

18 U.S.C. § 924 ........................................................................................ 19, 20

18 U.S.C. § 1111 .......................................................................................... 2, 6

18 U.S.C. § 3596 .......................................................................................passim

28 U.S.C. § 1292 ............................................................................................. 1

28 U.S.C. § 1651 ............................................................................................. 1

28 U.S.C. § 2241 ........................................................................................passim

28 U.S.C. § 2255 ........................................................................................passim

Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181 ........................... 30

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132,
110 Stat. 1214 ......................................................................................... 19

Fed. R. App. P. 4 ............................................................................................ 1

## Other Authorities

134 Cong. Rec. 22,993 (1988) ............................................................................ 30

136 Cong. Rec. S6873-03 (daily ed. May 24, 1990) ................................................. 31

140 Cong. Rec. 10,238 (1994) ........................................................................... 31

Executions Scheduled for Four Federal Inmates Convicted of Murdering
Children, https://www.justice.gov/opa/pr/executions-scheduled-four-
federal-inmates-convicted-murdering-children .............................................. 3

S. Rep. No. 101-170 (1989) .............................................................................. 30

## JURISDICTIONAL STATEMENT

This is an appeal from an order of the United States District Court for the Southern District of Indiana granting Petitioner-Appellee Alfred Bourgeois a stay of execution pending the disposition of his 28 U.S.C. § 2241 petition for a writ of habeas corpus. The district court (Magnus-Stinson, C.J.) entered its order granting Bourgeois's stay on March 10, 2020. App. 1-15.[1] The government moved for reconsideration of that order on March 23, 2020, Dkt. 22, and the district court denied that motion on May 27, 2020, App. 16-20. The government filed a timely notice of appeal on May 28, 2020. Dkt. 30; *see* Fed. R. App. P. 4(a)(1)(B)(i). This Court has jurisdiction to review the district court's order under 28 U.S.C. § 1292(a)(1) or § 1651.[2]

## ISSUE PRESENTED

Whether the district court abused its discretion when it granted Bourgeois a stay of execution and found that he has a strong likelihood of success on his 28 U.S.C. § 2241 habeas petition, in which Bourgeois seeks to relitigate the same intellectual-

---

[1] "App." refers to the government's appendix. "Dkt." refers to the docket entries in No. 2:19-cv-392 (S.D. Ind.), followed when appropriate by the document's page number. "S.D. Tex. Dkt." refers to docket entries in No. 2:02-cr-216 (S.D. Tex.), followed when appropriate by the document's page number.

[2] The district court's order directed the government to refrain from taking action. As such, the order is "injunctive in nature." *Middleton v. Roper*, 759 F.3d 867, 868 (8th Cir. 2014) (vacating stay of execution); *see also Nken v. Holder*, 556 U.S. 418, 428-29 (2009) (describing the difference between a stay and an injunction).

1

disability claim that he advanced, and the district court in the Southern District of Texas rejected, in his prior 28 U.S.C. § 2255 motion.

## STATEMENT OF THE CASE

### I. Procedural History

Following a jury trial in the Southern District of Texas, Bourgeois was convicted of first-degree murder on federal property, in violation of 18 U.S.C. §§ 7 and 1111. S.D. Tex. Dkt. 264. The jury unanimously recommended that Bourgeois be sentenced to death. S.D. Tex. Dkt. 299. The district court imposed that sentence, S.D. Tex. Dkt. 303, and the Fifth Circuit affirmed, *United States v. Bourgeois*, 423 F.3d 501 (5th Cir. 2005) (App. 26-34). The Supreme Court denied certiorari. *Bourgeois v. United States*, 547 U.S. 1132 (2006).

Subsequently, Bourgeois filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. S.D. Tex. Dkt. 396. The district court denied that motion and declined to issue a certificate of appealability ("COA"). *United States v. Bourgeois*, No. 02-cr-216, 2011 WL 1930684 (S.D. Tex. May 19, 2011) (unpublished) (App. 35-259). The Fifth Circuit also denied Bourgeois's application for a COA, *United States v. Bourgeois*, 537 F. App'x 604 (5th Cir. 2013) (per curiam) (unpublished) (App. 262-368), and the Supreme Court denied certiorari, *Bourgeois v. United States*, 574 U.S. 827 (2014). Thereafter, Bourgeois sought, and the Fifth Circuit denied, authorization to file a second or successive § 2255 motion. *See In re Bourgeois*, 902 F.3d 446 (5th Cir. 2018)

(App. 369-71); *see also* 28 U.S.C. § 2255(h) (requirements for authorization to file a second or successive § 2255 motion).

In July 2019, the government set Bourgeois's execution for January 13, 2020.[3] *See* Dkt. 1, at 9; Dkt. 10, at 1. On August 15, 2019, Bourgeois, who is incarcerated in Terre Haute, Indiana, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Southern District of Indiana. Dkt. 1. On March 10, 2020, the district court found that Bourgeois has a strong likelihood of success, and it granted Bourgeois's motion to stay his execution pending that court's resolution of Bourgeois's habeas petition. App. 1-15. The government moved for leave to file a surreply and sought reconsideration of the court's stay order. Dkts. 20, 21, 22. On May 27, 2020, the district court denied these motions, App. 16-20, and this appeal follows.

---

[3] Bourgeois's execution did not proceed because, on November 20, 2019, the district court presiding over the execution-protocol litigation in the District of Columbia preliminarily enjoined the government from executing Bourgeois and other plaintiffs in that action. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-145, 2019 WL 6691814 (D.D.C. Nov. 20, 2019). On April 2, 2020, the D.C. Circuit vacated that preliminary injunction. *In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020) (mandate issued June 12, 2020). The plaintiffs have petitioned for certiorari, and on June 18, 2020, the Supreme Court granted their motion to expedite consideration of the petition. *See Roane v. Barr*, No. 19-1348 (S. Ct.). The government has scheduled execution dates for four of Bourgeois's co-plaintiffs. *See* Executions Scheduled for Four Federal Inmates Convicted of Murdering Children, https://www.justice.gov/opa/pr/executions-scheduled-four-federal-inmates-convicted-murdering-children (last visited June 24, 2020).

## II.    Statement of Facts

### A.    Bourgeois Abuses and Murders His Two-Year-Old Daughter

On June 27, 2002, Bourgeois savagely beat his two-year-old daughter, JG, while on a United States Navy base. Bourgeois, a long-haul truck driver, had driven to the Corpus Christi Naval Air Station (CCNAS) in his 18-wheeler truck to make a delivery. App. 27-28. He was accompanied on the trip by his wife, Robin; the couple's daughter, AB, who was seven years old; another daughter, who was one year old; and JG, who was Bourgeois's daughter with another woman. *Id.* at 26-27. As the truck approached the warehouse on the naval base where Bourgeois was to deliver merchandise, JG tipped over her "training potty" in the truck. *Id.* at 28. Bourgeois then ordered seven-year-old AB to hand over the toddler. *Id.* at 275. After spanking her bare bottom, Bourgeois grabbed JG by the shoulders and "slammed the back of her head into the front and side window area around the dashboard four times." *Id.* at 28. As AB later described it, JG's face became "'real sad.'" *Id.* at 275. Bourgeois then directed AB to put JG next to her in the truck, where AB explained that JG "'just, like, fell asleep.'" *Id.*

Bourgeois's wife, Robin, woke up and saw that JG was motionless. App. 28. She confronted Bourgeois, asking, "'What did you do to her? She's dying,'" and demanding that Bourgeois take JG to the emergency room. *Id.* at 47-48. Bourgeois ignored that request, saying that he had to finish unloading the truck. *Id.* at 48. When Robin began to perform CPR, fluid came out of JG's mouth, and Robin told Bourgeois that he was "'going to have all of us going to jail.'" *Id.* Bourgeois instructed Robin and

4

AB to tell authorities that JG had been injured by a fall from his truck. *Id.* at 267, 275. He then removed JG from the truck and laid her alongside it, before continuing to oversee the unloading of his trailer. *Id.* at 267. Robin begged workers nearby on the military base to call for an ambulance, and she performed CPR until she was relieved by paramedics, who transported the girl to the hospital. *Id.* at 28, 42. JG died the following day. *Id.* at 28. A medical examiner testified that the cause of death was "an impact to the head resulting in a devastating brain injury." *Id.* The examiner concluded that the injuries she observed were consistent with the child's head being repeatedly slammed into a car window. *Id.*

Bourgeois's beating of JG on the naval base was the last of many that he inflicted on JG during the brief period when the child was in his custody. Bourgeois took custody of JG in May 2002, at which time JG was a happy child with no health problems. App. 26, 265. He spent the bulk of the following six weeks traveling with JG and the rest of his family in his 18-wheeler truck, during which time he subjected JG to continual abuse. *Id.* Bourgeois forced JG to "spend almost every moment," whether sleeping or waking, "on a potty chair." *Id.* at 265. Throughout that time, Bourgeois "relentlessly tortured JG by biting her all over her body, burning her, whipping her with belts, extension cords, and his hands; beating her with a baseball bat, shoes, and other objects; duct-taping her mouth; and forcing her to drink his urine from a jug that he kept in his truck." *Id.* at 266. An autopsy revealed that "JG had over 300 injuries, including at least ten different head injuries." *Id.* at 267. There were also

indications that JG had suffered sexual abuse. *Id.* at 268. Bourgeois told witnesses that he wanted JG dead "because he did not want to have to pay child support" to JG's mother. *Id.*

### B. Bourgeois Is Convicted of First-Degree Murder and Sentenced to Death

A federal grand jury charged Bourgeois with first-degree murder within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. §§ 7 and 1111(b). S.D. Tex. Dkt. 78. The government subsequently filed a Notice of Intent to Seek the Death Penalty. *See* S.D. Tex. Dkt. 79 (alleging aggravating factors).

At trial, AB testified about witnessing Bourgeois repeatedly slam JG's head against the window of his truck; Robin Bourgeois testified about waking on the CCNAS base to find JG unresponsive; and several CCNAS employees testified about interactions with Bourgeois on the base. App. 267, 275-76. Those witnesses' testimony paralleled AB's description of events before her father bashed JG's head against the truck window. *Id.* at 275-76. Other witnesses testified about Bourgeois's statements to friends, relatives, and other inmates that he had killed his daughter but was trying to make the death seem like an accident. *Id.* at 266-67 & n.13. The government also offered medical evidence that JG had died following a severe head trauma. *Id.* at 278.

The jury found Bourgeois guilty of first-degree murder within federal territorial and maritime jurisdiction. App. 29. Thereafter, at a capital sentencing hearing, the government presented extensive evidence of Bourgeois's abusive and violent past

behavior through the testimony of his children, ex-wives, girlfriends, acquaintances, and jailhouse informants. *Id.* at 269. The government also presented evidence that Bourgeois had attempted to hire another inmate to murder family members expected to testify against him, and a psychiatrist testified that Bourgeois suffered from narcissistic personality disorder and that he was likely to be violent in the future. *Id.* at 269-70. Defense counsel called several members of Bourgeois's family, who testified that he had suffered abuse as a child. *Id.* at 270. Bourgeois then testified himself, expressing sympathy for JG's family and sadness over JG's death, but he continued to deny responsibility for her murder. *Id.*

At the conclusion of the penalty phase, the jury unanimously found the relevant statutory and non-statutory aggravating factors, unanimously concluded that the aggravating factors outweighed the mitigating factors, and returned a sentence of death. App. 269-70 (discussing applicable aggravating and mitigating factors). The district court in the Southern District of Texas (the "Texas district court") sentenced Bourgeois accordingly.[4] *Id.* at 21.

The Fifth Circuit affirmed. App. 33-34. It explained that "[t]his is not a close case," and held that "Bourgeois fail[ed] to prove that there was any error . . . in any

---

[4] Bourgeois did not argue at trial that he was intellectually disabled. As one of his trial counsel later explained, "'Based on the information we had, from experts and family members, we were unaware that Mr. Bourgeois was mentally retarded, or near retardation level.'" App. 128.

aspect of his trial." *Id.* at 33. The Supreme Court subsequently denied certiorari. *Bourgeois*, 547 U.S. 1132.

### C. The Texas District Court Denies Bourgeois's 28 U.S.C. § 2255 Motion, Rejecting Bourgeois's Intellectual-Disability Claim

On May 14, 2007, Bourgeois filed a "Motion for Relief Pursuant to 28 U.S.C. Section 2255 or in the Alternative Pursuant to 28 U.S.C. 2241" in the Texas district court. S.D. Tex. Dkt. 396. He raised fourteen claims, including, as relevant here, that he cannot be executed pursuant to both *Atkins v. Virginia*, 536 U.S. 304 (2002), and the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3596(c), because he is intellectually disabled.[5] *Id.* at 3.

The Texas district court held a week-long evidentiary hearing on Bourgeois's motion, allowing him to present testimony and evidence supporting nearly all of his claims without limitation. App. 72-73, 150. Subsequently, on May 19, 2011, that court entered its order denying Bourgeois's motion. *Id.* at 35-259.

