No. 20–1891

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

ALFRED BOURGEOIS,
*PETITIONER-APPELLEE,*

v.

SUPERINTENDENT,
USP—TERRE HAUTE,
UNITED STATES OF AMERICA,
*RESPONDENTS-APPELLANTS*.

_____

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:19–cv–00392, Hon. Jane Magnus-Stinson, Chief J.

_____

**PETITIONER-APPELLEE'S OPPOSITION TO MOTION
FOR EXPEDITED CONSIDERATION OF APPEAL**

**THIS IS A DEATH PENALTY CASE**

Peter Williams
   *Counsel of Record*
Victor J. Abreu
Katherine Thompson
Federal Community Defender Office Eastern
for the District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215–928–0520

*Counsel for Petitioner-Appellee Alfred Bourgeois*

**INTRODUCTION**

On August 15, 2019, Alfred Bourgeois, an intellectually disabled ("ID") capital prisoner, filed a habeas petition in the United States District Court for the Southern District of Indiana, claiming that his execution is categorically barred by the Federal Death Penalty Act ("FDPA") and per se unconstitutional. He also moved to stay his then-impending execution. After receiving a full round of pleadings from both parties, the district court determined that Mr. Bourgeois had demonstrated a likelihood of success on the merits of his claim that the FDPA bars his execution.[1] Having also found that the equities weigh in Mr. Bourgeois's favor, the district court stayed his execution pending resolution of his petition. Respondents-Appellants (hereinafter, "the Government") now ask that this Court adjudicate their challenge to the stay without oral argument by the parties and according to an unnecessarily accelerated timetable.[2]

This Court's rules already prescribe expedited consideration of appeals in capital cases, including a provision giving priority to such cases when calendaring oral argument. *See* 7th Cir. R. 22(c)(1)(B), (d)(2), (e)(1); Cir. R. 34(b)(1)(v), (vi). Those rules also include an abbreviated briefing schedule, and undersigned counsel expect to file Mr. Bourgeois's brief by the deadline of July 16. And they create a presumption in favor of oral argument. *See* 7th Cir. R. 22(d)(1) (referencing Fed. R. App. P. 34(a)). The Government fails to identify any irreparable harm that would justify forgoing oral argument altogether or otherwise interrupting this Court's normal deliberative process in a capital case. Oral argument is of particular importance for a full and fair

---

[1] Because Mr. Bourgeois satisfied the standard for a stay based on his FDPA claim, the district court did not address the merits of Petitioner's challenges under the Eighth Amendment, and those aspects of his petition are not presently before this Court.

[2] In addition to suggesting that oral argument is not necessary in its motion, the Government states in its opening brief that it is not requesting "oral argument insofar as it would delay this Court's resolution of the appeal." Doc. No. 8 at i.

consideration of the issues. *See* Richard A. Posner, *The Federal Courts: Challenge and Reform* 161 (1999) ("[T]he value of oral argument to judges is very high."). Furthermore, the reasons that the Government does provide in support of its motion are unpersuasive and contradicted by the findings of the district court now on appeal—findings which are reviewed solely for an abuse of discretion.

For these reasons, and because compelling grounds exist for scheduling oral argument in accordance with the Court's usual operating procedures for capital cases and allowing full and deliberate review of the issues in this appeal, this Court should deny the Government's motion to expedite.

## ARGUMENT

The Government moves this Court to expeditiously vacate the district court's stay on the ground that it is "the only impediment to" the Government's ability to execute Mr. Bourgeois. Mot. ¶ 12. Yet the Government points to no matter of urgency in this case, and otherwise completely fails to show that this appeal presents the type of situation that has prompted this Court to order the expeditious consideration of an appeal in the past. *See, e.g.*, *Elim Romanian Pentecostal Church v. Pritzker*, 2020 WL 2517093, at \*1 (7th Cir. 2020) (expediting appeal of order allegedly interfering with constitutional right to free exercise of religion); *United Air Lines, Inc. v. Air Line Pilots Ass'n, Intern.*, 563 F.3d 257, 260 (7th Cir. 2009) ("expeditious" resolution of appeal statutorily mandated by law governing labor disputes); *In re StarNet, Inc.*, 355 F.3d 634, 636 (7th Cir. 2004) (expedited treatment warranted in light of impending loss of property); *cf. Redmond v. Redmond*, 724 F.3d 729, 735 (7th Cir. 2013) (denying expeditious consideration of mother's appeal from district court order that she return her five-year-old son to custody of father in Ireland).

