# In the United States Court of Appeals for the Seventh Circuit

---

**ALFRED BOURGEOIS,**
**PETITIONER-APPELLEE**

v.

**T.J. WATSON, WARDEN, AND**
**UNITED STATES OF AMERICA,**
**RESPONDENTS-APPELLANTS**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, D. CT. NO. 2:19-CV-392 (HON. JANE MAGNUS-STINSON) **(CAPITAL CASE)**

---

**REPLY BRIEF FOR THE UNITED STATES**

---

JOSH J. MINKLER
    United States Attorney
    Southern District of Indiana

PAULA C. OFFENHAUSER
    Assistant United States Attorney
    Southern District of Texas

BRIAN C. RABBITT
    Acting Assistant Attorney General

CHRISTOPHER J. SMITH
    Attorney
    Appellate Section
    Criminal Division
    United States Department of Justice
    950 Pennsylvania Ave., NW
    Washington, DC 20530
    (202) 532-4154
    Christopher.J.Smith@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION .......................................................................................................1

ARGUMENT ..............................................................................................................2

    THE DISTRICT COURT ERRED IN GRANTING A STAY OF EXECUTION, AND BOURGEOIS'S ARGUMENTS TO THE CONTRARY ARE MERITLESS ...................................................................................2

        A.    Bourgeois Cannot Establish a Strong Likelihood Exists He Will Succeed on the Merits of His Habeas Petition Because Two Procedural Bars Foreclose His Intellectual-Disability Claim .......................................................................................2

            1.    The District Court Erred in Finding that Bourgeois's Claim May Proceed Under 28 U.S.C. § 2241 ........................3

            2.    The District Court Erred in Finding that Bourgeois's § 2241 Habeas Petition Can Proceed Based on an Alleged Waiver by the Government .................................. 13

        B.    Even If Bourgeois's Petition Could Proceed Under § 2241, the District Court Still Erred in Finding that Bourgeois Has a Likelihood of Success on His Intellectual-Disability Claim .......19

        C.    Equitable Factors Likewise Do Not Support a Stay .......................25

CONCLUSION ...........................................................................................................27

CERTIFICATE OF SERVICE ......................................................................................28

CERTIFICATE OF COMPLIANCE ..............................................................................29

# TABLE OF AUTHORITIES

## Cases

*Atkins v. Virginia*,
536 U.S. 304 (2002) ..................................................................................13

*Barr v. Lee*,
--- S. Ct. ----, 2020 WL 3964985 (July 14, 2020) ...............................25, 26

*Bourgeois v. United States*,
574 U.S. 827 (2014) ...............................................................................25, 26

*Bucklew v. Precythe*,
139 S. Ct. 1112 (2019) ...............................................................................26

*Busby v. Davis*,
925 F.3d 699 (5th Cir. 2019) ..................................................................11, 12

*Chazen v. Marske*,
938 F.3d 851 (7th Cir. 2019) ........................................................................7

*Ex parte Briseno*,
135 S.W. 3d 1 (Tex. Crim. App. 2004) ........................................................20

*Ford v. Wainwright*,
477 U.S. 399 (1986) .....................................................................................11

*Garza v. Lappin*,
253 F.3d 918 (7th Cir. 2001) ...................................................................3, 4

*Hall v. Florida*,
572 U.S. 701 (2014) ......................................................................................9

*Hamer v. Neighborhood Housing Services of Chicago*,
138 S. Ct. 13 (2017) ....................................................................................16

*Harris v. Nelson*,
394 U.S. 286 (1969) .....................................................................................16

*In re Davenport*,
147 F.3d 605 (7th Cir. 1998) ...................................................................3, 4

*Kenna v. U.S. Dist. Court for C.D. Cal.*,
 435 F.3d 1011 (9th Cir. 2006) ...........................................................................9

*Lee v. Watson*,
 ---F.3d ----, 2020 WL 3888196 (7th Cir. July 10, 2020) ........................................... 1, 5

*McCleskey v. Zant*,
 499 U.S. 467 (1991) ........................................................................................12

*McManus v. Neal*,
 779 F.3d 634 (7th Cir. 2015) ............................................................................25

*Moore v. Texas*,
 137 S. Ct. 1039 (2017) .............................................................. 6, 20, 21, 22

*Moore v. Texas*,
 139 S. Ct. 666 (2019) ............................................................................... 6, 21

*Nelson v. Campbell*,
 541 U.S. 637 (2004) .................................................................................26, 27

*Panetti v. Quarterman*,
 551 U.S. 930 (2007) ........................................................................................11

*Penry v. Lynaugh*,
 492 U.S. 302 (1989) ........................................................................................13

*Pension Ben. Guar. Corp. v. LTV Corp.*,
 496 U.S. 633 (1990) ........................................................................................10

*Purkey v. United States*,
 --- F.3d ----, 2020 WL 3603779 (7th Cir. July 2, 2020) ...................................1, 4, 5, 6

*Reed v. Columbia St. Mary's Hosp.*,
 915 F.3d 473 (7th Cir. 2019) ............................................................................17

*Roundtree v. Krueger*,
 910 F.3d 312 (7th Cir. 2018) ............................................................................12

*Russian Media Grp., LLC v. Cable Am., Inc.*,
 598 F.3d 302 (7th Cir. 2010) ............................................................................17

*Ryan v. United States*,
688 F.3d 845 (7th Cir. 2012) ...................................................................15

*S.E.C. v. Yang*,
795 F.3d 674 (7th Cir. 2015) ...................................................................17

*Smith v. Comm'r, Ala. Dep't of Corr.*,
924 F.3d 1330 (11th Cir. 2019).............................................................13

*Teague v. Lane*,
489 U.S. 288 (1989) ......................................................................... 12, 13

*Tyler v. Cain*,
533 U.S. 656 (2001) ....................................................................................7

*United States v. Ford*,
683 F.3d 761 (7th Cir. 2012) ...................................................................17

*United States v. Garcia*,
580 F.3d 528 (7th Cir. 2009) ............................................................ 15, 16