The Texas district court first recognized that Bourgeois had raised arguments based on both the Eighth Amendment and the FDPA, and the court explained that "[e]ven before *Atkins* . . . the [FDPA] mandated that '[a] sentence of death shall not be

---

[5] In *Atkins*, the Supreme Court held that "the Constitution places a substantive restriction on the State's power to take the life of a mentally retarded offender." 526 U.S. at 321 (internal quotation marks omitted). The FDPA similarly provides that "[a] sentence of death shall not be carried out upon a person who is mentally retarded." 18 U.S.C. § 3596(c).

carried out upon a person who is mentally retarded.'" App. 77 (quoting 18 U.S.C. § 3596(c)). The court then applied the *Atkins* criteria for intellectual disability (or mental retardation, as it was previously termed) as defined by the 11th edition of the American Association on Intellectual and Developmental Disabilities clinical manual ("AAIDD-11"), and the 4th edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association ("DSM-IV"). *Id.* at 79-80. It explained that these standards together "contain three indispensable criteria for arriving at a diagnosis" of intellectual disability: (1) significantly subaverage intellectual functioning; (2) related significant limitations in adaptive skill areas; and (3) the manifestation of those limitations before age eighteen. *Id.* at 80. As detailed *infra* 41-43, the Texas district court found that "Bourgeois' intellectual and adaptive functioning, while possibly low," does not establish that he is intellectually disabled. *Id.* at 129.

After rejecting Bourgeois's remaining claims, the Texas district court declined to issue a COA. App. 259. Bourgeois then sought a COA from the Fifth Circuit on three issues, not including his intellectual-disability claim. *Id.* at 271-72 & n.17 (detailing Bourgeois's claims). The Fifth Circuit denied Bourgeois's request, *id.* at 368, and on October 6, 2014, the Supreme Court again denied certiorari, *Bourgeois,* 574 U.S. 827.

**D. The Fifth Circuit Denies Bourgeois's Motion to Relitigate His Intellectual-Disability Claim in a Second 28 U.S.C. § 2255 Motion**

Four years later, on March 28, 2018, Bourgeois sought authorization from the Fifth Circuit to file a second 28 U.S.C. § 2255 motion, *see* 28 U.S.C. § 2255(h), where

he again raised his intellectual-disability claim and argued that the Supreme Court's decision in *Moore v. Texas*, 137 S. Ct. 1039 (2017) ("*Moore I*"), had rendered his claim viable. App. 369. The Fifth Circuit denied authorization. *Id.* at 371.

E. **Bourgeois Files a 28 U.S.C. § 2241 Habeas Petition in the Southern District of Indiana in a Second Attempt to Relitigate His Intellectual-Disability Claim**

On August 15, 2019, Bourgeois filed a habeas petition pursuant to 28 U.S.C. § 2241, as well as a motion to stay his execution, in the Southern District of Indiana. Dkts. 1, 3. In his petition, Bourgeois again argued that he is intellectually disabled and ineligible for the death penalty under *Atkins* and the FDPA. Dkt. 1, at 10-45.

Ordinarily, a habeas petition filed by a federal prisoner "shall not be entertained." 28 U.S.C. § 2255(e). But under the "saving clause," a federal prisoner may seek habeas relief if it "appears that the remedy by motion [under 28 U.S.C. § 2255] is inadequate or ineffective to test the legality of his detention." *Id.* Bourgeois asserted that relief is appropriate under § 2241 because, in his view, his claim relies on Supreme Court precedent (namely, *Moore I*, and *Moore v. Texas*, 139 S. Ct. 666 (2019) (per curiam) ("*Moore II*")), as well as diagnostic criteria, such as the 5th edition of the DSM ("DSM-V"), that were not available to him in his § 2255 proceeding. Dkt. 1, at 24, 68-71. Bourgeois also argued that because he challenges the execution of his sentence pursuant to the FDPA, 18 U.S.C. § 3596(c), his petition may proceed under § 2241. Dkt. 1, at 71-73.

In response to an order to show cause by the district court, Dkt. 5, the government filed a 96-page brief responding to Bourgeois's petition, Dkt. 10. The

government argued that, because Bourgeois cannot show that 28 U.S.C. § 2255 is "inadequate or ineffective" to test the legality of his detention, his § 2241 petition does not meet the requirements of the saving clause, 28 U.S.C. § 2255(e), and therefore must be dismissed. Dkt. 10, at 34-75. The government also argued that Bourgeois's habeas petition was an abuse of the writ because it attempted to relitigate the same claim that he had lost in his prior § 2255 petition. *Id.* at 66-71. And finally, the government argued that the Texas district court correctly determined that Bourgeois is not intellectually disabled. *Id.* at 76-96. As detailed *infra* 35-36, while the government responded at length to Bourgeois's intellectual-disability claim, it did not specifically address his Eighth Amendment and FDPA arguments as separate claims. *See generally* Dkt. 10.

## III. Rulings Under Review

### A. The District Court Grants Bourgeois a Stay of Execution

On March 10, 2020, the district court granted Bourgeois's motion to stay his execution pending the disposition of his habeas petition. App. 1-13. The court recognized that Bourgeois had previously raised the same claims in his § 2255 motion, namely "that both the FDPA and the Eighth Amendment under *Atkins* bar his execution because he is intellectually disabled." *Id.* at 3. But, after citing the *Nken v. Holder*, 556 U.S. 418, 434 (2009), factors for granting a stay, the district court concluded that Bourgeois had made a strong showing that he is likely to succeed on the merits of his claim. App. 4-5. The court explained that the government had focused its response on Bourgeois's *Atkins* arguments and did not mention the FDPA. *Id.* at 5-6. In its

view, the government's "failure to address the [FDPA] claim was more intentional than inadvertent." *Id.* at 6. As such, the court found that the government had waived any argument that Bourgeois's FDPA claim cannot proceed under § 2241. *Id.*

Turning to the merits of Bourgeois's FDPA claim, the district court found that the "only apparent difference between an *Atkins* claim and an FDPA claim is the legal source—the Constitution and a statute, respectively." App. 7. It thus applied *Atkins*'s intellectual-disability standards and found that Bourgeois had made a strong showing of intellectual disability.[6] *Id.* at 7-8 (citing *Hall v. Florida*, 572 U.S. 701, 722 (2014)). Among other things, the court noted Bourgeois's IQ score of 70 (not adjusted for the "Flynn Effect"[7]) and 68 (adjusted for the "Flynn Effect"); evidence of adaptive deficits; and a report from a doctor that the onset of Bourgeois's deficiencies began before age eighteen. *Id.* at 8-9.

Turning to the other stay factors, the district found that Bourgeois would suffer irreparable harm absent a stay, and that the government had a diminished interest in enforcing the judgment because it "did not schedule [Bourgeois's] execution for nearly

---

[6] The court did not address Bourgeois's constitutional arguments (including whether the claim could pass through the saving clause) because, in its view, Bourgeois was entitled to a stay based on his FDPA arguments. App. 5 n.3.

[7] As the district court described it, the Flynn Effect describes research that "'has shown that [IQ] scores will tend to become inflated as times goes on when you're using an old test,'" so there are "'formulas [that] have been developed to . . . give you an idea of how much the test score will be inflated.'" App. 8 n.6.

six years, and had not set any executions for fifteen years." App. 10-11. It also concluded that "the public interest favors ensuring that [Bourgeois] is not unlawfully executed." *Id.* at 11. The court therefore granted the stay and indicated that it would set a hearing on the merits of Bourgeois's claim. *Id.* at 12.

### B. The District Court Denies Reconsideration

Following the district court's decision, the government sought leave to file a surreply on the FDPA issue and moved the district court for reconsideration of its stay order. Dkts. 20, 21, 22. On May 27, 2020, the district court denied those motions. App. 16-20. The court construed the government's motion for reconsideration as a Federal Rule of Civil Procedure 59(e) motion to alter or amend the judgment, *id.* at 16-17, and rejected each of the government's arguments in turn. It found that the government had waived a saving-clause defense as to Bourgeois's FDPA arguments because Bourgeois's *Atkins* and FDPA claims were distinct, and the government did not address Bourgeois's FDPA argument. *Id.* at 18. It also found that the government had waived any arguments based on *Teague v. Lane*, 489 U.S. 288 (1989), and the abuse-of-the-writ doctrine as to Bourgeois's FDPA claim because, in the court's view, the government had limited these arguments in its brief to Bourgeois's constitutional claim. *Id.* at 19.[8]

---

[8] The court also denied the government's motion for leave to file a surreply. App. 19.

13

This appeal follows.

## SUMMARY OF ARGUMENT

In his 28 U.S.C. § 2241 habeas petition, Bourgeois attempts to relitigate the exact intellectual-disability claim that he raised and lost in the Southern District of Texas. He presents the same evidence in support of his claim, with no relevant and retroactive intervening decisions of the Supreme Court. As such, Bourgeois cannot succeed on the merits of his habeas petition, and the other stay factors do not favor him. This Court should therefore vacate the stay of execution entered by the district court.

1. Bourgeois cannot show a strong likelihood of success on his habeas petition because it is barred by the § 2255(e) saving clause and the abuse-of-the-writ doctrine, and the district court was wrong to let his claim advance on a waiver theory. Moreover, Bourgeois's claim is substantively meritless.

*First*, Bourgeois's intellectual-disability claim cannot pass through the saving clause, 28 U.S.C. § 2255(e), which allows a federal prisoner to seek habeas relief only if a 28 U.S.C. § 2255 motion "is inadequate or ineffective to test the legality of his detention." Bourgeois's case presents none of the circumstances which this Court has held satisfy this provision. Bourgeois cannot evade these requirements by attempting to style his claim as challenging the execution of his sentence under the FDPA, 18 U.S.C. § 3596(c). At bottom, his claim is not only that his death sentence cannot legally be carried out, but also that it was illegal when it was imposed. Therefore, however framed, Bourgeois is attempting to relitigate the same claim that he previously lost, and

14

even if such a claim could somehow evade the saving clause, it should still have been dismissed as an abuse of the writ.

*Second*, the district court erred when it did not consider these arguments and instead allowed Bourgeois's claim to proceed based on its finding that the government had waived its response to Bourgeois's FDPA arguments. The government argued at length in its response that Bourgeois's intellectual-disability claim could not proceed based on the saving clause and the abuse-of-the-writ doctrine. The government did not intentionally waive these arguments as they pertain to the FDPA, and nothing in the record suggests otherwise. Regardless, even if the district court were correct that the government's response did not encompass Bourgeois's FDPA arguments, it was at most a forfeiture, and this Court should decide the issue.

*Third*, regardless of any procedural issues, Bourgeois has not demonstrated a likelihood of success on the merits of his underlying intellectual-disability claim, and the district court erred in finding otherwise. In less than two pages of analysis in its stay order and with no new evidence before it, the court below cast aside the Texas district court's prior adjudication of the same claim. Contrary to the district court's conclusion, the Texas district court correctly denied Bourgeois's claim, and Bourgeois's arguments to the contrary are meritless.

2. The other stay factors also do not favor Bourgeois. Because his claim is meritless, a stay would, at most, delay the imposition of judgment, and doing so would

be contrary to the public interest.  Specifically, the government, the victim's family, and the public have a strong interest in finality and carrying out the district court's judgment.

## ARGUMENT

## BOURGEOIS CANNOT SUCCEED IN HIS SECOND ATTEMPT TO RELITIGATE HIS INTELLECTUAL-DISABILITY CLAIM, AND THE DISTRICT COURT THUS ERRED IN GRANTING A STAY OF EXECUTION

### A.     Standard of Review

"A stay of execution is an equitable remedy" and "is not available as a matter of right."  *Lee v. Kelley*, 854 F.3d 544, 546 (7th Cir. 2017) (per curiam) (internal quotation marks omitted).  A defendant seeking a stay of execution "must satisfy all of the requirements for a stay."  *Hill v. McDonough*, 547 U.S. 573, 584 (2006).  A stay applicant must demonstrate that he has a strong likelihood of success on the merits, that he is likely to suffer irreparable harm in the absence of a stay, and that the balance of interests (the harm to the applicant and the interests of the public) weigh in favor of a stay.  *See Nken v. Holder*, 556 U.S. 418, 434-36 (2009).  The mere possibility of relief is not enough; the applicant must show that he has a strong likelihood of succeeding on the merits.  *Id.* at 434.  In the capital context, irreparable injury is taken as established.  *See, e.g.*, *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (per curiam).  But the applicant must satisfy all of the other "requirements for a stay, including a showing of a significant possibility of success on the merits."  *Hill*, 547 U.S. at 584.  A court "must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought

at such a time as to allow consideration of the merits without requiring entry of a stay.'"

*Id.* (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)).

In short, the relevant Supreme Court decisions "emphasize two critical factors in evaluating whether a stay of execution should issue: (1) whether the inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits." *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (per curiam). The Supreme Court has repeatedly and recently vacated stays entered by lower courts on both grounds. *See, e.g.*, *Dunn v. Price*, 139 S. Ct. 1312 (2019) (delay); *Dunn v. McNabb*, 138 S. Ct. 369 (2017) (success on the merits).

This Court reviews a district court's decision on a stay for an abuse of discretion. *See Venckiene v. United States*, 929 F.3d 843, 853 (7th Cir.), *cert. denied*, 140 S. Ct. 379 (2019); *see also, e.g.*, *Nooner v. Norris*, 491 F.3d 804, 807 (8th Cir. 2007) (applying standard to a stay of execution). A "district court abuses its discretion when it makes an error of law or when it makes a clearly erroneous finding of fact." *United States v. Freeman*, 650 F.3d 673, 678-79 (7th Cir. 2011).

**B.    Bourgeois Cannot Establish the Likelihood of Success on the Merits Necessary to Warrant a Stay**

Bourgeois's intellectual-disability claim cannot pass through the saving clause, 28 U.S.C. § 2255(e), and even if it could, it is still an abuse of the writ. Moreover, even setting aside the procedural deficiencies of Bourgeois's habeas petition, the Texas district court correctly concluded that Bourgeois has not shown that he developed an

intellectual disability before the age of eighteen, and no different result is warranted here. The district court below was therefore wrong to find that Bourgeois has a likelihood of success on his claim.