Instead of identifying some urgent matter or irreparable harm to justify its motion, the

Government contends that "[a]n expeditious decision in this case will advance important public interests," namely, the interest of the Government and crime victims in the "timely enforcement of a [death] sentence." Mot. ¶ 14. This argument fails for two reasons.

First, as the Supreme Court has recognized, "[n]o legitimate penological purpose is served by executing a person with intellectual disability," such as Mr. Bourgeois. *Hall v. Florida*, 572 U.S. 701, 707 (2014). Furthermore, to the extent there is a public interest in timely enforcement of a death sentence, that interest does not outweigh the public interest in knowing that the federal government will carry out an execution in conformity with the Constitution and the will of Congress. *See Moore v. Texas*, 137 S. Ct. 1039, 1048 (2017) (Eighth Amendment limits a state's "power to take the life of *any* intellectually disabled individual") (emphasis in original) (quotation marks and citation omitted); 18 U.S.C. § 3596(c) ("A sentence of death *shall not be carried out* upon a person who *is* mentally retarded.") (emphasis added).

Second, the legitimacy of the Government's interest in the timely enforcement of death sentences is belied by its actions in this case and in its setting of dates for federal death sentences more generally. Mr. Bourgeois's initial post-conviction proceedings under 28 U.S.C. § 2255 were competed in the Fifth Circuit in 2013, and the Supreme Court denied certiorari in 2014. *See Bourgeois v. United States*, 574 U.S. 827 (2014); GA10–11.[3] Nevertheless, the Government did not first schedule his execution until July 25, 2019. As the district court observed below, the Government does generally have a "strong interest" in "proceeding with its judgment," but "measuring the strength of that interest here shows that it is necessarily diminished by the United States' own delays in setting Mr. Bourgeois's execution." GA11. More broadly, the Government

---

[3] The citation "GA__" refers to pages in the appendix filed with the Government's opening brief on June 25, 2020. *See* Doc. No. 8.

held up resolution of the still ongoing federal lethal injection litigation—initially filed in 2005—for *eight years* while it worked to revise its execution protocol. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 1:19–mc–145, 2019 WL 6691814 (D.D.C. Nov. 20, 2019) ("[T]he eight years that [the Government] waited to establish a new protocol undermines its arguments regarding the urgency and weight of [its] interest."). The Government spent the last six of those eight years—from July 2013 until July 2019—engaged in "the final phases of finalizing the protocol." *Roane v. Holder*, D.D.C. Case No. 05–2337 (RWR) (DAR), ECF Doc. No. 323 ("Defendants' Status Report," dated July 3, 2013). If the public interest was not harmed by the Government's eight-year protocol development process, it can surely withstand a delay of some additional weeks to allow for a full and fair presentation and consideration of the merits of the Government's appeal before this Court.

The Government now cites to recent developments in the lethal injection litigation to support its request for an expedited appeal here. *See* Mot. ¶¶ 7, 13 (quoting from per curiam order in which Supreme Court stated it "expect[ed] that the [D.C. Circuit would] render its decision" on an appeal brought by the Government "with appropriate dispatch" and asking that this Court do same here) (quoting *Barr v. Roane*, 140 S. Ct. 353, 353 (2019)); *see also* Doc. 14 (Government's Citation of Supplemental Authority Filed Pursuant to Federal Rule of Appellate Procedure 28(j)) (citing to Supreme Court's "expeditious consideration and disposition of the plaintiffs' petition for a writ of certiorari" in *Roane* litigation as support for motion to expedite in this case). Yet the *Roane* appeal involved an entirely different claim, and was in an entirely different procedural posture. This appeal involves a claim of categorical ineligibility for the death penalty based on Mr. Bourgeois's intellectual disability and petitioner's ability to obtain relief on that claim under 28 U.S.C. § 2241, and the lower court found that he has demonstrated a

likelihood of success on the merits of that claim. The Supreme Court's treatment of *Roane* simply has no bearing on the appropriate timetable for this appeal.