*United States v. Giovannetti*,
928 F.2d 225 (7th Cir. 1991) ...................................................................18

*United States v. Jaimes-Jaimes*,
406 F.3d 845 (7th Cir. 2005) ...................................................................14

*United States v. Staples*,
202 F.3d 992 (7th Cir. 2000) ...................................................................15

*Webster v. Daniels*,
784 F.3d 1123 (7th Cir. 2015) (en banc) ........................................passim

*Williams v. Kelley*,
858 F.3d 464 (8th Cir. 2017) ............................................................ 11, 12

*Wood v. Milyard*,
566 U.S. 463 (2012) ..................................................................................17

**Statutes**

18 U.S.C. § 3596 ..................................................................................................1, 9, 10

28 U.S.C. § 2241 ..................................................................................................passim

28 U.S.C. § 2255 ..................................................................................................passim

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ................................................................................................6

**Other Authorities**

134 Cong. Rec. 22,993 (1988).................................................................................9

In his 28 U.S.C. § 2241 habeas petition, Petitioner-Appellee Alfred Bourgeois presents the same intellectual-disability claim—and the exact same evidence—that he litigated and lost almost a decade ago in his 28 U.S.C. § 2255 motion in the Southern District of Texas (the "Texas district court"). Bourgeois's claim fares no better now, and both the saving clause of 28 U.S.C. § 2255(e) and the abuse-of-the-writ doctrine preclude him from relitigating his intellectual-disability claim in a § 2241 habeas petition. The district court was therefore wrong in concluding that Bourgeois has a strong likelihood of success on the merits of his petition, and it abused its discretion when it granted Bourgeois a stay of execution.

In the four weeks since the government filed its opening brief, its arguments have only grown stronger. During that time, this Court has twice "unambiguously" held that a "§ 2241 petition may not proceed under the Saving[] Clause absent a compelling showing that it was impossible to use § 2255 to cure the defect identified in the § 2241 petition." *Lee v. Watson*, ---F.3d ----, 2020 WL 3888196, at *3 (7th Cir. July 10, 2020) (quotations omitted); *see also Purkey v. United States*, --- F.3d ----, 2020 WL 3603779 (7th Cir. July 2, 2020) (same). Bourgeois cannot make this "compelling showing." To the contrary, this Court was correct when it assumed in *Webster v. Daniels*, 784 F.3d 1123, 1139 (7th Cir. 2015) (en banc), that a defendant's claim under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3596(c), that his death sentence cannot be

implemented due to his intellectual disability "would not be enough to trigger the saving[] clause."

Bourgeois's primary contention is that this Court should not address any of the government's substantive arguments and instead should uphold the district court's finding that the government waived all procedural defenses to his FDPA claim. But neither the district court nor Bourgeois have posited any strategic reason for the government to have waived these arguments—indeed, it would have been nonsensical for the government to do so—and the record does not support that finding. It is in the interests of justice, particularly in a capital case, for this Court to address these arguments and reach the correct result.

As the Supreme Court has repeatedly and recently made clear, there is public interest in the timely enforcement of a lawful death sentence. This Court should therefore expeditiously vacate the stay entered by the district court.

## ARGUMENT

**THE DISTRICT COURT ERRED IN GRANTING A STAY OF EXECUTION, AND BOURGEOIS'S ARGUMENTS TO THE CONTRARY ARE MERITLESS**

### A. Bourgeois Cannot Establish a Strong Likelihood Exists He Will Succeed on the Merits of His Habeas Petition Because Two Procedural Bars Foreclose His Intellectual-Disability Claim

As detailed in the government's opening brief (Br. 17-34), Bourgeois cannot show a strong likelihood of success on his habeas petition because both the saving clause of 28 U.S.C. § 2255(e) and the abuse-of-the-writ doctrine bar the intellectual-

disability claim Bourgeois asserts in his petition. Bourgeois responds that the FDPA permits federal capital defendants to raise intellectual-disability claims at any time prior to execution without any procedural limitations. He further contends that the government accepted that the FDPA permits his unfettered ability to raise multiple intellectual-disability claims up to the time of his execution by intentionally waiving a response to arguments in his habeas petition. These contentions are meritless.

### 1. The District Court Erred in Finding that Bourgeois's Claim May Proceed Under 28 U.S.C. § 2241

1. Bourgeois's intellectual-disability claim cannot pass through the saving clause, 28 U.S.C. § 2255(e), which allows a federal prisoner to seek relief in a § 2241 habeas petition only if a 28 U.S.C. § 2255 motion "is inadequate or ineffective to test the legality of his detention." This Court's cases construing the saving clause—including its two most recent cases construing the saving clause in capital cases—establish that § 2255 was not inadequate or ineffective for Bourgeois to raise the claim that he cannot be executed because he is intellectually disabled.

At the time the government filed its opening brief, this Court had examined the contours of the saving clause in three central cases, *In re Davenport*, 147 F.3d 605 (7th Cir. 1998); *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001); and *Webster*, 784 F.3d 1123. The government explained (Br. 24-27) that Bourgeois's claim does not align with any of the past instances where this Court has found the saving clause satisfied because, among other things, Bourgeois did not rely on a retroactive statutory decision

(*Davenport*), a decision by an international court that did not exist at the time of his § 2255 motion (*Garza*), or new evidence that existed at the time of his trial but could not be obtained despite the diligence of defense counsel (*Webster*).

Bourgeois concedes (Resp. 40) that his claim "does not fit within the precise facts" of this Court's prior saving-clause cases, but he asserts that the saving clause nonetheless permits his intellectual-disability claim because the "enduring theme" of *Davenport*, *Garza*, and *Webster* was "'to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence.'" *Id.* (quoting *Davenport*, 147 F.3d at 609). This Court's most recent cases confirm, however, that the saving clause forecloses the intellectual-disability claim that Bourgeois asserts in his habeas petition.