**1. The District Court Erred in Finding that Bourgeois's Claim May Proceed Under 28 U.S.C. § 2241**

a. Background: The Saving Clause

Prior to 1948, federal prisoners could collaterally attack a final judgment by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Habeas petitions by federal prisoners collaterally attacking their convictions or sentences under § 2241 had to be filed in the judicial district in which the prisoner was confined, creating significant administrative problems. *See United States v. Hayman*, 342 U.S. 205, 211-14 (1952). In 1948, in order to alleviate these problems, Congress created a substitute "motion" remedy for federal prisoners, codified at 28 U.S.C. § 2255, which channeled collateral attacks by federal prisoners to the "more convenient forum" of the sentencing court, *id.* at 219, while affording a remedy "identical in scope to federal habeas corpus," *Davis v. United States*, 417 U.S. 333, 343 (1974).

The 1948 legislation also included an exclusivity proviso confirming that this new motion remedy was to be used in lieu of, not in addition to, the § 2241 habeas remedy. The proviso states that district courts "shall not . . . entertain[]" a federal prisoner's petition for a writ of habeas corpus except in cases where § 2255 was shown to be "inadequate or ineffective to test the legality of [the prisoner's] detention." 28 U.S.C.

§ 2255(e).  This portion of § 2255 is commonly referred to as the "saving clause." *See, e.g.*, *Boumediene v. Bush*, 553 U.S. 723, 776 (2008).

The saving clause was largely dormant until 1996, when Congress restricted the grounds on which federal prisoners may file second or successive § 2255 motions through the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 105, 110 Stat. 1214, 1220.  AEDPA limited the availability of successive § 2255 motions to cases involving either (1) persuasive new evidence that the prisoner was factually not guilty of the offense, or (2) a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review.  28 U.S.C. § 2255(h).  AEDPA did not provide for successive § 2255 motions based on other grounds, including statutory decisions issued after denial of the defendant's first § 2255 motion.  *See Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 179 (3d Cir. 2017).

Around the same time as AEDPA's enactment, the Supreme Court decided *Bailey v. United States*, 516 U.S. 137 (1995), which adopted a narrow construction of the requirement under 18 U.S.C. § 924(c) that an offender must "use" a firearm during and in relation to a drug-trafficking crime.  Following *Bailey*, defendants who had sought and been denied collateral relief under § 2255 prior to that decision could not file a second or successive § 2255 motion because statutory claims are not included among the narrow circumstances in which AEDPA permitted second or successive motions.  *See* 28 U.S.C. § 2255(h).  Those defendants therefore sought relief in habeas petitions under § 2241, arguing that the saving clause permitted the petitions because § 2255 was

"inadequate or ineffective to test the legality of [their] detention." 28 U.S.C. § 2255(e); *see, e.g.*, *Triestman v. United States*, 124 F.3d 361, 373-74 (2d Cir. 1997). A number of courts accepted versions of this argument, including this Court in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998).

The *Davenport* case encompassed appeals by two federal prisoners. The first prisoner, Davenport, was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and was subject to a 15-year mandatory minimum sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). 147 F.3d at 607. After the denial of his first § 2255 motion, Davenport sought to challenge his ACCA sentence on the ground that his 1981 burglary conviction did not qualify as an ACCA predicate. *Id.* This Court held that Davenport could not challenge his ACCA sentence in a habeas petition under § 2241 because "[h]e had a chance to raise the question about the 1981 burglary conviction when he appealed from his conviction for being a felon in possession and later when he filed a section 2255 motion challenging the conviction." *Id.* at 609. "Nothing in 2255 made the remedy provided by that section inadequate to enable Davenport to test the legality of his imprisonment," the Court explained; "[h]e had an unobstructed procedural shot at getting his sentence vacated." *Id.*

The second prisoner, Nichols, was convicted of violating § 924(c), and after he unsuccessfully attacked his conviction in a § 2255 motion, the Supreme Court decided *Bailey*, which narrowly construed § 924(c) and abrogated this Court's prior precedent

that had adopted a broader reading of the statute. 147 F.3d at 607, 610. This Court determined that § 2255 was inadequate and ineffective to test the legality of his detention in these circumstances. *Id.* at 610-12. He was "being held in prison for a nonexistent crime," and he could not have raised his claim in his direct appeal or his first § 2255 motion because of then-binding precedent that *Bailey* later abrogated. *Id.* at 610. He also could not raise his claim in a second or successive § 2255 motion because he did not rely on newly discovered evidence of his innocence or a new rule of constitutional law. *Id.* "Nichols never had a reasonable chance to correct an error that is corrigible retroactively," the court explained. *Id.* at 611. The Court determined that "[a] federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion," and it made clear that the change in law must apply retroactively and "must be a change that eludes the permission in section 2255 for successive motions." *Id.*

"In *Davenport*'s wake," this Court "established a three-part test to determine whether a petitioner satisfies § 2255(e)'s saving[] clause." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019). In order to assert a claim for relief in a habeas petition under § 2241, a federal prisoner "must establish that (1) the claim relies on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive § 2255 motion; (2) the petitioner could not have invoked the decision in

his first § 2255 motion and the decision applies retroactively; and (3) the error is grave enough to be deemed a miscarriage of justice." *Id.* (internal quotation marks omitted).

This Court has found the saving clause satisfied in only two additional circumstances. *First*, in *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001), the defendant was convicted of operating a continuing criminal enterprise and sentenced to death after the jury at his sentencing hearing was presented with evidence about uncharged murders the defendant committed in Mexico. *Id.* at 919-20. After his conviction and sentence were affirmed on direct appeal and the district court denied his motion for collateral relief under § 2255, the Inter-American Commission on Human Rights ruled that introducing evidence of the uncharged murders violated the defendant's rights as set out in the American Declaration of the Rights and Duties of Man. *Id.* at 920. The defendant filed a § 2241 habeas petition seeking invalidation of his death sentence on the ground that the United States was bound by treaty to abide by the Commission's decision. *Id.* The Court determined that the saving clause permitted the habeas petition. *Id.* at 921-23. It concluded that the defendant's "situation is closely analogous to that of Nichols" in the *Davenport* case because "it was literally impossible for him to have raised [his claim] at any time earlier than April 4, 2001, the date of the Commission's decision," and "[t]he argument therefore could not have been raised in his direct appeals or in his first § 2255 motion." *Id.* at 922-23.

*Second*, in *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) (en banc), the defendant was convicted of kidnapping resulting in death and sentenced to death after the district

court found, based on evidence presented at the sentencing hearing, that the defendant was not "mentally retarded" and therefore was not exempt from eligibility for the death penalty under 18 U.S.C. § 3596(c). *Id.* at 1124-25, 1130-31. While the defendant's § 2255 motion was pending, the Supreme Court decided *Atkins v. Virginia*, 536 U.S. 304 (2002), which "held that the Eighth Amendment—not just a statute—prohibits the execution of the intellectually disabled." *Webster*, 784 F.3d at 1132. After the denial of the *Atkins* claim in the defendant's § 2255 motion, he obtained new evidence in support of his intellectual-disability claim that existed at the time of his trial but had been unavailable to him (purportedly because of missteps by the Social Security Administration). *Id.* at 1132-34. Because the defendant could not satisfy AEDPA's gatekeeping requirements for second or successive § 2255 motions—because he did not rely on new evidence of innocence or a new rule of constitutional law—he filed a § 2241 habeas petition raising an *Atkins* claim on the basis of that new evidence. *Id.* at 1134-35.

In *Webster*, this Court determined that in these circumstances there was a "structural problem" or "lacuna" in § 2255 and therefore the saving clause permitted the defendant's habeas petition. 784 F.3d at 1135-44. Construing the saving clause, the Court determined that a prisoner claiming that the Constitution makes him "categorically ineligible for the death penalty, based on newly discovered evidence, may not be barred from doing so by section 2255." *Id.* at 1140. "But this rule cannot apply to all newly discovered evidence," the Court explained, "or else there would never be

any finality to capital cases involving either the intellectually disabled or minors." *Id.* The Court concluded that the rule applied to newly discovered evidence that "existed before the time of the trial" and was unavailable "despite diligence on the part of the defense," not because of "missteps by" the defense. *Id.* (emphasis omitted); *see id.* at 1141 (defendant must present "previously existing evidence . . . that counsel did not uncover despite diligent efforts"). The Court anticipated that it will be a "rare case" in which these conditions are satisfied. *Id.* at 1140.

> b. Bourgeois's Claim Does Not Meet the Saving Clause's Requirements

In his § 2241 habeas petition, Bourgeois asserts an intellectual-disability claim pursuant to *Atkins*, 536 U.S. 304, and the FDPA, 18 U.S.C. § 3596(c). This claim does not fall within the narrow categories of habeas claims that this Court has concluded are permitted by the § 2255 saving clause.[9] Specifically, Bourgeois's intellectual-disability claim cannot meet the first two prongs of this Court's three-part test for proceeding

---

[9] In the government's view, this Court's cases applying the saving clause— including *Davenport*, *Garza*, and *Webster*—are incorrectly decided. The government agrees with the Tenth Circuit's decision in *Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011) (Gorsuch, J.), the Eleventh Circuit's en banc decision in *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (en banc), and the dissent in *Webster*, 784 F.3d at 1146-54 (Easterbrook, J., dissenting), which concluded that the saving clause does not permit a defendant to challenge his conviction or sentence in a § 2241 habeas petition on the basis of an intervening judicial decision or newly discovered evidence. The government recognizes that this Court's precedent forecloses this argument but notes the government's position in order to preserve it for potential further appellate review.

under the saving clause. Nor does Bourgeois's claim meet the unique circumstances present in *Garza* or *Webster*.

*First*, Bourgeois's claim does not meet this Court's threshold requirement that it "rel[y] on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive § 2255 motion." *Chazen*, 938 F.3d at 856 (internal quotation marks omitted). In his habeas petition, Bourgeois did not cite, let alone rely upon, any new case that substantively interprets the FDPA (or any other relevant statutory matter). Rather, Bourgeois claimed that 18 U.S.C. § 3596(c) bars the execution of the sentence of death upon an intellectually disabled person, and that *Atkins,* 536 U.S. 304, categorically prohibits his execution because he is intellectually disabled. He argued that the district court should apply the *constitutional* standard articulated by the Supreme Court in *Atkins*, *Moore I*, and *Moore II*. These cases pertaining to constitutional standards plainly do not fulfill the requirement that Bourgeois "rel[y] on a statutory interpretation case." *Chazen*, 938 F.3d at 856 (internal quotation marks omitted). By contrast, the cases where this Court has held that the first prong of the test to proceed under the saving clause was met all involved an intervening change in the interpretation of a substantive statue, such as the ACCA. *See, e.g., id.*; *Light v. Caraway*, 761 F.3d 809, 812-13 (7th Cir. 2014).

*Second*, Bourgeois has failed to demonstrate that he "could not have invoked [an intervening statutory] decision in his first § 2255 motion and the decision applies retroactively." *Chazen*, 938 F.3d at 856 (internal quotation marks omitted). The only

cases Bourgeois has identified that, in his view, create a new rule are *Moore I* and *Moore II*, *see* Dkt. 1, at 45-71, but those cases do not meet this standard. *Moore I* and *Moore II* did not announce watershed rules of criminal procedure that apply retroactively. *See Smith v. Comm'r, Ala. Dep't of Corr.*, 924 F.3d 1330, 1338-39 (11th Cir. 2019) (holding that *Moore I* does not apply retroactively), *petition for cert. filed*, No. 19-7745 (Feb. 24, 2020). However, even if they were somehow retroactive, they would be retroactive *constitutional* cases. Under AEDPA, Bourgeois could raise those cases in a successive § 2255 motion only if the Supreme Court itself has made the cases retroactive on collateral review. 28 U.S.C. § 2255(h). AEDPA's statutory restrictions on constitutional claims in successive § 2255 motions would be a dead letter if Bourgeois could simply use a § 2241 habeas petition to raise any new constitutional rule, even if the Supreme Court has not made the rule retroactive to cases on collateral review.

*Third*, Bourgeois's FDPA claim does not meet the conditions laid out in this Court's *Garza* and *Webster* decisions. Garza could proceed under § 2241 because there was no way for him to raise a purported treaty violation based on a then-non-existent decision of the Inter-American Commission on Human Rights in his direct appeal or § 2255 motion. *Garza*, 253 F.3d at 922-24; *see also Kramer v. Olson*, 347 F.3d 214, 218 n.1 (7th Cir. 2003) (per curiam) (noting that *Garza*'s applicability beyond its unusual facts "is limited"). And Webster could proceed under § 2241 because he presented newly discovered evidence that "existed before the time of the trial" but was unavailable "despite diligence on the part of the defense," not because of "missteps by" the defense.

*Webster*, 784 F.3d at 1140 (emphasis omitted). By contrast, Bourgeois has presented no new evidence, and instead relies on the same evidence presented in his § 2255 proceeding.[10] His case is therefore far afield of the situations presented to the Court in *Garza* and *Webster*. To the contrary, Bourgeois cannot argue that his intellectual-disability claim (including any claim under the FDPA) could not be raised in his first § 2255 motion because he in fact raised, litigated, and lost such a claim in his § 2255 motion. *See* App. 35-259.