It is also notable that the Government did not immediately proceed with the very appeal it now seeks to expedite following the district court's grant of a stay below. The lower court issued its stay order on March 10, 2020, but rather than filing a Notice of Appeal the following day, the Government waited nearly two weeks, and then filed a motion for reconsideration in the district court. At the same time, the Government moved the lower court for leave to file an untimely and frivolous surreply, which the district court recognized as an impermissible attempt to "circumvent" the Government's failure to timely engage Mr. Bourgeois's FDPA claim in the first place. GA19. Those motions extended the filing of this appeal by more than two months. Finally, after it filed the Notice of Appeal on May 28, 2020, the Government used all of the 28 days allowed for filing its opening brief with this Court. It was only at that point that the Government deemed time to be of the essence in the resolution of its appeal.

The only other argument the Government provides in support of its motion is that it is going to prevail on appeal. *See* Mot. ¶ 12. Yet this Court reviews the district court's decision to stay Mr. Bourgeois's execution under the abuse of discretion standard. *See, e.g.*, *Wisconsin Music Network, Inc. v. Muzak Ltd. Partnership*, 5 F.3d 218, 221 (7th Cir. 1993) (district court's decision on preliminary injunction afforded "substantial deference"; the question "is whether the judge exceeded the bounds of permissible choice in the circumstances, not what [this Court] would have done if [it] had been in [judge's] shoes"); *cf. Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) ("Discretion is not whim."). The Government does not even approach overcoming this standard in its opening brief. Rather, as Mr. Bourgeois will detail in his forthcoming appellee's brief, the district court was well within its discretion to issue a stay, given

that:

- The district court held that the Government waived any challenge to the cognizability of Mr. Bourgeois's FDPA claim under § 2241. This Court reviews the factual finding of waiver for clear error, *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007), reviews a district court's enforcement of such waivers for abuse of discretion, *United Central Bank v. KMWC 845, LLC*, 800 F.3d 307, 310 (7th Cir. 2015), and has long held that "arguments not raised to the district court are waived on appeal," *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). *See also Textile Banking Co., Inc. v. Rentschler*, 657 F.2d 844, 853 (7th Cir. 1981) ("It is axiomatic that issues and arguments which were not raised before the district court cannot be raised for the first time on appeal."); *Bloch v. Frischholz*, 587 F.3d 771, 784 n. 9 (7th Cir. 2009) ("[D]eveloping an argument for the first time in a motion to reconsider is too late.").

- Even setting aside the Government's indisputable waiver, it forwards no convincing arguments in this Court against Mr. Bourgeois's right to relief under § 2241. The plain language of the FDPA—which states that an execution "shall not be carried out" against a person who "is" ID—bars the execution of a person who meets the definition of ID under the diagnostic standard applicable at the time of the execution. § 3596(c); *see also Bostock v. Clayton County, Georgia*, __ S. Ct. __, 2020 WL 3146686, at *4 (2020) (statute to be interpreted "in accord with the ordinary public meaning of its terms," lest courts "risk amending statutes outside the legislative process reserved for the people's representatives"). And this Court's jurisprudence clearly establishes that § 2241 is the appropriate vehicle where a petitioner challenges the execution of his sentence. *See, e.g.*, *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003).