Three weeks ago, in *Purkey*, 2020 WL 3603779, this Court confronted Wesley Purkey's attempt to litigate in a § 2241 petition new claims of ineffective assistance of counsel based on his theory that § 2255 is "structurally inadequate to test the legality of a conviction and sentence any time a defendant receives ineffective assistance of counsel in his [§ 2255] motion." *Id.* at *7. The Court rejected this argument, explaining that while *Davenport*, *Garza*, and *Webster* do not "create rigid categories delineating when the safety valve is available," those cases demonstrate, at a minimum, "that the words 'inadequate or ineffective,' taken in context, must mean something more than unsuccessful." *Id.* at *8. "[T]here must be a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem." *Id.*

4

The Court emphasized that "the mechanisms of [§ 2255] gave [Purkey] an opportunity to complain about ineffective assistance of trial counsel, and he took advantage of that opportunity." *Id.* at *10. It therefore held that "[t]here was nothing structurally inadequate or ineffective about section 2255 as a vehicle to make those arguments." *Id.*

The following week, a different panel of this Court confronted a similar situation in *Lee*, 2020 WL 3888196, where it reiterated that "*Purkey* holds unambiguously that under *Webster* and earlier circuit precedent," a § 2241 petition may not proceed under the saving clause "absent 'a compelling showing' that it was 'impossible' to use § 2255 to cure the defect identified in the § 2241 petition." *Id.* at *3 (quoting *Purkey*, 2020 WL 3603779, at *8). The Court again emphasized that "'[i]t is not enough that proper use of the statute results in a denial of relief,'" *id.* (quoting *Purkey*, 2020 WL 3603779, at *8), and to fulfill the saving clause, there must be something "'structurally inadequate or ineffective about section 2255 as a vehicle'" for the arguments raised in the § 2241 petition, *id.* (quoting *Purkey*, 2020 WL 3603779, at *10).

These cases confirm that § 2255 was not structurally inadequate to raise the intellectual-disability claim that Bourgeois now asserts. To the contrary, Bourgeois raised an intellectual-disability claim in his § 2255 motion—both under the Constitution and the FDPA. The district court then held a week-long evidentiary hearing, evaluated his claim under current medical standards, and issued a lengthy opinion rejecting Bourgeois's arguments. *See* App. 76-129. Thus, although Bourgeois asserts (Resp. 40) that there exists "a structural defect with § 2255" because "he is presently [intellectually

5

disabled] but without an avenue under § 2255 to vindicate his FDPA claim," *Purkey* and *Lee* establish that this contention is baseless. Bourgeois *did* raise his intellectual-disability claim in his § 2255 motion, and while he disagrees with the Texas district court's merits determination on that issue, the fact that his claim did not succeed does not mean that the requirements of the saving clause are fulfilled. *See Purkey*, 2020 WL 3603779, at *8.

Bourgeois's other arguments do not change this conclusion. He first argues (Resp. 41-42) that there is a defect with § 2255 because it would have been "'literally impossible'" for him to rely on the Supreme Court's *Moore* decisions, *Moore v. Texas*, 137 S. Ct. 1039 (2017) ("*Moore I*"), and *Moore v. Texas*, 139 S. Ct. 666 (2019) ("*Moore II*"), which were decided after the denial of his § 2255 motion. This contention is meritless for a number of reasons: As an initial matter, Bourgeois does not even attempt to demonstrate that the *Moore* decisions apply retroactively on collateral review, and that failure alone precludes his reliance on those decisions. The *Moore* decisions are also constitutional cases that merely apply *Atkins*. *See* Br. 26.

Moreover, in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 105, 110 Stat. 1214, 1220, Congress expressly delineated the circumstances in which a defendant may file a second or successive § 2255 motion relying on an intervening constitutional decision by the Supreme Court, and Congress provided that a defendant may do so only when he relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2); *see also Tyler v. Cain*, 533 U.S. 656, 662-64 (2001) (holding that "made retroactive" means that the Court must have specifically held that the decision is retroactive). Permitting Bourgeois to rely on the intervening constitutional decisions in *Moore*—cases which have not been "made retroactive to cases on collateral review by the Supreme Court," 28 U.S.C. § 2255(h)(2)—in a § 2241 habeas petition would render the AEDPA's statutory restrictions a dead letter.

Regardless, even assuming the *Moore* decisions were statutory decisions defining the scope of the FDPA, those decisions do not provide a basis to conclude that § 2255 was inadequate or ineffective to raise the intellectual-disability arguments Bourgeois asserts in his § 2241 habeas petition. As an initial matter, Bourgeois does not identify Fifth Circuit precedent at the time he filed his § 2255 motion that squarely foreclosed him from asserting the arguments pertaining to the application of *Atkins* that he now advances. *See, e.g., Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019) (explaining that the saving clause may be applicable only if precedent at the time of the defendant's § 2255 motion foreclosed the statutory claim raised in his § 2241 petition). Thus, it was not impossible for Bourgeois to raise in his § 2255 motion the intellectual-disability claim that he asserts in his § 2241 petition.

Bourgeois also suggests (Resp. 42) that it would be "Kafkaesque" to deny him the opportunity to proceed with his § 2241 petition when new diagnostic standards have been published since the denial of his § 2255 motion. This argument is also meritless.

As an initial matter, the Texas district court's decision remains sound even considering the newest diagnostic standards. *See infra* 24-25. But even assuming that those new standards somehow constitute new evidence—an argument that Bourgeois does not appear to advance—he could still not proceed under *Webster*. The Court in *Webster* made clear that not "all newly discovered evidence" allows a defendant to proceed in a § 2241 petition, or "else there would never be any finality to capital cases involving either the intellectually disabled or minors." 784 F.3d at 1140. The Court allowed Webster to proceed under § 2241 because he had presented new evidence that existed at the time of his trial but could not be obtained despite counsel's diligence. *See id.* at 1140-41. By contrast, Bourgeois has presented no new evidence, let alone evidence that existed at the time of his trial but was inaccessible to his lawyers.