### c. Bourgeois's Attempt to Frame His Claim as Pertaining to the Execution of His Sentence Under the FDPA Does Not Alter This Conclusion

Bourgeois cannot evade the saving clause and applicable procedural requirements by attempting to style his claim as challenging the execution of his sentence under the FDPA, 18 U.S.C. § 3596(c). *See* Dkt. 1, at 71-73. He has argued that the FDPA "forbids not only the execution of the intellectually disabled, but, more precisely, the imposition of that penalty against any person who 'is' of that category." Dkt. 11, at 42 (emphasis omitted). According to Bourgeois, a claim brought pursuant to this provision of the FDPA is thus "a challenge to the *execution* of his death sentence

---

[10] To the extent that Bourgeois attempts to argue that new diagnostic standards somehow constitute new evidence, that argument fails. Those specific standards were non-existent as the time of trial and thus would not fulfill the *Webster* standard. Moreover, Bourgeois unreasonably delayed pursuing any claim based on these standards. *See Lambert*, 498 F.3d at 451-53. The DSM-V, for example, was published in 2013. *See* Dkt. 1, at 69.

rather than its *imposition*," *id.* at 43 (emphasis in original), and may proceed in a successive habeas petition. These arguments are unsupported and meritless.

Section 3596 of the FDPA, entitled "Implementation of a sentence of death," authorizes the Attorney General to carry out federal executions upon persons sentenced to death. Sections (b) and (c) of the section provide specific restrictions on the death penalty. Section 3596(b) provides that "[a] sentence of death shall not be carried out upon a woman while she is pregnant," and § 3596(c), in turn, provides: "A sentence of death shall not be carried out upon a person who is mentally retarded. A sentence of death shall not be carried out upon a person who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person."

In *Webster*, this Court posited that "[i]f *Atkins* had never been decided," and a defendant argued that "he now has new evidence that would demonstrate that the [FDPA] would be violated by the implementation of his sentence," "[w]e can assume that this would not be enough to trigger the saving[] clause." 784 F.3d at 1139. While the Court did not have occasion to further address the contours of the FDPA, its assumption is undoubtedly correct: AEDPA's restrictions apply to Bourgeois's intellectual-disability claim however framed, and nothing suggests that the FDPA exempts him from those restraints.

As an initial matter, Bourgeois already raised his intellectual-disability claim, under both *Atkins* and the FDPA, in his prior § 2255 motion. *See* App. 35-259. There

is also no daylight, factually or legally, between a constitutional *Atkins* claim and a statutory FDPA claim. *See, e.g.*, *United States v. Coonce*, 932 F.3d 623, 632-33 (8th Cir. 2019) (applying constitutional *Atkins* standards to an FDPA claim), *petition for cert. filed*, No. 19-7862 (Mar. 3, 2020); *see also* App. 7 ("The only apparent difference between [Bourgeois's] *Atkins* claim and an FDPA claim is the legal source—the Constitution and a statute, respectively."). Therefore, however framed, Bourgeois has already litigated and lost this claim.

Moreover, Bourgeois cannot have developed intellectual disability *after* the Texas district court adjudicated his claim. The Supreme Court has consistently confirmed that intellectual disability must develop before the age of eighteen. *See Atkins*, 536 U.S. at 318. Bourgeois was 39 years old at the time of his trial, *see* Dkt. 1-1, at 12 (providing Bourgeois's birthdate); consequently, any intellectual disability would have had to develop over two decades beforehand. Bourgeois's claim is thus not simply that his sentence cannot be implemented; it is that his sentence was unlawful at both the time it was imposed and the time the Texas district court denied his § 2255 motion. This is why he seeks "habeas relief from [his] convictions and sentences, including his sentence of death." Dkt. 1, at 74.

The FDPA does not allow Bourgeois to relitigate this issue for several reasons. *First*, the FDPA's text does not suggest that Congress intended to enable prisoners to relitigate intellectual-disability claims at any time. While the FDPA provides that "[a] sentence of death shall not be carried out upon a person who is mentally retarded," 18

U.S.C. § 3596(c), that language is, in substance, no different than the language that the Supreme Court used in *Atkins* and its progeny. *See, e.g.*, *Hall v. Florida*, 572 U.S. 701, 708 (2014) ("[P]ersons with intellectual disability may not be executed."). The FDPA thus does not invite relitigation of an intellectual-disability issue any more so than *Atkins* does.[11]

*Second*, the FDPA's legislative history also cuts against Bourgeois's argument. Section 3596(c) originally derives from language in the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7001(*l*), 102 Stat. 4181, 4390. *See, e.g.*, *Atkins*, 536 U.S. at 314 & n.10. During debate on that legislation, the sponsor of the amendment that added the relevant language was clear that a defendant's intellectual-disability claim "would be handled *as any other defense* would be when it came to this kind of a crime or the sentencing thereof." 134 Cong. Rec. 22,993 (1988) (statement of Rep. Levin) (emphasis added). Bourgeois's argument that § 3596(c) is a special provision that provides for relitigation of a decided issue is at odds with this expressed intent.

Moreover, when Congress debated the current version of the FDPA, it is equally unlikely that legislators adopted Bourgeois's view of § 3596(c).[12] The broader debate

---

[11] Notably, while Congress provided that a death sentence could not be carried out "*while*" a woman is pregnant, *see* 18 U.S.C. § 3596(b)—implying a transient condition—it did not use the same language in § 3596(c) (emphasis added).

[12] From 1989 to 1994, Congress debated several iterations of the legislation that ultimately became the FDPA and based 18 U.S.C. § 3596(c) on language from the Anti-Drug Abuse Act of 1988. *See* S. Rep. No. 101-170, at 23 (1989).

in Congress centered on streamlining and shortening the federal appeals process, not lengthening it. *See, e.g.*, 140 Cong. Rec. 10,238-40 (1994) (statement of Sen. Specter) ("appeals process has been vastly overdone"). In this context, there is no reason to think that a bipartisan group of legislators would have agreed to a provision allowing for the relitigation of such issues.[13]

*Third*, courts have rejected similar attempts to relitigate intellectual-disability claims in other contexts. In *Williams v. Kelley*, 858 F.3d 464 (8th Cir. 2017) (per curiam), for example, a state habeas petitioner attempted to raise an intellectual-disability claim, arguing that AEDPA's procedural restrictions did not apply "because intellectual disability, like incompetency to be executed, not only prohibits the imposition of a death sentence but also prohibits his actual execution." *Id.* at 472. The Eighth Circuit rejected the argument that the latter claim did not ripen until the issuance of an execution warrant because, unlike an incompetency claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), "an *Atkins* claim ripens before an execution is imminent and thus is governed by the requirements of [AEDPA] if raised in a second or successive habeas petition."

---

[13] Bourgeois has highlighted comments by Senator Orrin Hatch, which he asserts support the notion that he can raise his claim "at any time." *See* Dkt. 1, at 72. Senator Hatch made the cited statement in support of an amendment to allow imposition of the death penalty on the intellectually disabled who nonetheless can tell the difference between right and wrong. 136 Cong. Rec. S6873-03, S6876 (daily ed. May 24, 1990), *available at* 1990 WL 69446. That amendment failed, and further debate revealed no intention by the proponents of the FDPA to allow a defendant to raise a claim "at any time." *Id.* at S6873-83.

*Williams*, 858 F.3d at 472. By contrast, "*Ford* and its progeny focus on the inmate's competency at the time of execution," which "makes sense because competency can be lost or regained over time." *Id.* at 472 (internal quotation marks omitted).

The Fifth Circuit has similarly drawn a distinction between *Ford* claims and intellectual-disability claims. In *Busby v. Davis*, 925 F.3d 699 (5th Cir. 2019), that court explained that a defendant might raise a *Ford* claim in multiple proceedings because incompetence "may recede and later reoccur," and a "finding that an inmate is incompetent to be executed does not foreclose the possibility that she may become competent in the future and would no longer be constitutionally ineligible for the death penalty." *Id.* at 713. By contrast, intellectual disability is "a permanent condition that must have manifested before the age of 18." *Id.* "A person who is found to be intellectually disabled is permanently ineligible to be executed, and the sentence of death is vacated." *Id.*

For this reason, Bourgeois's claim is far afield from a claim that challenges only the execution of a sentence and not its legality. While such claims historically have been allowed to proceed by way of § 2241, *see, e.g.*, *Atehortua v. Kindt,* 951 F.2d 126, 129 (7th Cir. 1991), they may do so because they do not challenge the legality of the conviction or sentence, and thus cannot be raised in a § 2255 motion. However, "[n]one of this implies that a federal prisoner may use a petition under § 2241 to call into question the validity of a conviction or sentence that has already been subject to collateral review." *Valona v. United States*, 138 F.3d 693, 694-95 (7th Cir. 1998) (allowing a § 2241 petition

32

to proceed when it did "not ask the district court to set aside [a] conviction or sentence, either directly or indirectly"). Here, Bourgeois raises the exact intellectual-disability claim, based on the same facts, as he raised in his § 2255 petition. This alone demonstrates that his claim attacks the validity of the sentence, and that § 2255 was not inadequate or ineffective to test the legality of his detention.

d.  <u>Regardless, Bourgeois's Claim Is an Abuse of the Writ</u>

Even if Bourgeois could somehow evade AEDPA's procedural requirements by styling his claim as one pertaining to the execution of his sentence, that claim should still have been dismissed under pre-AEDPA law. Before AEDPA was enacted, inappropriate resort to multiple habeas petitions was regulated through the equitable doctrine of "abuse of the writ," and "[a]n attempt to relitigate a theory, in the absence of an intervening change of law, was taken as a paradigm abuse of the writ." *Roundtree v. Krueger*, 910 F.3d 312, 314 (7th Cir. 2018).

While the abuse-of-the-writ doctrine has largely been supplanted by AEDPA's procedural bars, *see, e.g.*, *Burris v. Parke*, 95 F.3d 465, 469 (7th Cir. 1996) (en banc), courts have continued to apply the doctrine to § 2241 petitions where defendants attempt to relitigate claims, *see, e.g.*, *Queen v. Miner*, 530 F.3d 253, 255 (3d Cir. 2008) (per curiam) (recognizing that "the abuse-of-the-writ doctrine applies to section 2241 petitions; thus, a petitioner may not raise new claims that could have been resolved in a previous action"); *Arnaout v. Marberry*, 351 F. App'x 143, 144-45 (7th Cir. 2009) (unpublished)

33

(applying doctrine to a § 2241 petition when the law had not changed, and no new facts were presented).

However styled, Bourgeois's attempt to relitigate the precise claim that he advanced in his § 2255 petition is an abuse of the writ. He challenges the validity and legality of his death sentence on the same *Atkins* criteria and evidence as he previously litigated. *Compare* Dkt. 1, *with* App. 35-259. Regardless of whether raised in a 2241 or 2255 proceeding—and even assuming AEDPA's restrictions were inapplicable—*Moore I* and *Moore II* are not retroactive to post-conviction habeas review. *See supra* 26. Therefore, nothing has changed legally since the Texas district court rejected Bourgeois's claims, and he cannot attempt to litigate the same claim in a different forum simply to get a different result. *See, e.g.*, *Roundtree*, 910 F.3d at 314 (refusing to relitigate a habeas claim that the Eighth Circuit had already decided).

### 2. The District Court Erred in Finding that Bourgeois's § 2241 Habeas Petition Can Proceed Based on an Alleged Waiver by the Government

The district court did not address any of the aforementioned arguments; instead, it found that the government had waived its response to Bourgeois's FDPA arguments and allowed his claim to proceed on that basis. Contrary to the court's finding, the government argued at length in its 96-page response that Bourgeois's intellectual-disability claim could not proceed based on the saving clause and the abuse-of-the-writ doctrine. The district court incorrectly determined that these arguments did not pertain

to the FDPA aspect of Bourgeois's claim, and it erred by failing to consider them prior to finding that Bourgeois has a likelihood of success.

a.   Background

At points in Bourgeois's 74-page habeas petition, he asserted that proceeding under § 2241 is appropriate in light of the FDPA's provision that "'[a] sentence of death shall not be carried out upon a person who is mentally retarded,'" which, in his view, pertains to the execution of his sentence, and not just its legality. *See* Dkt. 1, at 3, 10, 72. Bourgeois, however, referred to his constitutional and statutory claims collectively as "his *Atkins* claim." *See, e.g., id.* at 8, 10, 73; Dkt. 11, at 5. His substantive arguments in both his petition and reply focused on his entitlement to § 2241 relief under the saving clause, and how the previous courts erred in their approach to evaluating his *Atkins* claim. Dkt. 1, at 45-71; Dkt. 11, at 1-36.

Because Bourgeois advanced his claim under the Constitution and the FDPA based on the same substantive arguments, the government did not parse out and separately address the statutory and constitutional components of Bourgeois's claim. *See* Dkt. 20, at 6-7. Instead, the government read Bourgeois's petition to present a unitary intellectual-disability claim. *See id.* It therefore argued that Bourgeois was subject to the AEDPA statutory provisions governing federal habeas corpus relief, *see* Dkt. 10, at 34-75, and that regardless, Bourgeois's attempt to relitigate his claim was an abuse of the writ, *see id.* at 66-75.

The district court subsequently found that the government had waived any arguments pertaining to the FDPA, *see* App. 5-6, and denied the government's motion for reconsideration on the issue, *see id.* at 18.