- The district court held that Mr. Bourgeois made a "strong showing," based on extensive evidence, that he is ID under current diagnostic guidelines, GA8–9, which are now mandated by the Supreme Court in the assessment of an ID claim, *see Moore*, 137 S. Ct. at 1052–53.[4] The Government has never effectively challenged that Mr. Bourgeois is intellectually disabled under *current* medical standards and does not do so in its opening brief to this Court.[5]

---

[4] Indeed, several of the current diagnostic manuals cited as binding by the Supreme Court in *Moore* had not been published as of Mr. Bourgeois's § 2255 evidentiary hearing. *See Moore*, 137 S. Ct. at 1053 (citing AAIDD *User's Guide* (11th ed. 2012); Am. Psychiatric Assoc'n, Diagnostic and Statistical Manual of Mental Disorders—5th Edition (2013)).

[5] The Government does argue that Mr. Bourgeois received full and fair review of his ID claim during his § 2255 proceedings before the U.S. District Court for the Southern District of Texas, and that he is now simply attempting to relitigate that claim. While Mr. Bourgeois disputes that the Texas court applied the medical standards required under *Moore*, and thus also disputes the Government's argument that his § 2241 petition is merely "*re*litigating" the "same claim" he brought in § 2255 proceedings, the lower court correctly held in these proceedings that "the Southern District of Texas's analysis is irrelevant when assessing the merit of Mr. Bourgeois's FDPA claim, as this Court decides the claim anew without

- Lastly, the Government fails to persuasively argue that the district court's findings regarding the equitable stay factors "exceeded the bounds of permissible choice in the circumstances" or were based on a "whim."

At a minimum, this appeal raises serious questions of law with profound equitable considerations. *Cf. N. L. R. B. v. Playskool, Inc.*, 431 F.2d 518, 519–20 (7th Cir. 1970) (summary disposition of appeal appropriate "since the contentions of respondents . . . are so unsubstantial as to render these appeals frivolous"); *Roane*, 140 S.Ct. at 353 (Alito, J., concurring) (observing, in conjunction with order expressing expectation that circuit court would rule on appeal quickly, that the "Government ha[d] shown that it is very likely to prevail when this question is ultimately decided"). The Government has not even attempted to demonstrate that it will be harmed, irreparably or otherwise, by operation of the already accelerated procedures for deciding death penalty cases in this Circuit. *See* 7th Cir. R. 22(c)–(e). The Government's rush to schedule and carry out Mr. Bourgeois's execution cannot displace the Court's duty to consider this capital case with appropriate care, and to safeguard Mr. Bourgeois's "strong interest in not facing execution when the FDPA may forbid it." GA 11. The Court recognizes "its own right and responsibility to conduct its judicial work in a manner that reflects the seriousness of inflicting the death penalty upon a human being," even in cases —unlike this case—in which the Court weighs those concerns against a federal court's duty to avoid interfering with a state court's judgment. *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995).

Although Mr. Bourgeois will be prepared to file his appellee's brief and present oral argument according to this Court's preferred schedule, he respectfully requests that the Court follow its ordinary schedule for capital cases, and that argument be scheduled to allow counsel

---

any deference to the Southern District of Texas's decision." GA7–8, n.5 (citing *Webster v. Lockett*, 2019 WL 2514833, *3, 5–11 (S.D. Ind. June 18, 2019), which applied *Moore* to an ID claim proceeding in a § 2241 action).

adequate time to prepare after receiving the Government's reply brief on July 23.

## CONCLUSION

For the reasons set forth above, the Government's motion for expedited appeal should be denied so that the issues raised in this appeal can be given the process and careful review they deserve.

Respectfully submitted,

/s/ *Peter Williams*
Peter Williams
   *Counsel of Record*
Victor J. Abreu
Katherine Thompson
Federal Community Defender Office Eastern
for the District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Dated:   July 2, 2020

**CERTIFICATE OF SERVICE**

I, Peter Williams, hereby certify that on July 2, 2020, I electronically filed the foregoing with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Peter Williams*
Peter Williams

**CERTIFICATION REGARDING WORD COUNT**

I, Peter Williams, hereby certify that, according to the word count feature of the word processing program used to generate this document, this Response contains 2633 words, which complies with the word limitations set forth by Fed. R. App. P. 27(d)(2)(A) for a response to a motion.

*/s/ Peter Williams*
Peter Williams