Bourgeois's argument that § 2255 is structurally defective whenever diagnostic standards change after the denial of a § 2255 motion has no limiting principle. It would permit endless litigation on a defendant's intellectual disability, swallowing many of the rules that Congress and the courts have crafted in collateral-review cases, and seriously undermining the finality of federal capital cases.[1]

---

[1] While Bourgeois rightly notes (Resp. 47-48) that this Court did not examine the FDPA in detail in *Webster*, 784 F.3d at 1139, it is worth noting that if Bourgeois were correct that the FDPA allows a defendant to litigate intellectual-disability claims at any time prior to execution, with no procedural constraints, this Court would not have had to address whether the saving clause permitted the intellectual-disability claim that Webster asserted, and the Court would not have had to adopt the rule that the saving clause permits a defendant to present new evidence in a habeas petition in support of

8

2.  Bourgeois attempts to circumvent these procedural barriers by arguing (Resp. 41) that the FDPA "calls for an inquiry governed by present-day diagnostic standards." But Bourgeois provides no basis to construe the FDPA as permitting a defendant to file a habeas petition raising a new intellectual-disability claim any time there is an arguable change in medical standards for diagnosing intellectual disability.  To the contrary, as the government explained (Br. 30), because the language of the FDPA, 18 U.S.C. § 3596(c)—which provides that a "sentence of death shall not be carried out upon a person who is mentally retarded"—matches the language the Supreme Court used in *Atkins* and its progeny, it does not create any procedural avenues beyond the well-worn path of *Atkins* itself.  *See, e.g.*, *Hall v. Florida*, 572 U.S. 701, 708 (2014).  The government also explained (Br. 30) that when Congress originally enacted this language, its proponent made clear that under this provision, a defendant's intellectual-disability claim "would be handled *as any other defense* would be when it came to this kind of crime or the sentencing thereof."  134 Cong. Rec. 22,993 (1988) (statement of Rep. Levin) (emphasis added); *see also, e.g.*, *Kenna v. U.S. Dist. Court for C.D. Cal.*, 435 F.3d 1011, 1015 (9th Cir. 2006) (noting that "floor statements by the sponsors of the legislation are given

---

an intellectual-disability in certain narrow circumstances not applicable here.  *See id.* at 1140-41.

considerably more weight than floor statements by other members"). Bourgeois offers

no response to either of these crucial points.[2]

Bourgeois concedes (Resp. 44) that his "impairments have not changed" since

the Texas district court decided the issue, and he admits (Resp. 47) that the FDPA does

not permit the relitigation of an intellectual-disability claim. Instead, he argues

(Resp. 45) that the three prohibitions on execution provided by the FDPA—pregnancy,

mental incompetence, and intellectual disability—"are forward-looking and assess the

prisoner's status at the time of execution, rather than at the time of sentencing";

therefore, according to Bourgeois, because diagnostic and legal standards have changed,

his claim must now be reviewed an additional time prior to the implementation of his

sentence.

While Bourgeois is correct that the FDPA prohibits the execution of an

individual who is pregnant, incompetent, or intellectually disabled, he fails to account

for the crucial difference between these three categories. Pregnancy and incompetence

are (or, in the case of incompetence, can be) transient conditions. *See, e.g.*, 18 U.S.C.

§ 3596(b) (prohibiting execution "while" a woman is pregnant); *Busby v. Davis*, 925 F.3d

---

[2] While ignoring the statements of the original amendment's sponsor, Bourgeois continues to rely (Resp. 46) on the statement Sen. Orrin Hatch made in support of a failed amendment to the intellectual-disability provision. There is no indication that the proponents of either the original legislation, or those who reenacted it, agreed with Sen. Hatch. Indeed, the Supreme Court has explained that "a proposal that does not become law" is "a particularly dangerous ground" upon which to determine congressional intent. *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990).

699, 713 (5th Cir. 2019) (incompetency "may recede and later reoccur"). By contrast, intellectual disability is "a permanent condition that must have manifested before the age of 18." *Id.*

Because intellectual disability is a permanent life-long condition, any intellectual-disability claim pertaining to the implementation of a death sentence attacks the legality of the sentence itself: "A person who is found to be intellectually disabled is permanently ineligible to be executed, and the sentence of death is vacated." *Busby*, 925 F.3d at 713. Unlike an incompetency claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), an intellectual-disability claim is ripe both at the time of sentencing and at the time a defendant brings his § 2255 motion. *See Williams v. Kelley*, 858 F.3d 464, 472 (8th Cir. 2017) (per curiam) ("an *Atkins* claim ripens before an execution is imminent"); *see also Panetti v. Quarterman*, 551 U.S. 930 (2007). An intellectual-disability claim is therefore cognizable and must be raised at the time of sentencing or, at the latest, in a § 2255 motion, just as scores of defendants—including Bourgeois—have previously done.

Bourgeois repeatedly responds (Resp. 41, 44) that the FDPA prohibits his execution because he "'is'" intellectually disabled. But as discussed, an intellectual-disability claim—both a statutory claim under the FDPA and a constitutional *Atkins* claim—requires a court to determine whether a defendant is intellectually disabled, and that claim is ripe at the time of the defendant's sentencing and § 2255 motion. Thus, Bourgeois's intellectual-disability claim was ripe at the time he filed his § 2255 motion, he raised that claim in his § 2255 motion, and the Texas district court reviewed and

rejected that claim on the merits, concluding that Bourgeois *is not* intellectually disabled. The FDPA does not permit Bourgeois to relitigate that claim in a § 2241 habeas petition.[3]

3. Regardless, even if Bourgeois could evade the saving clause and proceed under § 2241, his claim is nonetheless barred by the abuse-of-the-writ doctrine. *See* Br. 33-34. Before the enactment of AEDPA, "[a]n attempt to relitigate a theory, in the absence of an intervening change of law, was taken as a paradigm abuse of the writ." *Roundtree v. Krueger*, 910 F.3d 312, 314 (7th Cir. 2018).