> b. Because the Government's Arguments Encompassed the FDPA Aspect of Bourgeois's Claim, the District Court Incorrectly Found that the Government Had Waived Its Defenses

The district court erred in finding that the government had waived a defense to Bourgeois's FDPA argument, and it should have addressed the government's arguments as they pertained to that aspect of Bourgeois's claim. This Court has explained that a waiver is "'[a] deliberate decision not to present a ground for relief that might be available in the law.'" *United States v. Wesley*, 422 F.3d 509, 520 (7th Cir. 2005) (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)). It "occurs when a [litigant] intentionally relinquishes or abandons a known right." *Id.* (internal quotation marks omitted). The consequence of such intentional abandonment is rightfully draconian: A court cannot review the claim at all because there is no error to review. *Id.*

Nothing in the government's submissions below suggests that it intentionally relinquished or abandoned any defense to Bourgeois's claim, *see Wesley*, 422 F.3d at 520, and the district court was wrong to find otherwise, *see* App. 6.[14] To the contrary, the

___

[14] While this Court has concluded that "§ 2255(e) does not contract subject-matter jurisdiction—which means that its benefits can be waived or forfeited," *Webster v. Caraway*, 761 F.3d 764, 770 (7th Cir. 2014), *vacated sub nom. Webster v. Daniels*, 784 F.3d

government argued that "Bourgeois' claim should be dismissed with prejudice and his motion for stay of execution denied." Dkt. 10, at 8. In support of that argument, the government detailed why Bourgeois's claim could not pass through the saving clause, 28 U.S.C. § 2255(e), *see id.* at 34-66, and explained at length that it is an abuse of the writ, *see id.* at 66-71. The government also argued, as it does here, that Bourgeois is simply attempting to relitigate the same intellectual-disability claim already disposed of in his § 2255 proceedings. *See id.* at 72-75.

As the district court found, there is no substantive difference between Bourgeois's constitutional and statutory claims, *see* App. 6; therefore, there would have been no strategic reason for the government to have spent the lion's share of a 96-page response arguing that one aspect of Bourgeois's claim could not proceed, while at the same time *sub silentio* waiving the same defense to another substantively identical aspect of his claim. While the government did refer to Bourgeois's "*Atkins* claim" throughout its response, it did so not to waive any arguments, but because that is the language that Bourgeois himself used in referring to his substantive claim. *See, e.g.,* Dkt. 1, at 8, 10, 73.[15] Moreover, to the extent that there was any ambiguity on this point, the

---

1123 (7th Cir. 2015) (en banc), in the government's view, 28 U.S.C. § 2255(e) is a jurisdictional provision that cannot be waived, *see, e.g.,* *United States v. Wheeler,* 886 F.3d 415, 423 (4th Cir. 2018), *cert. denied,* 139 S. Ct. 1318 (2019).

[15] Bourgeois argued in his reply that the government had not addressed the FDPA, *see* Dkt. 11, at 42-43; however, it is clear that he also interpreted at least some of the government's arguments as applying to the entirety of his claim. *See, e.g.,* Dkt.

government sought leave to file a surreply explaining that it had not intentionally waived the issue. *See* Dkt. 20, at 9-10.

> c. Even If the Government's Response Somehow Did Not Encompass the FDPA Aspect of Bourgeois's Claim, It Was at Most a Forfeiture, and This Court Should Still Decide Whether Bourgeois's Claim May Proceed

Assuming *arguendo* that the government's response did not encompass the FDPA, the failure to advance those arguments would have been, at most, an unintentional forfeiture as opposed to an intentional waiver. *See Wesley*, 422 F.3d at 520; *see also, e.g.*, *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847-49 (7th Cir. 2005); *United States v. Garcia*, 580 F.3d 528, 541 (7th Cir. 2009). Moreover, to the extent that there was any ambiguity to this point, "the stakes of this litigation," App. 6, should have led the district court to find a forfeiture and not a waiver. *Cf. Garcia*, 580 F.3d at 541-42 ("Given the magnitude of the adjustment and the absence of a strategic reason for failing to object, we held that the defendant merely forfeited his challenge."). In these circumstances, this Court should still decide whether Bourgeois's claim can pass through the saving clause and whether it is an abuse of the writ.

As an initial matter, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of

---

28, at 5 ("To be sure, the Government urged that Mr. Bourgeois's 'petition' be denied as abusive, successive, and barred by *Teague v. Lane*, 489 U.S. 288 (1989).").

governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *cf., e.g., United States v. Carey*, 929 F.3d 1092, 1097 (9th Cir. 2019) (court is not bound on a question of law based on a party's concession—especially if it is an erroneous view of the law); *Krieger v. United States*, 842 F.3d 490, 499 (7th Cir. 2016) (court is not bound to accept a concession on a question of law). An appellate court therefore may consider an issue, even if a party has forfeited it below. *See, e.g., Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (district court may dismiss habeas petition on timeliness grounds notwithstanding government's forfeiture of the issue); *Granberry v. Greer*, 481 U.S. 129, 133 (1987) (appellate court may consider exhaustion defense even if the government did not raise it).

This Court has previously applied these principles to decide a forfeited argument. In *United States v. Ford*, 683 F.3d 761, 768 (7th Cir. 2012), the Court held that a district court's erroneous evidentiary ruling was harmless, even though the government did not advance a harmlessness argument. The Court explained that it could "base [its] decision on a ground forfeited by a party if the ground is 'founded on concerns broader than those of the parties.'" *Id.* at 768 (quoting *Wood v. Milyard*, 566 U.S. 463, 471 (2012)).

In light of this authority, the district court should have considered the "concerns broader than those of the parties," *Ford*, 683 F.3d at 768 (internal quotation marks omitted), before allowing Bourgeois's claims to proceed, and this Court should do so here. In this case, there are myriad such concerns, including: (1) the congressional intent and the substantial public interest against allowing a habeas petitioner to relitigate a

claim, with no intervening change in the law or facts, almost a decade after another court rejected it; (2) the substantial costs to the government and witnesses in holding another lengthy evidentiary hearing long after the crime; and (3) most especially, the costs to the family of the victim imposed by the continued lack of finality in this case.

While the government recognizes in hindsight that it would have been better to expressly address the FDPA in its response below, it could have done so by simply stating that Bourgeois's FDPA argument could not proceed for the same reasons as his arguments pertaining to *Atkins*. The disparity between the government's failure to make that short statement and the significant costs "broader than those of the parties," *Ford*, 683 F.3d at 768 (internal quotation marks omitted), is great. In these circumstances, this Court should decide the FDPA issue, even if it were to the conclude that the government forfeited it below.

### 3. Even if Bourgeois's Habeas Petition Could Proceed Under § 2241, the District Court Still Erred in Finding that Bourgeois Has Demonstrated a Likelihood of Success in Relitigating His Intellectual-Disability Claim

Procedural issues aside, Bourgeois still has not demonstrated a likelihood of success on the merits on his underlying intellectual-disability claim, and the district court erred in finding otherwise. Contrary to the district court's conclusion, the Texas district court correctly denied Bourgeois's claim, and Bourgeois's arguments are meritless.

a. Background

In 2011, the Texas district court issued a lengthy opinion analyzing and rejecting all the claims that Bourgeois had advanced in his 28 U.S.C. § 2255 motion. App. 35-259. As relevant here, the Texas district court analyzed the exact evidence that Bourgeois now relies upon and concluded that he is not intellectually disabled. *Id.* In evaluating this issue, it recognized the *Atkins* standard and adhered to the AAIDD-11 and DSM-IV definitions of intellectual disability. *Id.* at 79-82 nn.27, 29.

Employing these principles, the Texas district court first turned to whether Bourgeois has significantly subaverage intellectual functioning, *see Hall*, 572 U.S. at 710, and it found that the medical experts scored Bourgeois's Full Scale IQ range at 70 to 75, the presumptive range accepted by the medical community as a qualifying score for a diagnosis of intellectual disability. App. 83-85 & nn.31-34. The court also accepted testimony that Bourgeois's base IQ could be five points higher or lower using the medical community's standard error of measurement. *Id.* at 87. Nevertheless, after discussing these test results, the Texas district court found that while they "facially make a diagnosis of mental retardation possible," *id.* at 85, a "full review of Bourgeois' life signals that he . . . functions at the highest end of the confidence interval, if not even higher," *id.* at 89.

In evaluating competing expert opinions on this issue, the court credited the government's experts, Drs. J. Randall Price and Roger Byron Moore, on their assessment of Bourgeois's intellectual functions based on IQ scores. Dr. Price, for

41

example, testified that the IQ test did not measure Bourgeois's "true level" of intellectual functioning because, among other things, Bourgeois had not put forth his full effort on the tests. App. 89-93. Dr. Price noted that Bourgeois had "graduated from high school, worked for years as an over-land trucker, bought a house, managed his own finances, wrote intricate and detailed letters, communicated without difficulty, participated actively in his own defense, and otherwise carried himself without any signs of intellectual impairment." *Id.* at 95 (footnotes omitted). He therefore concluded that Bourgeois's "cognitive abilities exceed his measured cognitive intelligence." *Id.* at 90 (internal quotation marks omitted).

Based on these opinions, the court rejected the contrary assessment of Bourgeois's expert, Dr. Victoria Swanson, that Bourgeois "functions in about the 'lowest two percent of the population'" (*i.e.*, "operate[s] as a child"). App. 97-99. Finding that Dr. Swanson's testimony "lacked credibility," the court concluded that Bourgeois does not have significant intellectual limitations. *Id.* at 98. Nevertheless, the court made clear that "[t]his is not a case where a man's life depends on a few points' difference in test results," and turned to the other relevant factors. *Id.*

The Texas district court then addressed *Atkins*'s second prong: adaptive deficits, "the inability to learn basic skills and adjust behavior to changing circumstances," *Hall*, 572 U.S. at 710, "assessed using both clinical and individualized . . . measures," *Moore II*, 139 S. Ct. at 668 (internal quotation marks omitted); *see* App. 99-100 & n.48. It examined the experts' clinical reports pertaining to Bourgeois's adaptive skills and

adaptive deficits and again found that Drs. Swanson and Moore came to dramatically different conclusions.  App. 103.  The court ultimately decided to credit Dr. Moore's finding that Bourgeois has not manifested substantial adaptive deficits.  *Id.* at 124-25.  It found that Dr. Swanson had failed to assess the validity and credibility of lay witnesses, *id.* at 116, and it rejected her clinical assessment based on a failure "to make a full review of available evidence relating to Bourgeois' adaptive abilities," *id.* at 124.

The Texas district court likewise confronted competing opinions on whether any intellectual disability had onset before the age of eighteen.  App. 125-26.  The court considered Dr. Swanson's assessment, which was based on reports from an individual who had observed Bourgeois for only a short period of time when he was seven years old.  *Id.* at 106-08.  The court instead credited Dr. Moore's testimony that "while [Bourgeois's] functioning may have been relatively impaired in his early childhood, he appears to have developed greater independence of functioning by the time he finished high school," *id.* at 124-25, and it found that "[n]one of the responses in Dr. Moore's testing suggested significant impairment," *id.* at 111.

Employing diagnostic standards, and based on its analysis of expert testimony, the court concluded that "Bourgeois has not shown that he is now, was at the time of the crime, or was during the developmental period, mentally retarded."  App. 125.

b. The District Court Erred in Concluding that Bourgeois Has Made a Strong Showing that He Is Likely to Succeed on the Merits of His Intellectual-Disability Claim

In less than two pages of analysis, the district court below cast aside the Texas district court's findings and determined that Bourgeois had made a strong showing that he is intellectually disabled. *See* App. 8-9. The district court's analysis was flawed for several reasons.

*First*, the court below found that Bourgeois had demonstrated an intellectual-functioning deficit because he had scored an "appropriately adjusted" IQ of 68 on one test. App. 8 (citing Dkt. 1-4, at 36; Dkt. 1-1, at 45) (relying on an expert report explaining that Bourgeois's actual score of 75 or 76 should be adjusted to 68). But the Texas district court thoroughly discussed that test, *see id.* at 84-86, and explained that although that and other scores "facially make a diagnosis of mental retardation possible," *id.* at 85, a "full review of Bourgeois' life signals that he . . . functions at the highest end of the confidence interval, if not even higher," *id.* at 89. The Texas district court further explained that the government's expert had credibly rebutted the claims of Bourgeois's expert. *See id.* at 89-99.

*Second*, in finding that Bourgeois had made a strong showing of adaptive deficits, the court below relied on an expert affidavit stating that he scored below 70 on tests of communication, daily living skills, and socialization. App. 9 (citing Dkt. 1-1, at 6). Once again, the Texas district court considered that evidence, but concluded that it was less credible than other testing and evidence demonstrating that Bourgeois's "'adaptive

44

functioning was generally in the skill level expected of the average adult male.'" *Id.* at 111; *see id.* at 101-25.

*Third*, the district court's conclusion that Bourgeois's deficits began as a minor is based entirely on an affidavit asserting—without citation—that "'it is absolutely clear that the onset of Bourgeois's deficiencies . . . began before age 18 and continued into adulthood.'" App. 9 (quoting Dkt. 1-1, at 11). The Texas district court had before it the same affidavit, but also explained that the objective evidence in the record "failed to point to any pronounced intellectual impairment before Bourgeois's eighteenth birthday," and that "problems with time and perspective plague the most-developed lay testimony about his intellectual functioning as a youth." *Id.* at 125-26.

c.      Bourgeois's Additional Arguments Are Meritless

In addition to the arguments accepted by the district court, Bourgeois also argued below that the Texas district court's analysis was incompatible with *Moore I* and *Moore II*. Contrary to Bourgeois's arguments, the Texas district court relied on the diagnostic criteria in the AAIDD-11, the exact diagnostic criteria that the Court in *Moore I* faulted the Texas Court of Criminal Appeals for failing to apply. *See* 137 S. Ct. 1050-52 (relying on AAIDD-11). Bourgeois's claims of specific error are not persuasive.