Bourgeois contends (Resp. 50-51) that the abuse-of-the-writ doctrine does not apply because the law changed after his initial § 2255 proceedings, and a change in the law is an exception to the doctrine. But only a change in the law that applies retroactively on collateral review can create such an exception. *See McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (addressing the abuse-of-the-writ doctrine in a capital case and noting the "force of *Teague v. Lane*, 489 U.S. 288, 334 (1989), which prohibits, with certain exceptions, the retroactive application of new law to claims raised in federal

---

[3] Bourgeois similarly argues (Resp. 49-50) that he can proceed under § 2241 because his claim challenges both the imposition and the implementation of his sentence. Unlike typical claims pertaining to the implementation of a sentence, due to the nature of intellectual disability, any implementation claim (1) in substance challenges the imposition of the sentence, and (2) was ripe when it was reviewed and rejected following his § 2255 motion. *See, e.g.*, *Williams*, 858 F.3d at 472; *Busby*, 925 F.3d at 713. Demonstrating both points, Bourgeois has sought habeas relief from his "convictions and sentences, including his sentence of death," Dkt. 1, at 74, the same relief he sought in his § 2255 motion, S.D. Tex. Dkt. 396, at 129.

habeas"). Thus, in order for the *Moore* decisions to provide an exception to the abuse-of-the-writ doctrine, they must apply retroactively under the principles set forth in *Teague*, 489 U.S. at 334. *See Penry v. Lynaugh*, 492 U.S. 302, 329 (1989) (explaining that a new rule applies retroactively only under the circumstances identified in *Teague*), *abrogated on other grounds*, *Atkins v. Virginia*, 536 U.S. 304 (2002), even if the Supreme Court itself need not declare that the those decisions apply retroactively, as required for a defendant to rely on those decisions in a successive § 2255 motion, *see* 28 U.S.C. § 2255(h).

Bourgeois does not even attempt to demonstrate that the *Moore* decisions are retroactive under *Teague*, and at least one court has concluded to the contrary. *See Smith v. Comm'r, Ala. Dep't of Corr.*, 924 F.3d 1330, 1338-39 (11th Cir. 2019) (holding that *Moore I* does not apply retroactively). The abuse-of-the-writ doctrine precludes Bourgeois from relitigating in a § 2241 habeas petition the intellectual-disability claim that the Texas district court rejected in his § 2255 proceedings.[4]

### 2. The District Court Erred in Finding that Bourgeois's § 2241 Habeas Petition Can Proceed Based on an Alleged Waiver by the Government

The district court erred when it did not consider whether the saving clause or the abuse-of-the-writ doctrine foreclosed Bourgeois's intellectual-disability claim and

---

[4] For the reasons explained *infra* 19-21, *Moore I* and *Moore II* do not undermine the Texas district court's findings, so even assuming those decisions applied retroactively, Bourgeois's claim is still an abuse of the writ.

instead allowed Bourgeois's claim to proceed based on its finding that the government had waived those defenses to Bourgeois's FDPA claim. As the government previously explained (Br. 36-38), it argued at length in its response below that Bourgeois's intellectual-disability claim could not proceed based on the saving clause and the abuse-of-the-writ doctrine. The government did not waive these arguments as they pertain to the FDPA, and nothing in the record suggests otherwise. Regardless, even if the district court were correct that the government's response did not encompass Bourgeois's FDPA arguments, the government at most forfeited those arguments, and this Court should decide the issue.

Bourgeois's arguments to the contrary (Resp. 15-27) are meritless. While Bourgeois does not dispute (Resp. 19-20) that his habeas petition repeatedly conflated his FDPA arguments with his constitutional arguments—which, as he admits (Resp. 41), implicate the same substantive standard—he contends that the government's failure to discuss the FDPA separately in its response to his habeas petition waived any procedural defenses to his FDPA-based claim and precludes the government from raising those procedural defenses on appeal. He is wrong on both accounts. "The touchstone of waiver is a knowing and intentional decision," *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005), and the circumstances here leave no doubt that the government did not intentionally relinquish these arguments.[5]

---

[5] Bourgeois suggests (Resp. 16) that this Court should review the district court's factual findings for clear error. The district court did not hold a hearing, however, and

14

Bourgeois relies (Resp. 17) primarily on *United States v. Garcia*, 580 F.3d 528, 542 (7th Cir. 2009), for the proposition that "when a party is expressly alerted to its failure to raise a defense and does nothing in response, it intentionally waives that defense." *Garcia*, however, does not bear the weight that he places on it. There, this Court found waiver because defense counsel not only stated that he had no objections to a pre-sentence report, but also "affirmatively stated that he knew that [defendant] could be sentenced" for crimes committed in relation to the entire conspiracy charge, and that he was not challenging that charge for a "strategic reason." *Garcia*, 580 F.3d at 542. In determining whether these circumstances amounted to waiver, the Court made clear that its "duty when considering waiver is to divine from the record an *intent to forego an argument* . . . in light of the other circumstances in [a] case." *Id.* (emphasis added).

The record here, in contrast to the record in *Garcia* and the other cases that Bourgeois cites, leaves no doubt that the government intended to, and did, assert procedural bars to Bourgeois's FDPA-based intellectual-disability claims.[6] The

---

the only material from which it discerned the government's intent was the briefing. To the extent that any aspect of the district court's opinion on the waiver issue constitutes a factual finding, it is not supported by the record, and the error is clear.

[6] The other cases that Bourgeois cites (Resp. 17-18, 23-24) also demonstrate that waiver requires more than a party's silence. *See, e.g.*, *Ryan v. United States*, 688 F.3d 845, 848 (7th Cir. 2012) (finding waiver when the government "knew about a potential defense and told the court that it was not asserting it"); *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000) (defense counsel "affirmatively decided not to object" to a pre-sentence report).

government argued at length that Bourgeois's claim cannot pass through the saving clause. Indeed, it would have made no sense for the government to waive the FDPA issue. The government filed a 96-page brief opposing Bourgeois's constitutional claim. The government did not *sub silentio* intend to waive its response to a substantively identical statutory (but not constitutional) claim. Neither Bourgeois nor the district court has ever posited a reason why the government would have done so, and there is none. The district court itself found the government's waiver "inexplicable," *see* App. 6, making clear that it did *not* consider whether the government was acting with strategic motivation. *See Garcia*, 580 F.3d at 542.