Bourgeois is incorrect that the Texas district court's decision is contrary to *Moore I* and current diagnostic standards because that court did not account for the "Flynn Effect." *See* Dkt. 1, at 60. As an initial matter, this Court has explained that "nothing in *Atkins* suggests that IQ test scores must be adjusted to account for the

Flynn Effect in order to be considered reliable evidence of intellectual functioning." *McManus v. Neal*, 779 F.3d 634, 653 (7th Cir. 2015) (emphasis omitted). In any event, the Texas district court expressly cited the AAIDD-11 edition as informing that "'best practices require *recognition* of a potential Flynn Effect when older editions of an intelligence test (with corresponding older norms) are used in the assessment or interpretation of an IQ score.'" App. 87 n.37 (quoting AAIDD-11, at 37) (emphasis in original). And Bourgeois's own expert, Dr. Swanson, testified that the Flynn Effect was "'not relevant'" because Bourgeois's scores satisfied *Atkins* in and of themselves. *Id.*

Moreover, the Texas district court did not rely on the factors articulated by the Texas Court of Criminal Appeals in *Ex Parte Briseno,* 135 S.W.3d 1 (Tex. Crim. App. 2004), which the Supreme Court rejected in *Moore I* and *Moore II.* Contrary to Bourgeois's argument, the Texas district court did not counteract his adaptive deficits by overemphasizing adaptive strengths and unscientific stereotypes of intellectually disabled individuals. Instead, the court analyzed the diametrically opposed conclusions by the medical experts, assessed the credibility and accuracy of their assessments and reports based on the evidence, and examined the veracity of the evidence underlying their professional judgment. In that context, the court found the "record show[ed]

strengths that more than coexist with weaknesses, they call into question the depth and accuracy of reports of those weaknesses." App. 125.[16]

### C. The Other Stay Factors Likewise Do Not Warrant a Stay

In considering whether to grant a stay, a court must also consider the potential harm to the parties as well as the public interest. *See Nken*, 556 U.S. at 434. Neither of these factors favors Bourgeois.

*First*, while it is true that that a capital defendant faces irreparable injury, *see, e.g.*, *Williams*, 50 F.3d at 1360, Bourgeois will only suffer irreparable injury for failure to grant a stay if his position on the merits of his claim is correct. For the reasons detailed herein, Bourgeois's arguments are meritless, and a stay will only further delay the implementation of his lawful sentence.

*Second*, in a case in which the government is a party, the factors pertaining to the harm to the government and the public interest "merge." *Nken*, 556 U.S. at 435. The Supreme Court has emphasized that "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (internal quotation marks omitted). "Only with an assurance of real finality can the [government] execute its moral judgment in a case"

---

[16] For the same reasons discussed herein, the district court committed a "manifest error of law or fact," *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012), when it granted Bourgeois's stay motion, and it thus also erred in denying the government's motion for reconsideration, *see* App. 16-20.

and "the victims of crime move forward knowing the moral judgment will be carried out." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). Unduly delaying executions can frustrate the death penalty by undermining its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134; *id.* at 1144 (Breyer, J., dissenting).

The district court erred in discounting these considerations and finding that the government has a diminished interest in enforcing the judgment in this case because it has not carried out an execution in fifteen years. App. 10-11. If the district court's consideration were valid—which it is not—it would create a perverse incentive for the government to rush all executions, rather than act in a prudent and deliberate manner. *Cf. Knight v. Florida*, 528 U.S. 990, 990-93 (1999) (Thomas, J., concurring in the denial of certiorari).

Moreover, the Fifth Circuit denied Bourgeois authorization to file a second or successive § 2255 motion on September 24, 2018. *See* App. 369-71. Bourgeois did not file his § 2241 petition until August 15, 2019, *see* Dkt. 1, almost eleven months later. Even if Bourgeois were correct that *Moore II* is relevant to his claim, the Supreme Court decided that case on February 19, 2019, *see* 139 S. Ct. 666, almost six months before Bourgeois filed his petition. *See Lambert*, 498 F.3d at 451-53 (denying preliminary injunction based on delay). Bourgeois has thus "delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 650.

## CONCLUSION

For the foregoing reasons, this Court should vacate the stay of execution.

Respectfully submitted,

JOSH J. MINKLER
    United States Attorney
    Southern District of Indiana

PAULA C. OFFENHAUSER
    Assistant United States Attorney
    Southern District of Texas

BRIAN A. BENCZKOWSKI
    Assistant Attorney General

/s/Christopher J. Smith
CHRISTOPHER J. SMITH
    Attorney
    Appellate Section
    Criminal Division
    United States Department of Justice
    950 Pennsylvania Ave., NW
    Washington, DC 20530
    (202) 532-4154
    Christopher.J.Smith@usdoj.gov

# CERTIFICATE OF SERVICE

I certify that on June 25, 2020, I caused the foregoing brief to be served upon the Filing Users identified below through the Court's Case Management/Electronic Case Files ("cm/ecf") system:

Victor J. Abreu
Katherine Thompson
Peter K. Williams
Office of the Federal Public Defender
*Attorneys for Alfred Bourgeois*

s/Christopher J. Smith
CHRISTOPHER J. SMITH
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 532-4154
Christopher.J.Smith@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and 7th Cir. R. 32(c) because it contains 12,964, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced 14-point typeface using Microsoft Word for Office 365.

3.  This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a) because it contains no personal data identifiers.

4.  The digital version electronically filed with the Court on this day is an exact copy of the written document to be sent to the Clerk.

5.  This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security, version 10.7, which is continuously updated, and according to that program, is free of viruses.

DATED:      JUNE 25, 2020

s/Christopher J. Smith
CHRISTOPHER J. SMITH
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 532-4154
Christopher.J.Smith@usdoj.gov

# In the United States Court of Appeals for the Seventh Circuit

---

**ALFRED BOURGEOIS,**
**PETITIONER-APPELLEE**

v.

**T.J. WATSON, WARDEN, AND**
**UNITED STATES OF AMERICA,**
**RESPONDENTS-APPELLANTS**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, D. CT. NO. 2:19-CV-392 (HON. JANE MAGNUS-STINSON)

**(CAPITAL CASE)**

---

**APPENDIX**

---

JOSH J. MINKLER
    United States Attorney
    Southern District of Indiana

PAULA C. OFFENHAUSER
    Assistant United States Attorney
    Southern District of Texas

BRIAN A. BENCZKOWSKI
    Assistant Attorney General

CHRISTOPHER J. SMITH
    Attorney
    Appellate Section
    Criminal Division
    United States Department of Justice
    950 Pennsylvania Ave., NW
    Washington, DC 20530
    (202) 532-4154
    Christopher.J.Smith@usdoj.gov

# TABLE OF CONTENTS

*Short Appendix: Orders Appealed From (2:19-cv-392 (S.D. Ind.))*[1]

March 10, 2020 Order Staying Execution (Dkt. 18) .................................................App. 1

March 10, 2020 Stay of Execution (Dkt. 19) ...........................................................App. 14

May 27, 2020 Order Denying Government's Motion to Reconsider and
Denying Government's Motion for Leave to File Surreply (Dkt. 29) .................App. 16

*Supplemental Appendix: Other Required Documents*

March 25, 2004 Judgment of Conviction ................................................................App. 21

August 25, 2005 Fifth Circuit Decision Affirming Judgment of
Conviction ..............................................................................................................App. 26

May 19, 2011 Southern District of Texas Order Denying Motion to Vacate
Under 28 U.S.C. § 2255 .........................................................................................App. 35

May 19, 2011 Southern District of Texas Final Judgment Dismissing
Motion to Vacate Under 28 U.S.C. § 2255........................................................... App. 260

June 17, 2011 Southern District of Texas Order Denying Motion Pursuant
to Fed. R. Civ. P. 59(e) to Alter or Amend Judgment......................................... App. 261

August 5, 2013 Fifth Circuit Decision Denying Certificate of Appealability
to Appeal Order Denying Motion to Vacate Under 28 U.S.C. § 2255.............. App. 262

September 24, 2018 Fifth Circuit Revised Denial of Motion for
Authorization to File a Second or Successive § 2255 Petition............................ App. 369

---

[1] To comply with 7th Cir. R. 30(a) and (b)(7), the short appendix is bound with the government's opening brief, and the supplemental appendix is separately bound and filed because it exceeds fifty pages.

# CERTIFICATE OF COMPLIANCE

All materials required under 7th Cir. R. 30(a) and (b) are included in the short appendix and supplemental appendix. To comply with 7th Cir. R. 30(b)(7), the short appendix is bound with the government's brief and the supplemental appendix is separately bound because it exceeds fifty pages.

DATED: June 25, 2020

/s/Christopher J. Smith
CHRISTOPHER J. SMITH
   Attorney
   Appellate Section
   Criminal Division
   United States Department of Justice
   950 Pennsylvania Ave., NW
   Washington, DC 20530
   (202) 532-4154
   Christopher.J.Smith@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ALFRED BOURGEOIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00392-JMS-DLP |
| | ) | |
| WARDEN, et al. | ) | |
| | ) | |
| Respondents. | ) | |

**Order Staying Execution of Alfred Bourgeois**

Petitioner Alfred Bourgeois is a federal prisoner incarcerated at the United States Penitentiary in Terre Haute, Indiana.  He was convicted and sentenced to death in the United States District Court for the Southern District of Texas.  His conviction and sentence were affirmed on direct appeal, and his post-conviction motion for relief pursuant to 28 U.S.C. § 2255 was denied by the Southern District of Texas.

Mr. Bourgeois now seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. § 2241.  He argues that he is intellectually disabled[1] and thus the Eighth Amendment and the Federal Death Penalty Act ("FDPA") both forbid his execution.  In *Atkins v. Virginia*, the Supreme Court held that the Eighth Amendment forbids executing an individual who is intellectually disabled.  536 U.S. 304, 321 (2002).  Similarly, the FDPA states that a "sentence of death shall not be carried out" upon a person who is intellectually disabled.  18 U.S.C. § 3596(c).

---

[1] The Court uses the term "intellectual disability" rather than the previously used term, "mental retardation."  *See Hall v. Florida*, 572 U.S. 701, 704 (2014).

**App. 1**

Presently pending is Mr. Bourgeois's motion to stay his execution until this habeas action is resolved.  To be entitled to a stay, Mr. Bourgeois must make a strong showing that his claims have merit and show that the equitable factors weigh in his favor.

Mr. Bourgeois has established that the equitable factors all favor granting a stay.  As to the merits of Mr. Bourgeois's claims, the Court does not discuss his *Atkins* claim because Mr. Bourgeois is entitled to a stay based on his FDPA claim alone.  Respondent wholly failed to address Mr. Bourgeois's FDPA claim, thereby waiving any argument that Mr. Bourgeois's FDPA claim cannot proceed in this § 2241 action.  And Mr. Bourgeois has made a strong showing that he is intellectually disabled and thus the FDPA forbids his execution.

For these reasons, Mr. Bourgeois's motion to stay his execution pending resolution of this action is **granted**.

## I.
## Background

**A.**   **Procedural History**

The factual background regarding Mr. Bourgeois's crimes can be found in the Fifth Circuit's opinion affirming his conviction and sentence on direct appeal.  *See United States v. Bourgeois*, 423 F.3d 501, 502-06 (5th Cir. 2005) ("*Bourgeois I*").  The underlying facts are irrelevant to resolving Mr. Bourgeois's motion to stay, so they will not be detailed here.  Instead, the Court briefly sets forth the procedural history of Mr. Bourgeois's conviction, sentence, and subsequent post-conviction challenges.

On July 25, 2002, a Grand Jury in the Southern District of Texas returned a two-count indictment against Mr. Bourgeois stemming from the abuse and murder of his two-year-old daughter.  *See United States v. Bourgeois*, No 2:02-cr-216 (S.D. Tex.), Dkts. 1, 5. The second superseding indictment charged Mr. Bourgeois with a single count of premeditated murder, and

App. 2

the United States then filed a notice of intent to seek the death penalty. *See id.*, Dkt. 78. Mr. Bourgeois pleaded not guilty.

A jury found Mr. Bourgeois guilty of premeditated murder. A separate penalty phase followed. The jury unanimously recommended that Mr. Bourgeois be sentenced to death. Judgment was entered on March 25, 2004, sentencing Mr. Bourgeois to death. *See id.*, Dkt. 303. Mr. Bourgeois appealed his conviction and death sentence to the Fifth Circuit. *Bourgeois I*, 423 F.3d at 502. The Fifth Circuit rejected all of his claims and affirmed his conviction and death sentence. *Id.* at 512.

Mr. Bourgeois next filed a motion to vacate pursuant to § 2255 in the Southern District of Texas. *See United States v. Bourgeois*, 2011 WL 1930684 (S.D. Tex. May 19, 2011). The Southern District of Texas held a week-long evidentiary hearing, after which it rejected his claims. *Id.* at *19-20. Two of his claims were the same he raises here—that both the FDPA and the Eighth Amendment under *Atkins* bar his execution because he is intellectually disabled. *Id.* at *22. The Southern District of Texas rejected his claims, concluding that Mr. Bourgeois did not establish by a preponderance of the evidence that he was intellectually disabled. *Id.* at *46. It also denied a certificate of appealability on all of Mr. Bourgeois's claims. *Id.* at *111.

Mr. Bourgeois filed a notice of appeal and sought a certificate of appealability from the Fifth Circuit.[2] *United States v. Bourgeois*, 537 Fed. Appx. 604, 610 (5th Cir. 2013) ("*Bourgeois II*"). On August 5, 2013, the Fifth Circuit denied Mr. Bourgeois's request for a certificate of appealability. *Id.* at 665.