Regardless, as the government explained (Br. 38-40), even if the defenses it asserted below somehow did not encompass Bourgeois's FDPA arguments, that omission would be an unintentional forfeiture, permitting this Court to review those defenses on appeal. Bourgeois's arguments to the contrary are meritless, and the points already discussed belie his assertion (Resp. 23) that the government has failed to identify any error in the district court's finding that its waiver was "'intentional.'"

Bourgeois is also incorrect (Resp. 24-25) that forfeiture principles do not apply in the civil context. He ignores that habeas corpus proceedings are "unique," *Harris v. Nelson*, 394 U.S. 286, 294 (1969), but in any event, both the Supreme Court and this Court have repeatedly made clear that the concepts of waiver and forfeiture apply to civil cases, *see, e.g.*, *Hamer v. Neighborhood Housing Services of Chicago*, 138 S. Ct. 13, 17 n.1 (2017) (acknowledging that waiver and forfeiture are "often used interchangeably by

16

jurists and litigants," but noting that they "are not synonymous"); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019) (explaining that "[a] defendant's failure to plead an affirmative defense may result in a waiver of the defense if the defendant has relinquished it knowingly and intelligently, or forfeiture if the defendant merely failed to preserve" it).  In fact, *Wood v. Milyard*, 566 U.S. 463, 470 (2012), which Bourgeois cites (Resp. 24-25) for the contention that "certain defenses may be 'forfeited' as opposed to 'waived' in the context of habeas corpus cases brought under [Section] 2254," demonstrates the application of this principle in the context of habeas corpus.  *See, e.g.*, *Reed*, 915 F.3d at 478 ("Some of our opinions use the terms waiver and forfeiture interchangeably, but *Wood* shows that we need to pay attention to the difference.").[7]

Bourgeois's contention (Resp. 24) that this Court should ignore its precedent in criminal cases like *United States v. Ford*, 683 F.3d 761 (7th Cir. 2012), is thus meritless. As the government previously explained (Br. 39-40), the relevant issue here—whether Bourgeois can mount an entirely new collateral attack on his sentence—is "founded on concerns broader than those of the parties." *Wood*, 566 U.S. at 471.  This Court has

---

[7] Moreover, the cases that Bourgeois cites as allegedly supporting a difference between civil and criminal cases on this point only bolster the government's argument that this Court should review the FDPA claims.  Bourgeois cites (Resp. 24) *S.E.C. v. Yang*, 795 F.3d 674, 680 (7th Cir. 2015), and *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 308 (7th Cir. 2010), but both of these cases make clear that the Court "may consider a forfeited argument *if the interests of justice require it*."  *Yang*, 795 F.3d at 679 (citing *Russian Media Grp., LLC*, 598 F.3d at 308) (emphasis added).

previously explained, in the harmless-error context, that certain "systemic interests [such] as the avoidance of unnecessary court delay" may warrant deciding a forfeited issue. *United States v. Giovannetti*, 928 F.2d 225, 226 (7th Cir. 1991) (per curiam). Even putting aside the fact that the government's arguments below *did* apply to the entirety of Bourgeois's claim, allowing Bourgeois to relitigate an intellectual-disability claim that was already decided by the court that sentenced him raises substantial costs to the public, the victim's family, and others, and the Court should review the merits of the government's arguments.[8]

Because the government did not waive these arguments, the district court's stay order—which found that Bourgeois could proceed under § 2241 based only on waiver—cannot stand. However, this Court should not accept Bourgeois's invitation (Resp. 27) to remand the case to the district court for that court to consider in the first instance whether Bourgeois can show a strong likelihood of success on the merits absent waiver. The Supreme Court has repeatedly and recently made clear the public interest in the timely enforcement of a death sentence, *see* Br. 47-48, and because the law is clear, any remand would simply cause further unnecessary delay in this case.

---

[8] Bourgeois also argues (Resp. 25) that if this Court reviews this issue, it should limit its review to only the specific arguments that the government advanced in its responsive brief below. Bourgeois's assertion is unsupported, and for the reasons stated in the government's opening brief (Br. 39-40), the interests of justice require this Court's review.

**B.** **Even If Bourgeois's Petition Could Proceed Under § 2241, the District Court Still Erred in Finding that Bourgeois Has a Likelihood of Success on His Intellectual-Disability Claim**

Even if Bourgeois's claim could pass through all applicable procedural bars, he still has not demonstrated a likelihood of success on the merits of his underlying intellectual-disability claim, and the district court erred in finding otherwise. In a detailed and correct analysis, the Texas district court applied the 11th edition of the American Association on Intellectual and Developmental Disabilities clinical manual ("AAIDD-11"), as well as the 4th edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), and determined that Bourgeois *is not* intellectually disabled. *See* App. 76-129. As the government explained (Br. 44-47), the district court below erred when it cast aside the Texas district court's findings and, with two pages of analysis, determined that Bourgeois has made a strong showing that he is intellectually disabled.

Bourgeois admits (Resp. 43-44) that his condition is unchanged from when the Texas court concluded he is not intellectually disabled. He instead argues (Resp. 31-39) that the Texas district court's findings contravene the Supreme Court's subsequent *Moore* decisions and contends (Resp. 51-56) that he is intellectually disabled under the most recent diagnostic standards. Both of these points lack merit.

Throughout this litigation, Bourgeois has asserted (*e.g.*, Resp. 31-39) that the Texas district court's application of the well-established clinical criteria for intellectual disability and its adjudication of conflicting expert testimony somehow suffered from

the same flaws as the decision of the Texas Court of Criminal Appeals that the Supreme Court reversed in the *Moore* decisions. As the background of the *Moore* decisions illustrates, that assertion is misplaced.