In 2017, the Supreme Court developed the legal standard governing *Atkins* claims when it decided *Moore v. Texas*, 137 S. Ct. 1039 (2017) ("*Moore I*"). Following *Moore I*, Mr. Bourgeois

---

[2] Mr. Bourgeois did not seek a certificate of appealability on the resolution of his *Atkins* claim. *Bourgeois II*, 537 Fed. Appx. at 610 n.17.

asked the Fifth Circuit to authorize a second or successive § 2255 as required by § 2255(h).  *See In re Bourgeois*, 902 F.3d 446 (5th Cir. 2018) ("*Bourgeois III*").  On August 23, 2018, the Fifth Circuit denied Mr. Bourgeois authorization to re-litigate his *Atkins* claim in a second or successive § 2255 proceeding citing the re-litigation bar found in 28 U.S.C. § 2244(b).  *Id.* at 448.

**B.     Mr. Bourgeois's Execution Was Scheduled and then Stayed**

On July 25, 2019, the Department of Justice set Mr. Bourgeois's execution date for January 13, 2020.  He filed the instant habeas petition pursuant to 28 U.S.C. § 2241 on August 15, 2019, and he filed a motion to stay his execution pending resolution of this action on the same date.  The motion to stay remains pending because Mr. Bourgeois's execution was stayed by the United States District Court for the District of Columbia prior to his scheduled execution.  *See In re In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-00145-TSC (D.D.C.), Dkt. 51 (the "Execution Protocol Litigation").  The United States appealed the stay entered in the Execution Protocol Litigation, and the appeal is pending before the United States Court of Appeals for the D.C. Circuit.  *See In re In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-5322 (D.C. Cir.).

## II.
### Discussion

Mr. Bourgeois's motion to stay his execution pending resolution of this action requires him to establish certain factors.  *See Lee v. Watson*, 2019 WL 6718924, *1 (7th Cir. Dec. 6, 2019).  The Court must consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  "The first two factors . . . are the most critical."  *Id.*

Before entering a stay, the Court must also consider "the extent to which the inmate has delayed unnecessarily in bringing the claim," *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004), because "someone who waits years before seeking a writ of habeas corpus cannot, by the very act of delay, justify postponement of the execution," *Lee*, 2019 WL 6718924, at *2.

**A.   Mr. Bourgeois Has Made a Strong Showing That He is Likely to Succeed on the Merits of His FDPA Claim**

The Court must address two issues to determine the strength of Mr. Bourgeois's FDPA claim.[3]   First, the Court must determine the likelihood that Mr. Bourgeois's FDPA claim is properly brought in a § 2241 action.  If it is, the Court must next determine whether Mr. Bourgeois has made a strong showing that he is intellectually disabled and thus his execution is prohibited by the FDPA.  The Court will address each issue in turn.

**1.   Respondent Has Waived Any Contention That Mr. Bourgeois's FDPA Claim Cannot Proceed in this § 2241 Action**

As noted above, Mr. Bourgeois raises two legal claims that rely on the same legal theory. He argues that both the Eighth Amendment, as established in *Atkins*, and the FDPA preclude his execution because he is intellectually disabled.  Mr. Bourgeois specifically argues both in his habeas petition and in his motion to stay that his FDPA claim can proceed under § 2241.  *See* Filing No. 1 at 7, 14, 76; Filing No. 3 at 9.

Respondent's combined response to Mr. Bourgeois's petition and motion to stay argues at length that Mr. Bourgeois's *Atkins* claim does not meet the Savings Clause and thus cannot proceed in a § 2241 action.  *See* Filing No. 10 at 45-86.  But Respondent fails to even mention Mr. Bourgeois's FDPA claim, let alone explain why it cannot be brought in a § 2241.  *See* Filing

---

[3] As noted above, the Court need not reach Mr. Bourgeois's *Atkins* claim because he is entitled to a stay based on his FDPA claim alone.

No. 10.  Respondent's failure to address Mr. Bourgeois's FDPA claim is both inexplicable and inexcusable, not only because of the stakes of this litigation, but also because there is no binding legal authority regarding whether FDPA claims can proceed in a § 2241 action.  The Court may have benefitted from a response from Respondent, but that opportunity has now been lost.

The failure to respond to an argument can result in waiver.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).  Although subject-matter jurisdiction cannot be waived, *see Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009), the Seventh Circuit has held that "[s]ections 2241 and 2255 deal with remedies; neither one is a jurisdictional clause," *Harris v. Warden*, 425 F.3d 386, 388 (7th Cir. 2005).  *See Prevatte v. Merlak*, 865 F.3d 894, 901 (7th Cir. 2017) (holding that dismissals based on the Savings Clause are not jurisdictional and thus are with prejudice).  This has permitted, for example, the Seventh Circuit to conclude that the United States can concede an underlying legal issue that would allow a claim to proceed in a § 2241 without the Court having to decide the legal issue.  *See Chazen v. Marske*, 938 F.3d 851, 863 (7th Cir. 2019).  It is thus clear that Respondent can waive the legal issue of whether a claim can be brought in a § 2241 petition.

The Court finds waiver appropriate here for the reasons stated above.  Moreover, Mr. Bourgeois's reply highlighted Respondent's failure to address the FDPA claim.  *See* Filing No. 11 at 46-47.  Nevertheless, Respondent failed to seek leave to file a surreply addressing the claim. This leads the Court to infer that Respondent's failure to address the claim was more intentional than inadvertent.  Accordingly, the Court deems any argument that Mr. Bourgeois's FDPA claim cannot proceed under § 2241 waived.

### 2. Mr. Bourgeois Has Made a Strong Showing That He is Intellectually Disabled and Thus the FDPA Forbids His Execution

The FDPA states that a "sentence of death shall not be carried out" upon a person who is intellectually disabled.  18 U.S.C. § 3596(c).  The Supreme Court in *Atkins* held that the Eighth

**App. 6**

Amendment also forbids the execution someone who is intellectually disabled.  536 U.S. at 321.

The only apparent difference between an *Atkins* claim and an FDPA claim is the legal source—the

Constitution and a statute, respectively.  *See Webster*, 784 F.3d at 1139 n.6 (suggesting that the

primary difference between an *Atkins* and an FDPA claim is the source of the right); *id.* at 1150

(Easterbrook, J., dissenting) (stating that *Atkins* did "not alter the substantive standard" of

§ 3596(c), it simply held that "the rule of § 3596(c) is part of the Constitution as well as the United

States Code").  The parties do not argue that the substantive analyses required by the claims are

different, so the Court will apply the standards governing an *Atkins* claim to Mr. Bourgeois's

FDPA claim.[4]

In *Hall*, the Supreme Court held that "[t]he legal determination of intellectual disability is

distinct from a medical diagnosis, but it is informed by the medical community's diagnostic

framework."  572 U.S. at 722.  The medical community's framework consists of analyzing three

criteria: "(1) intellectual-functioning deficits (indicated by an IQ score 'approximately two

standard deviations below the mean'—i.e., a score of roughly 70—adjusted for 'the standard error

of measurement'"); (2) adaptive deficits ('the inability to learn basic skills and adjust behavior to

changing circumstances'); and (3) the onset of these deficits while still a minor."[5]  *Moore I*, 137

---

[4] To be clear, this means the Court will apply subsequent Supreme Court cases interpreting *Atkins*, including *Moore I*.  Although the parties dispute whether *Moore I* is retroactive, the Court need not answer this question.  When, as here, a claim can be brought via § 2241, the Court applies current law.  *See Webster v. Lockett*, 2019 WL 2514833, \*3 (S.D. Ind. June 18, 2019) (applying *Moore I* to an *Atkins* claim proceeding in a § 2241 action).

[5] The Supreme Court in *Moore I* clarified certain aspects of its holding in *Hall*.  Relevant here, the Supreme Court held that in making the intellectual-disability determination courts were required to use "[t]he medical community's current standards," and then it discussed several ways in which the Texas Court of Criminal Appeals' assessment ran contrary to these standards.  *Moore*, 137 S. Ct. at 1052-53.  Mr. Bourgeois maintains that this Court's analysis of whether he is intellectually disabled will be different than the Southern District of Texas's because it considered certain factors in denying his *Atkins* claim that the Supreme Court deemed impermissible in *Moore I*.  *See* Filing

S. Ct. at 1045. These criteria are drawn from the most recent editions of the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-5") and the *American Association on Intellectual and Developmental Disabilities publication, AAIDD, Intellectual Disability: Definition, Classification, and Systems of Supports* (11th ed. 2010) ("AAIDD-11"). *See Moore I*, 137 S. Ct. at1045 (relying on the DSM-5 and AAIDD-11).

Mr. Bourgeois has made a strong showing that he meets all three criteria. First, he presents evidence that two IQ tests resulted in appropriately adjusted IQ scores of 68 (a Flynn-corrected score) and 70 (before Flynn correction).[6] Filing No. 1-4 at 36; Filing No. 1-1 at 45. There is thus a strong likelihood that Mr. Bourgeois meets the first criteria. *See Moore I*, 137 S. Ct. at 1045.

Second, Mr. Bourgeois presents strong evidence of adaptive deficits. The DSM-5 states that this criteria "is met when at least one domain of adaptive functioning—conceptual, social, or practical—is sufficiently impaired that ongoing support is needed in order for the person to perform adequately in one or more life settings at school, at work, at home, or in the community." Filing No. 1-1 at 84. Importantly, "the medical community focuses the adaptive-functioning inquiry on adaptive *deficits*," not adaptive strengths. *Moore I*, 137 S. Ct. at 1050; *see id.* (noting the AAIDD-11 states that "'significant limitations in conceptual, social, or practical adaptive skills [are] not outweighed by the potential strengths in some adaptive skills'" and the DSM-5 states that this inquiry "should focus on '[d]eficits in adaptive functioning'").

---

No. 1 at 59-71. While this may be relevant for the Savings Clause analysis of Mr. Bourgeois's *Atkins* claim, the Southern District of Texas's analysis is irrelevant when assessing the merit of Mr. Bourgeois's FDPA claim, as this Court decides the claim anew without any deference to the Southern District of Texas's decision. *See Webster*, 2019 WL 2514833, at *5-11.

[6] The Flynn Effect describes research that "has shown that [IQ] scores will tend to become inflated as times goes on when you're using an old test," so there are "formulas [that] have been developed to . . . give you an idea of how much the test score will be inflated or over represent . . . the person's ability." Filing No. 1-4 at 36.

App. 8

"In determining the significance of adaptive deficits, clinicians look to whether an individual's adaptive performance falls two or more standard deviations below the mean in any of the three adaptive skill sets (conceptual, social, and practical)." *Moore*, 137 S. Ct. at 1046. Mr. Bourgeois presents compelling evidence that his adaptive performance falls more than two standard deviations below the mean—that is, he scores below 70—in all three adaptive skill sets. *See* Filing No. 1 at 25-42 (collecting evidence). For example, adaptive-functioning tests produced scores of 69 in communication, 66 in daily living skills, and 66 in socialization. Filing No. 1-1 at 6. These scores "also corroborate what . . . other psychologists . . . learned through interviews and affidavits of Mr. Bourgeois' relatives and neighbors." Filing No. 1-1 at 6. Given that Mr. Bourgeois must demonstrate "deficits in only one of the three adaptive-skills domains" to establish that he is intellectually disabled, *Moore I*, 137 S. Ct. at 1050, he has made a strong showing that he meets this factor.

Third, Mr. Bourgeois has made a strong showing that the onset of his deficits occurred when he was a minor. Among other evidence, Dr. Victoria Swanson attested that "it is absolutely clear that the onset of Mr. Bourgeois' deficiencies in both his intellectual and adaptive functioning began before age 18 and continued into adulthood." Filing No. 1-1 at 11.

In sum, Mr. Bourgeois has made a strong showing that he is intellectually disabled and thus the FDPA bars his execution. To be clear, the Court has not conclusively determined that Mr. Bourgeois is intellectually disabled, only that he has made the strong showing necessary to warrant a stay of his execution pending resolution of this issue. The Court can only determine whether Mr. Bourgeois is intellectually disabled following a hearing on the question.

**B.    Mr. Bourgeois Faces Irreparable Injury Absent a Stay**

Mr. Bourgeois maintains that he will suffer irreparable harm absent a stay because he could be executed without a court ever deciding whether he is intellectually disabled under the standards set forth in *Moore I*.  Filing No. 3 at 9-10.  Respondent does not address irreparable injury, likely because "irreparable harm is taken as established in a capital case."  *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995); *see id.* ("There can be no doubt that a defendant facing the death penalty at the hands of the state faces irreparable injury.").  Accordingly, Mr. Bourgeois has established irreparable injury.

**C.    The Issuance of a Stay Will Not Substantially Injure Respondent and the Public Interest Favors Ensuring Mr. Bourgeois's Execution is Lawful**

Respondent maintains that staying Mr. Bourgeois's execution will undermine its strong interest in enforcing the judgment and that it is in the public interest to allow his execution to proceed.  Filing No. 10 at 106-07.  Mr. Bourgeois responds that because there is no "'penological purpose'" in executing someone who is intellectually disabled, Respondent will not be injured by a stay of execution.  Filing No. 3 at 11 (quoting *Hall*, 134 S. Ct. at 1992).  Further, Mr. Bourgeois argues that the United States has delayed setting any executions for fifteen years, thus it cannot now argue that additional delay will harm its interests.  Filing No. 3 at 11.