In *Moore I*, the state habeas court held a two-day evidentiary hearing on Bobby Moore's intellectual-disability claim where it heard testimony from family members, former counsel, and court-appointed experts. 137 S. Ct. at 1045. In evaluating the claim, the state habeas court consulted current medical diagnostic standards, relying on the AAIDD-11, as well as the 5th edition of the Diagnostic and Statistical Manual of Mental Disorders (2013) ("DSM-V"). *Id.* Applying these diagnostic standards, it found that Moore was intellectually disabled. *Id.* Despite the state habeas court's findings, the Texas Court of Criminal Appeals denied Moore habeas relief and reaffirmed its prior precedent in *Ex parte Briseno*, 135 S.W. 3d 1 (Tex. Crim. App. 2004)—which, in turn, relied on a 1992 diagnostic manual and required the application of a seven-factor test supported by "[n]o citation to any authority, medical or judicial"—"as paramount precedent on intellectual disability in Texas capital cases." *Moore I*, 137 S. Ct. at 1046. Based on this precedent, the Texas Court of Criminal Appeals held that the state habeas court had erred in employing the then-current diagnostic criteria, as opposed to the *Briseno* test. *Id.* The Texas Court of Criminal Appeals then went on to apply the *Briseno* factors on its own and concluded that Moore was not intellectually disabled. *Id.* at 1046-48.

The Supreme Court granted certiorari and explained that "[e]ven if the views of medical experts do not dictate a court's intellectual-disability determination, . . . the determination must be informed by the medical community's diagnostic framework." *Moore I*, 137 S. Ct. at 1048 (quotations omitted). The Court then disagreed with the Texas appellate court's conclusion, finding that it "deviated from prevailing clinical standards and from the older clinical standards the court claimed to apply." *Id.* at 1050. In undertaking this analysis, the Supreme Court, like the Texas habeas court, applied the diagnostic criteria established in the AAIDD-11 and the DSM-V. *See, e.g., id.* at 1053.[9]

The Texas district court, when evaluating Bourgeois's intellectual-disability claim, did not cite, discuss, or apply the non-scientific *Bresino* factors that the Texas Court of Criminal Appeals applied and the Supreme Court rejected in the *Moore* decisions. Instead, it applied the AAIDD-11 and the then-most-recent version of the DSM, the DSM-IV. *See* App. 78-80. The court then considered evidence from "equally qualified experts [who] ha[d] examined Bourgeois and his life and reached drastically different professional opinions about his intellectual functioning," and it analyzed whom to credit. App. 81. Therefore, contrary to Bourgeois's arguments, the Texas

_____

[9] Subsequently, in *Moore II*, the Supreme Court reversed the Texas Court of Criminal Appeals following its decision on remand. 139 S. Ct. at 672. The Court explained that the opinion issued following remand "when taken as a whole and when read in the light both of our prior opinion and the trial court record, rests upon analysis too much of which too closely resembles what we found improper." *Id.*

district court's analysis was consistent with the approach of the Texas state habeas court in *Moore* (which the Supreme Court approved) and not the approach of the Texas Court of Criminal Appeals (which the Court rejected). *See Moore I*, 137 S. Ct. at 1053.

Even apart from this critical top-line distinction, Bourgeois's specific criticisms (Resp. 31-39) of the Texas district court's analysis do not alter this conclusion. With regard to the first prong of the intellectual-disability analysis centering on Bourgeois's IQ score, he argues (Resp. 31-32) that the Texas district court ran afoul of the subsequent *Moore* decisions because it allegedly relied on stereotypes and made its own finding that Bourgeois's test scores did not demonstrate Bourgeois's true intelligence. Far from making its own "unscientific" conclusions, the district court relied on Dr. J. Randall Price, a psychologist who had "performed a probing psychological examination" of Bourgeois in 2010. App. 89-90. Dr. Price—a trained psychologist— concluded that Bourgeois's "'cognitive abilities exceeded his measured cognitive intelligence.'" App. 90 (quoting S.D. Tex. Dkt. 595, at 215). Dr. Price further concluded that Bourgeois had "'not put[] forth full effort'" on his IQ tests. App. 91 (quoting S.D. Tex. Dkt. 595, at 210). The court credited these expert opinions, and nothing in the *Moore* decisions suggests that a court must blindly accept IQ testing even when it finds that a defendant did "not put forth his best effort." App. 92. Regardless, the Texas district court made clear that "[t]his is not a case where a man's life depends on a few points' difference in test results," and moved to the second prong of

22

intellectual-disability analysis—whether Bourgeois has "[s]ignificant [l]imitations in [a]daptive [s]kill [a]reas." App. 98-99.

With regard to this second prong, the Texas district court again confronted conflicting expert testimony—Dr. Victoria Swanson, Bourgeois's expert, concluded that Bourgeois possessed adaptive skill deficits, whereas Dr. Roger Bryan Moore, the government's expert, "used similar methods and still concluded that Bourgeois did not have deficits in any adaptive skill area." App. 100-01. Contrary to Bourgeois's argument (Resp. 34-38) that the Texas district court again relied on its own lay assessments and stereotypes, the district court engaged in a detailed analysis to determine which of these psychological experts it would credit and ultimately concluded that the testing conducted by Dr. Moore "more credibly measured Bourgeois' functioning." *See* App. 111. The lay testimony discussed by the court, as well as its own observations, supported these expert conclusions; it did not supplant them. *Id.* In the end, the Texas district court agreed with Dr. Moore's conclusion that "'while [Bourgeois's] functioning may have been relatively impaired in his early childhood, he appears to have developed greater independence of functioning by the time he finished high school.'" App. 124-25 (quoting S.D. Tex. GX-15, at 16).[10]

---

[10] Notably, Bourgeois makes no argument addressing the Texas district court's finding pertaining to the third prong of intellectual-disability analysis that Bourgeois did not manifest intellectual disability before the age of 18. The Texas district court's finding on that prong alone is dispositive.