Respondent is correct that, as a general matter, the United States has a "strong interest" in "proceeding with its judgment."  *Lambert*, 498 F.3d at 452; *see Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Gomez v. U.S. Dist. Court for Northern Dist. of California*, 503 U.S. 653, 654 (1992).  But measuring the strength of that interest here shows that it is necessarily diminished by the United States' own delays in setting Mr. Bourgeois's execution.

As detailed above, Mr. Bourgeois's § 2255 proceedings concluded in the Fifth Circuit on August 5, 2013. *See Bourgeois II*, 537 Fed. Appx. 604.  Yet the United States did not schedule his

execution for nearly six years, and had not set any executions for fifteen years.  Indeed, the United States did not even have an execution protocol for eight years (from 2011 until 2019).  *See In re the Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-00145-TSC, Dkt. 50 at 14. If the United States' interest in proceeding with its judgment was as strong as Respondent suggests, it would not have waited several years before setting Mr. Bourgeois's execution date.  Thus, the United States' own delay in scheduling Mr. Bourgeois's execution shows that its interest in enforcing its judgment is not as strong as it suggests.

Because the United States' asserted interest in enforcing its judgment is diminished in this case, this harm does not outweigh Mr. Bourgeois's strong interest in not facing execution when the FDPA may forbid it.  Moreover, because Mr. Bourgeois has made a strong showing that he will succeed on the merits of his FDPA claim, the public interest favors ensuring that he is not unlawfully executed.

**D.      Mr. Bourgeois Has Not Unnecessarily Delayed Bringing His Claims**

The Court cannot stay an execution before considering "the extent to which the inmate has delayed unnecessarily in bringing the claim."  *Nelson*, 541 U.S. at 649-50.  Mr. Bourgeois maintains that he has diligently pursued his claims following the Supreme Court's decision in *Moore I*.  Filing No. 3 at 10.  Respondent does address this question at all, let alone suggest that Mr. Bourgeois has not diligently pursued these claims.  Filing No. 10 at 104-07.

The Supreme Court decided *Moore I* on March 28, 2017.  Exactly a year later on March 28, 2018, Mr. Bourgeois sought authorization from the Fifth Circuit to file a second or successive § 2255 motion raising the claims he raises here.  *See In re Bourgeois*, No. 18-40270 (5th Cir.). The Fifth Circuit denied Mr. Bourgeois authorization on August 23, 2018, and issued a revised opinion on September 24, 2018.  *Bourgeois III*, 902 F.3d at 448.  The Department of Justice set

**App. 11**

Mr. Bourgeois's execution date on July 25, 2019, and Mr. Bourgeois filed this action three weeks later on August 15, 2019.

The foregoing timeline shows that Mr. Bourgeois has not unnecessarily delayed bringing his claims. After *Moore I*, he sought to bring his claims via § 2255 within a year. Once that avenue was foreclosed, Mr. Bourgeois sought to bring his claims here via § 2241 less than a year later. Thus, this is not a case where an inmate waited several years to bring his claims. *See, e.g.*, *Dunn v. Price*, 139 S. Ct. 1312 (2019); *Lee*, 2019 WL 6718924, at *2.

### III.
### Conclusion

Mr. Bourgeois has established the factors necessary to obtain a stay of his execution pending resolution of this habeas action. Accordingly, Mr. Bourgeois's execution is **stayed** until further order of this Court. A separate order staying Mr. Bourgeois's execution shall also issue. Respondent and Respondent's counsel are responsible for ensuring that all actors who would have any involvement in Mr. Bourgeois's execution comply with the stay issued on this date, including the Warden of the United States Penitentiary in Terre Haute, Indiana, and the United States Marshal for this District.

The Court must hold a hearing on the merits of Mr. Bourgeois's claims to determine whether they are ultimately meritorious. The hearing will be set by separate order.

**IT IS SO ORDERED.**

Date: 3/10/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**App. 12**

Distribution:

Victor Abreu
Federal Community Defender Office
victor_abreu@fd.org

Paula Camille Offenhauser
OFFICE OF THE UNITED STATES ATTORNEY
paula.offenhauser@usdoj.gov

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov

Katherine Thompson
Federal Community Defender Office
katherine_thompson@fd.org

Peter Konrad Williams
Federal Community Defender Office
pete_williams@fd.org

**App. 13**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ALFRED BOURGEOIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00392-JMS-DLP |
| | ) | |
| WARDEN, et al. | ) | |
| | ) | |
| Respondents. | ) | |

### Order Staying Execution of Alfred Bourgeois

The Court concluded in an order issued on this date that Petitioner Alfred Bourgeois has demonstrated that he is entitled to a stay of his execution. Alfred Bourgeois's execution is therefore **stayed**. The Warden of the United States Penitentiary in Terre Haute, Indiana and the United States of America are prohibited from executing Alfred Bourgeois unless and until the Court lifts the stay of execution.

**IT IS SO ORDERED.**

Date: 3/10/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Victor Abreu
Federal Community Defender Office
victor_abreu@fd.org

Paula Camille Offenhauser
OFFICE OF THE UNITED STATES ATTORNEY
paula.offenhauser@usdoj.gov

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov

**App. 14**

Katherine Thompson
Federal Community Defender Office
katherine_thompson@fd.org

Peter Konrad Williams
Federal Community Defender Office
pete_williams@fd.org

**App. 15**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

ALFRED BOURGEOIS,                         )
                                          )
                    Petitioner,           )
                                          )
           v.                             )        No. 2:19-cv-00392-JMS-DLP
                                          )
WARDEN, et al.                            )
                                          )
                    Respondents.          )

**Order Denying Respondent's Motion to Reconsider and
Denying Respondent's Motion for Leave to File Surreply**

Petitioner Alfred Bourgeois filed this 28 U.S.C. § 2241 petition for a writ of habeas corpus alleging that the Eighth Amendment and the Federal Death Penalty Act ("FDPA") both forbid his execution because he is intellectually disabled. On March 10, 2020, the Court granted a stay of Mr. Bourgeois's execution based, in part, on a finding that his FDPA claim has a strong likelihood of success. One basis for this finding was Respondent's waiver of any argument that 28 U.S.C. § 2255(e) bars the FDPA claim.

On March 23, 2020, Respondent filed a motion to reconsider the Court's order granting a stay of execution and a motion for leave to file a surreply to Mr. Bourgeois's motion to stay. The Court construes Respondent's motion to reconsider as a Rule 59(e) motion to alter or amend judgment. *See Carter v. City of Alton*, 922 F.3d 824, 826 n.1 (7th Cir. 2019) (timely motion to reconsider a judgment should be construed as Rule 59(e) motion, even if motion does not expressly rely on Rule 59(e)); Fed. R. Civ. P. 54(a) (defining "judgment" to include "any order from which an appeal lies").

To obtain relief under Rule 59(e), a movant must show "(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment."

1

**App. 16**

*Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012). The rule does not provide an opportunity "for a party to undo its own procedural failures . . . or advance arguments that could and should have been presented to the district court prior to judgment." *Barrington Music Products, Inc. v. Music & Arts Center*, 924 F.3d 966, 968 (7th Cir. 2019) (cleaned up).

Respondent raises three primary arguments in support of the motion to reconsider: (1) the Court cannot enforce a waiver of § 2255(e); (2) Respondent did not waive § 2255(e) as to the FDPA claim; and (3) Respondent did not waive *Teague* and "abuse of the writ" arguments as to the FDPA claim. The Court will address each of Respondent's claims of error in turn.

## A.  The Court May Enforce a Waiver of § 2255(e).

Respondent argues that "parties cannot waive the correct application of the law" and that the Court therefore should have addressed whether § 2255(e) bars Mr. Bourgeois's FDPA claim. Dkt. 20 at 10−12. Respondent cites out-of-circuit cases to support this proposition while ignoring contrary Seventh Circuit precedent. *See*, *e.g.*, *Chazen v. Marske*, 938 F.3d 851, 863 (7th Cir. 2019) (accepting government's concession of legal issue that allowed petitioner to raise claim in § 2241 petition); *Hicks v. Stancil*, 642 F. App'x 620, 621 (7th Cir. 2016) ("We need not decide whether [the petitioner] meets [§ 2255(e)'s] exception because the government waives its defense that he does not, and its waiver allows us to decide the petition . . . ."); *Brown v. Rios*, 696 F.3d 638, 640−41 (7th Cir. 2012) (accepting government's concession that § 2255(e) did not bar § 2241 petition); *cf. Gonzalez v. Thaler*, 565 U.S. 134, 146−48 (2012) (by failing to raise timely objection, state waived argument that appeal should be dismissed for improper certificate of appealability in violation of 28 U.S.C. § 2253(c)). Respondent does not distinguish these cases or point to any contrary controlling precedent. Respondent therefore has failed to show manifest error in the Court's conclusion that 28 U.S.C. § 2255(e) may be waived in a particular case.

2

App. 17

**B.  Respondent Waived § 2255(e) As to Mr. Bourgeois's FDPA Claim.**

Next, Respondent denies waiving § 2255(e) as to Mr. Bourgeois's FDPA claim, even if it is possible to do so. There is no dispute that Respondent's pre-March 10 pleadings do not mention, let alone respond to, Mr. Bourgeois's FDPA claim. Dkt. 20 at 6 ("[T]he Respondent did not parse out a separate FDPA claim in its Return to Order to Show Cause."). Respondent instead alleges that Mr. Bourgeois himself conflated his FDPA and *Atkins* claims, inviting Respondent to treat them as a single claim, so Respondent's choice to do so was not waiver. *Id.* ("[T]he Respondent read [Mr.] Bourgeois's petition to merge his FDPA and *Atkins* claims as one claim implicating the same legal standards.").

To be sure, Mr. Bourgeois's FDPA and *Atkins* claims both rely on the same definition of "intellectually disabled." But as the Court noted in its order granting a stay of execution, Mr. Bourgeois "specifically argues both in his habeas petition and in his motion to stay that his FDPA claim can proceed under § 2241." Dkt. 17 at 5; *see*, *e.g.*, dkt. 1, ¶ 157 (making statutory and legislative history arguments for allowing FDPA claim to proceed under § 2241); dkt. 3 at 9 ("The FDPA requires such prospective relief to be available, providing as it does that '[a] sentence of death shall not be carried out upon a person who is mentally retarded.'" (quoting 18 U.S.C. § 3596(c))). These arguments are distinct from those Mr. Bourgeois made for allowing his *Atkins* claim to proceed in a § 2241 petition. And Respondent failed to address the FDPA claim even after Mr. Bourgeois highlighted the lack of response. *See* dkt. 11 at 9.

In short, Respondent has not shown manifest error in the Court's finding that Respondent waived § 2255(e) as to the FDPA claim.

**App. 18**

### C. Respondent Likewise Waived Any *Teague* and "Abuse of the Writ" Arguments as to Mr. Bourgeois's FDPA Claim.

Finally, Respondent argues that the Court erred in finding waiver of Respondent's *Teague* and "abuse of the writ" arguments. But as with § 2255(e), Respondent limited these arguments to Mr. Bourgeois's *Atkins* claim. *See* dkt. 10 at 78 ("[Mr.] Bourgeois' *Atkins* claim, which failed under § 2255, cannot merit consideration or relief in this Court. [Mr.] Bourgeois' attempt to circumvent § 2255(h) amounts to an invitation to abuse the writ under pre-AEDPA law."); *id.* at 79 ("*Teague* bars [Mr.] Bourgeois' reliance on *Moore* to revitalize his *Atkins* claim."). Indeed, as Mr. Bourgeois observes in his reply in support of his motion to stay, "the *Teague* rule applies to new rules of constitutional law only," not his statutory FDPA claim. Dkt. 11 at 44−45. Respondent therefore has not shown that the Court committed manifest error in deeming that Respondent waived these arguments along with any § 2255(e) argument as to Mr. Bourgeois's FDPA claim. *See* dkt. 18 at 6 ("[T]he Court deems any argument that Mr. Bourgeois's FDPA claim cannot proceed under § 2241 waived.").

### D. Respondent May Not Raise Objections For the First Time in a Surreply after the Motion to Stay Has Been Decided.

Respondent finally challenges Mr. Bourgeois's FDPA claim—after the Court granted a stay of execution—in a motion for leave to file a surreply and an accompanying proposed surreply. Dkts. 20, 21. The proposed surreply does not address the merits of Mr. Bourgeois's FDPA claim; instead, it argues that § 2255(e) and the "abuse of the writ" doctrine prohibit Mr. Bourgeois from raising the claim in his § 2241 petition. The Court had already deemed those objections waived before Respondent raised them, dkt. 18 at 6, and Respondent has not shown that the Court's waiver conclusion rests on manifest error. Respondent may not file a surreply after the fact to circumvent the prior waivers.

4

**App. 19**

## E.  Conclusion

Respondent's motion for leave to file a surreply, dkt. [20], is **denied**. Respondent's motion to reconsider the order staying execution, dkt. [22], is **denied**. A hearing on the merits of Mr. Bourgeois's claims will be set by separate order when the restrictions occasioned by the Covid-19 pandemic allow.

**IT IS SO ORDERED.**

Date: 5/27/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Victor Abreu
Federal Community Defender Office
victor_abreu@fd.org

Paula Camille Offenhauser
OFFICE OF THE UNITED STATES ATTORNEY
paula.offenhauser@usdoj.gov

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov

Katherine Thompson
Federal Community Defender Office
katherine_thompson@fd.org

Peter Konrad Williams
Federal Community Defender Office
pete_williams@fd.org

5

**App. 20**