Therefore, even if the *Moore* decisions applied retroactively to Bourgeois's intellectual-disability claim—a contention that Bourgeois does not advance—the Texas district court's decision is still sound. The same is true even if Bourgeois's intellectual disability were analyzed under newer editions of the diagnostic manuals. While Bourgeois posits (Resp. 53) that four aspects of the newer manuals undermine the Texas district court's conclusion, those arguments are meritless:

- Bourgeois emphasizes (Resp. 53) that the newer manuals provide that it is critical to avoid stereotypes in analyzing intellectual disability, but the Texas district court relied on expert opinions by psychologists, not stereotypes.

- He asserts (Resp. 53) that the newer manuals provide "clinical descriptions of significant adaptive deficits," but the Texas district court relied on psychological experts and tests that *did* apply clinical criteria.

- He similarly asserts (Resp. 53) that the newer manuals provide that IQ test scores must be evaluated pursuant to "'clinical judgment.'" But in Dr. Price's clinical judgment, Bourgeois did not put his full effort into the psychological testing, which in turn did not measure his true intelligence.

- Bourgeois asserts (Resp. 53) that the newer manuals mandate the application of the Flynn Effect. He ignores, however, that in addition to the district court's recognition of that principle, this Court has questioned

24

whether courts must apply that principle in their intellectual-disability analyses. *See, e.g.*, *McManus v. Neal*, 779 F.3d 634, 653 (7th Cir. 2015).

The Texas district court's decision therefore remains sound under any standard. But all this assumes that the Texas district court's findings can be revisited in these circumstances, and they cannot. The Supreme Court denied certiorari on October 6, 2014, following Bourgeois's appeal of the district court's denial of his § 2255 motion, *see Bourgeois v. United States*, 574 U.S. 827 (2014), and the time for review of the Texas district court's conclusions has therefore long passed. Bourgeois has provided no basis to relitigate the Texas district court's determination. His sentence is final.

## C. Equitable Factors Likewise Do Not Support a Stay

The remaining stay factors also weigh against a stay. As the government explained (Br. 47-48), because Bourgeois's claim is meritless, a stay would, at most, delay the imposition of judgment, and doing so would be contrary to the public interest. Specifically, the government, the victim's family, and the public have a strong interest in finality and carrying out the jury's and the district court's judgment.

Bourgeois disagrees (Resp. 56-59), but recent developments lend further support to the government's arguments. Since the government filed its opening brief, the Supreme Court has vacated numerous stays and preliminary injunctions entered in capital cases. *See, e.g.*, *Barr v. Lee*, --- S. Ct. ----, 2020 WL 3964985 (July 14, 2020) (per curiam). It has reiterated its responsibility to ensure that challenges "'to lawfully issued sentences are resolved fairly and expeditiously.'" *Id.* at \*2 (quoting *Bucklew v. Precythe*,

139 S. Ct. 1112, 1134 (2019)). The Court's actions are consistent with the well-established principle that "'[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence.'" *Bucklew*, 139 S. Ct. at 1133.

This interest is especially strong when a defendant has unreasonably delayed bringing his claim. As the Supreme Court recently reiterated, "'[l]ast-minute stays'" should "'be the extreme exception, not the norm.'" *Lee*, 2020 WL 3964985, at *2 (quoting *Bucklew*, 139 S. Ct. at 1134). While the district court's stay here may not have been "last-minute," it—along with Bourgeois's claim—occurred at the eleventh hour of this litigation. While Bourgeois emphasizes (Resp. 58) that he waited only six months following the Supreme Court's decision in *Moore II* to file his § 2241 petition, he misses the bigger picture: The Supreme Court denied certiorari following Bourgeois's § 2255 motion in 2014. *See Bourgeois*, 574 U.S. 827. He delayed filing his § 2241 petition until 2019, almost a year after the Fifth Circuit denied him authorization to file a second or successive § 2255 petition. *See* App. 369-71. Indeed, he did not choose to bring his claim until after the government scheduled his execution.

As the Supreme Court explained in *Nelson v. Campbell*, 541 U.S. 637 (2004), "[g]iven the [government's] significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.* at 650 (citation omitted). By waiting until his execution was

26

scheduled to file his § 2241 petition, and by failing to demonstrate any likelihood of success on the merits of his claim, Bourgeois cannot overcome this "strong equitable presumption against the grant of a stay." *Id.*

## CONCLUSION

For the foregoing reasons, this Court should vacate the stay of execution.

Respectfully submitted,

JOSH J. MINKLER
    United States Attorney
    Southern District of Indiana

PAULA C. OFFENHAUSER
    Assistant United States Attorney
    Southern District of Texas

BRIAN C. RABBITT
    Acting Assistant Attorney General

/s/Christopher J. Smith
CHRISTOPHER J. SMITH
    Attorney
    Appellate Section
    Criminal Division
    United States Department of Justice
    950 Pennsylvania Ave., NW
    Washington, DC 20530
    (202) 532-4154
    Christopher.J.Smith@usdoj.gov

# CERTIFICATE OF SERVICE

I certify that on July 23, 2020, I caused the foregoing brief to be served upon the

Filing Users identified below through the Court's Case Management/Electronic Case

Files ("cm/ecf") system:

Victor J. Abreu
Katherine Thompson
Peter K. Williams
Office of the Federal Public Defender
*Attorneys for Alfred Bourgeois*

s/Christopher J. Smith

CHRISTOPHER J. SMITH
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 532-4154
Christopher.J.Smith@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and 7th Cir. R. 32(c) because it contains 7,000, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced 14-point typeface using Microsoft Word.

3. This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a) because it contains no personal data identifiers.

4. The digital version electronically filed with the Court on this day is an exact copy of the written document to be sent to the Clerk.

5. This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security, version 10.7, which is continuously updated, and according to that program, is free of viruses.

DATED:     JULY 23, 2020

s/Christopher J. Smith

CHRISTOPHER J. SMITH
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 532-4154
Christopher.J.Smith@usdoj.gov
