No. 20–1891
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

ALFRED BOURGEOIS,
*PETITIONER-APPELLEE,*

v.

SUPERINTENDENT,
USP—TERRE HAUTE,
UNITED STATES OF AMERICA,
*RESPONDENTS-APPELLANTS.*
_____

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:19–cv–00392, Hon. Jane Magnus-Stinson, Chief J.

**PETITION FOR PANEL REHEARING OR REHEARING EN BANC**

**THIS IS A DEATH PENALTY CASE**

Peter Williams
   *Counsel of Record*
Victor J. Abreu
Katherine Thompson
Assistant Federal Defenders
Federal Community Defender Office for
   the Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215–928–0520

*Counsel for Petitioner-Appellee Alfred
Bourgeois*

Dated: October 13, 2020

# RULE 26.1 DISCLOSURE STATEMENT

The full name of Petitioner-Appellee is Alfred Bourgeois. Attorneys Victor Abreu, Katherine Thompson, and Peter Williams, of the Federal Community Defender Office for the Eastern District of Pennsylvania, represent Bourgeois before this Court and represented him in the 28 U.S.C. § 2241 proceedings below in the United States District Court for the Southern District of Indiana. Petitioner-Appellee is not a corporation.

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT...............................................................i

TABLE OF CONTENTS............................................................................ ii

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT PURSUANT TO FED. R. APP. P. 35(b)(1) ...................................1

INTRODUCTION ......................................................................................1

ARGUMENT .............................................................................................7

I.   THE PANEL OPINION CONTRADICTS PRECEDENT FROM THIS
     COURT AND THE SUPREME COURT BY IGNORING A STRUCTURAL
     DEFECT IN § 2255 AND ALLOWING THE EXECUTION OF AN
     INTELLECTUALLY DISABLED PRISONER. .............................................7

A.   The Panel's Opinion Conflicts with This Court's Savings Clause
     Jurisprudence and Supreme Court Precedent.......................................7

B.   The Panel's Treatment of the FDPA Conflicts with Supreme Court
     Precedent. ...........................................................................................17

II.  BOURGEOIS'S CLAIM IS COGNIZABLE INDEPENDENT OF THE
     SAVINGS CLAUSE, AS § 2241 IS THE APPROPRIATE VEHICLE FOR
     CHALLENGES TO THE CARRYING OUT OF A FEDERAL DEATH
     SENTENCE.........................................................................................19

CONCLUSION .......................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Atkins v. Virginia*, 536 U.S. 304 (2002)...................................................... 1, 9, 12, 21
*Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020)................................18
*Ford v. Wainwright*, 477 U.S. 399 (1986) ...................................................................9
*In re Cathey*, 857 F.3d 221 (5th Cir. 2017) ...................................................... 16–17
*In re Davenport*, 147 F.3d 605 (7th Cir. 1998)................................................. 12, 16
*In re Johnson*, 935 F.3d 284 (5th Cir. 2019) ...........................................................17
*Moore v. Texas*, 137 S. Ct. 1039 (2017) ........................................................ passim
*Moore v. Texas*, 139 S. Ct. 666 (2019) ....................................................... 1, 3, 13, 14
*Purkey v. United States*, 964 F.3d 603 (7th Cir. 2020)........................ 7–8, 9, 11, 12
*Roper v. Simmons*, 543 U.S. 551 (2005)....................................................................9
*United States v. Webster*, 162 F.3d 308 (5th Cir. 1998).........................................18
*United States v. Webster*, 421 F.3d 308 (5th Cir. 2005).................................. 15–16
*Valona v. United States*, 138 F.3d 693 (7th Cir. 1998) ................................. 1, 5, 20
*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015)......................................... passim

**Statutes**

18 U.S.C. § 3596............................................................................................. 1, 17, 18
28 U.S.C. § 2241 ................................................................................................. passim
28 U.S.C. § 2244 ................................................................................... 4, 8, 16, 17
28 U.S.C. § 2255 ................................................................................................. passim

Petitioner-Appellee Alfred Bourgeois, a death sentenced inmate, requests panel and en banc rehearing of the decision dismissing his petition for relief under 28 U.S.C. § 2241. Because the Panel's decision conflicts with decisions of the United States Supreme Court and this Court, consideration by the full Court is necessary to secure and maintain uniformity of the Court's decisions. *See, e.g.*, *Moore v. Texas*, 137 S. Ct. 1039 (2017) ("*Moore–I*"); *Moore v. Texas*, 139 S. Ct. 666 (2019) ("*Moore–II*"); *Atkins v. Virginia*, 536 U.S. 304 (2002); *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) ("*Webster–I*"); *Valona v. United States*, 138 F.3d 693 (7th Cir. 1998). Additionally, the proceeding presents a question of exceptional importance: whether a federal death row prisoner who was found not to qualify as intellectually disabled ("ID") under the scientifically invalid legal standards prevailing at the time of his initial post-conviction proceedings, but who is ID under current legal and diagnostic standards, is entitled to judicial review of his claim that he is ineligible for the death penalty under § 2241, or is instead condemned to be executed without legal recourse.

**INTRODUCTION**

Alfred Bourgeois is intellectually disabled. His execution is thus prohibited by the Federal Death Penalty Act ("FDPA") and the Eighth Amendment. *See* 18 U.S.C. § 3596; *Atkins*, 536 U.S. at 321. Bourgeois presented substantial evidence

1

to the district court below ("2241 Court") that he meets the three prongs of the clinical definition of ID: (1) subaverage intellectual functioning, (2) adaptive deficits, and (3) onset before age eighteen. The 2241 Court thought the evidence was significant enough to necessitate a hearing. Bourgeois has received IQ tests twice and each time scored within the presumptive range for ID. Standardized testing, clinical evaluation, contemporaneous records, and numerous witnesses also attest to his significant adaptive impairments in conceptual, social, and practical skills, any one of which is by itself sufficient to establish adaptive deficits. And Bourgeois's lifelong intellectual and adaptive impairments long predate his eighteenth birthday. The Panel did not address the 2241 Court's conclusion that Bourgeois's evidence of intellectual disability under current standards was substantial enough to require an evidentiary hearing. *See* GA6–9;[1] *see also* PA14–45, 409–527 (providing a detailed discussion of the evidence, and supporting documentation).

The 2241 Court should have the opportunity to conduct a hearing applying current legal and diagnostic standards. Bourgeois raised an ID claim in his initial proceedings under 28 U.S.C. § 2255, but the Texas district court that adjudicated

---

[1] Citations to "GA" refer to the Government's Appendix; citations to "PA" refer to Petitioner-Appellee's Appendix; and citations to "Op." refer to the Panel decision, *Bourgeois v. Watson*, No. 20–1891 (7th Cir. Oct. 6, 2020) (Kanne, Hamilton, and St. Eve, Circuit Judges).

the claim ("2255 Court") rejected it, applying then-binding Fifth Circuit precedent

dictating that ID claims be evaluated under an unscientific "legal" approach, rather

than a medical approach. But the Supreme Court has since held that the use of non-

clinical, contra-diagnostic standards, such as those applied by the 2255 Court,

violate the Eighth Amendment. *See Moore–I* and *–II*. Specifically, the *Moore*

decisions mandated the use of current medical standards as binding in the

adjudication of an ID claim and expressly invalidated a number of diagnostically-

inappropriate practices. Notably, the 2255 Court engaged in *every one* of the

practices that the *Moore* decisions found to create an unacceptable risk that persons

with ID will be executed. Among other non-clinical findings, the 2255 Court:

- rejected Bourgeois's qualifying IQ scores of 70 and 75 (corrected to scores of 67 and 68 under the Flynn effect) based on a lay determination of Bourgeois's "true" intellectual functioning;[2]

- found that his perceived adaptive strengths counteracted his adaptive deficits;

- applied unscientific stereotypes of persons with ID, including that ID persons look and talk differently and are incapable of driving or maintaining a job; and

- treated risk factors and comorbidities, such as chronic poverty and neglect during childhood, as alternate explanations *for* Bourgeois's deficits, as opposed to contributors *to* his ID.

---

[2] Prong one is satisfied by an IQ score of 75 or below. Current diagnostic standards require Flynn-correction, but both IQ scores satisfy prong one with or without this correction. *See* PA16–23 (describing IQ scores and defining Flynn effect).

*See* PA52–71.

*Moore–I* rendered the 2255 Court's analysis wrong, and Bourgeois thus requested authorization to obtain constitutionally-valid review of his ID claim through a successive § 2255 motion. The Fifth Circuit denied the application on purely procedural grounds, finding that review was barred by 28 U.S.C. § 2244(b), which forecloses the relitigation of claims under § 2255(h) regardless of merit.

Ineligible for execution, but unable to vindicate this right through § 2255 proceedings, Bourgeois then filed a petition under § 2241. In addition to setting forth extensive evidence demonstrating that he is ID under the medical community's current standards, Bourgeois asserted two separate grounds for relief under § 2241. First, he challenged *the imposition* of his sentence under the Eighth Amendment on the basis of new legal and diagnostic developments, relying on this Court's jurisprudence in *Webster–I* and other cases interpreting § 2255(e)'s savings clause. Second, he challenged *the execution*, or carrying out, of his sentence under both the FDPA and the Eighth Amendment. As to this second challenge, Bourgeois relied not on the savings clause, but on this Court's jurisprudence holding that challenges to the execution of a prisoner's sentence must be brought under § 2241 as § 2255 only allows challenges to the imposition of a sentence. *E.g.*, *Valona*, 138 F.3d at 694 ("A motion seeking relief on grounds

4

concerning the execution but not the validity of the conviction and sentence . . . may not be brought under § 2255 and therefore falls into the domain of § 2241.").

The Government's response failed to challenge any aspect of Bourgeois's claim that he is entitled to review under § 2241 because the FDPA and Supreme Court jurisprudence bar the carrying out of a death sentence against ID prisoners. Nor did the Government put forth any evidence or argument disputing that Bourgeois is ID under current medical and legal standards. Instead, it relied on the contra-diagnostic analysis employed by the 2255 Court that was rejected in the *Moore* decisions.

On March 10, 2020, the 2241 Court stayed Bourgeois's then-pending execution, finding: Bourgeois made a "strong showing" that he is ID under current diagnostic standards; an evidentiary hearing should be held; and equitable factors favored a stay to allow the hearing to be conducted and the facts fully developed. GA5–12. The court also found that the Government waived any argument against the cognizability of Bourgeois's challenge to the carrying out of his death sentence based on the FDPA. Because Bourgeois satisfied the standard for a stay based on his FDPA claim, the court did not reach his challenge to either the imposition or the execution of his sentence under the Eighth Amendment.

The Government appealed both the waiver determination and the cognizability of the FDPA claim. Neither party addressed whether Bourgeois is

entitled to review of his Eighth Amendment challenges in briefing or in in the oral arguments held on September 9, 2020, as those challenges were not before the Panel.

On October 6, 2020, the Panel reversed the district court's waiver determination. Op. 12–18. It then considered whether Bourgeois had established a likelihood of success on the merits of either the FDPA issue that had been briefed on appeal or the Eighth Amendment issues that had not. Without addressing whether Bourgeois is ID under the now constitutionally-mandated current medical standards—an issue the Panel deemed irrelevant—it held that his ID claim is not cognizable under § 2241 because he cannot satisfy § 2255(e)'s savings clause. Based on that holding alone, the Panel vacated the stay, instructed the district court to dismiss the petition in its entirety, and accelerated the timetable for issuance of the Court's mandate. The Panel's decision deserves further review.

## ARGUMENT

**I.    THE PANEL OPINION CONTRADICTS PRECEDENT FROM THIS COURT AND THE SUPREME COURT BY IGNORING A STRUCTURAL DEFECT IN § 2255 AND ALLOWING THE EXECUTION OF AN INTELLECTUALLY DISABLED PRISONER.**

In the Panel's view, § 2241 review is completely unavailable to Bourgeois because he had one opportunity to "raise" his claim of categorical ineligibility for death; whether he is intellectually disabled is irrelevant. Op. 27; *id.* 31 ("The question is not whether Alfred Bourgeois is intellectually disabled" but only whether he "was able to litigate his intellectual-disability claim in his § 2255 motion."). The Panel also found it irrelevant that Bourgeois's ID claim has only been reviewed under standards that created an unacceptable risk that an ID person will be executed in violation of the Constitution and the plain language of the FDPA. Op. 26. The Panel's opinion contradicts the Court's en banc opinion in *Webster–I*, and runs afoul of *Atkins* and *Moore–I*.

**A.    The Panel's Opinion Conflicts with This Court's Savings Clause Jurisprudence and Supreme Court Precedent.**

Savings clause review is not confined to any specific factual or procedural scenario, but is appropriate whenever there is "some kind of structural problem with section 2255." *Webster–I*, 784 F.3d at 1136. This standard is met when there is "a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem." *Purkey v. United States*, 964 F.3d

7

603, 615 (7th Cir. 2020). Bourgeois satisfies this standard, and the Panel's holding otherwise brings it into direct conflict with this Court's § 2241 jurisprudence and, most significantly, its opinion in *Webster–I*.

The petitioner in *Webster–I* re-raised a claim of ID that he had pursued at trial and in his initial § 2255 proceedings, relying on newly discovered evidence. Because this evidence did not satisfy § 2255(h), Webster was precluded from using § 2255 to establish his categorical ineligibility for death. Recognizing the "'Kafkaesque' nature of a procedural rule that, if construed to be beyond the scope of the savings clause, would (or could) lead to an unconstitutional punishment," this Court granted him § 2241 review. *Webster–I*, 784 F.3d at 1125–36. "To hold otherwise," the Court explained, "would lead in some cases . . . to the intolerable result of condoning an execution that violates the Eighth Amendment." *Id.* at 1139.

A similar structural problem is present here. Although his ID claim was rejected under the now-invalid legal standards in place in the Fifth Circuit at the time of his § 2255 proceedings, Bourgeois is ineligible for execution under the legal and diagnostic standards in place nationwide now. However, he cannot enforce this constitutional right through a successive § 2255 motion, because § 2244(b) imposes an absolute bar on the relitigation of claims under § 2255, and Bourgeois raised an ID claim in his initial § 2255 proceedings. Section 2255 contains no provision for a defendant such as Bourgeois who was not entitled to

relief on an ID claim at the time of his initial post-conviction proceedings, but is entitled to relief now. Accordingly, "as a practical matter, it would be impossible to use section 2255 to cure [this] fundamental problem." *Purkey*, 964 F.3d at 615.

Although failure to satisfy the procedural requirements for a successive motion may preclude a petitioner such as Purkey—who sought to raise an ineffective-assistance-of-counsel claim—from litigating intervening legal and factual developments under § 2241, it cannot do so for claims involving a categorical exemption such as the one presented here. Just as *Ford v. Wainwright*, 477 U.S. 399 (1986), imposed a substantive restriction on executing an incompetent defendant and *Roper v. Simmons*, 543 U.S. 551 (2005), barred the execution of individuals for crimes committed as juveniles, *Atkins* imposed a ban on the execution of people such as Bourgeois who are intellectually disabled. *See, e.g.*, *Atkins*, 536 U.S. at 321 ("[T]he Constitution 'places a *substantive restriction* on the State's power to *take the life*' of [an ID] offender.").[3] The Eighth Amendment also bars procedures that "creat[e] an *unacceptable risk* that persons with intellectual disability will be executed," and *Moore–I* made clear that *current*

---

[3] All emphasis in this petition is added.

diagnostic standards are binding in an *Atkins* determination. *Moore–I*, 137 S. Ct. at 1044, 1053.[4]

In *Webster–I*, this Court recognized the structural problem in § 2255 that emerged with the issuance of *Atkins* and *Roper*:

> [T]he problem is that the Supreme Court has now established that the Constitution itself forbids *the execution of* certain people: those who satisfy the criteria for intellectual disability that the Court has established, and those who were below the age of 18 when they committed the crime.

784 F.3d at 1139 (footnote omitted). Courts have an obligation to enforce this constitutional imperative, which creates a fundamental problem with § 2255 in a case such as this one. Specifically, § 2255 fails to account for capital defendants who are exempt from execution due to legal and factual developments that occurred after their initial § 2255 proceedings, but are unable to litigate those developments in a successive § 2255 motion due to the procedural hurdles that AEDPA imposes on such motions. That Congress failed to address this defect when AEDPA was adopted is hardly surprising as "the Supreme Court had not yet decided *Atkins* and *Roper* at the time AEDPA was passed." *Id.* at 1138. The timing of AEDPA, *Atkins*, and *Roper* "supports the conclusion that the narrow set of cases

---

[4] As set forth in Section II, *infra*, *Atkins* and its progeny are also relevant to Bourgeois's challenge to the *carrying out* of his sentence.

presenting issues of constitutional ineligibility for execution is another lacuna in the [§ 2255] statute." *Id.*

This structural defect places Bourgeois's ID claim within the savings clause. In determining otherwise, the Panel relied on *Purkey*'s language that § 2241 requires "something more" than a lack of success in § 2255 proceedings. *See* Op. 20–21. In *Purkey*, this Court held that the petitioner "was missing that 'something more'" because, at the time he filed his § 2255 motion, "nothing formally prevented him from raising" the ineffective-assistance-of-counsel claims he subsequently sought to raise via § 2241. *Purkey*, 964 F.3d at 615. *Purkey* did not involve a categorical exemption, and thus, did not address the structural defect that is present here. And here, as in *Webster–I*, the "something more" is that intervening developments have rendered Bourgeois exempt from execution, but without a mechanism to enforce that exemption under § 2255. Thus, just as in *Webster–I*, the structure of § 2255 has created the "Kafkaesque" result of a defendant who is unable to litigate a meritorious ID claim because of a procedural rule that "would (or could) lead to" an unconstitutional execution. 784 F.3d at 1139. Because he is simultaneously ineligible for execution, but unable to vindicate this right through a successive § 2255 motion, "as a practical matter, it would be impossible to use section 2255 to cure [this] fundamental problem." *Purkey*, 964 F.3d at 615.

The Panel also determined that § 2241 is unavailable because Bourgeois had one opportunity to "raise" some challenge to his sentence, regardless of the standards employed in the disposition of that claim or whether he is in fact ID. Op. 27–28. But this holding runs contrary to *Atkins*, *Moore–I*, and *Webster–I*: it violates *Atkins*'s "substantive restriction" on the Government's right to take the life of an intellectually disabled person, 536 U.S. at 321; contravenes *Moore–I*'s requirement that *current* diagnostic standards be considered when adjudicating an ID claim, 137 S. Ct. at 1053; employs a procedure that creates an "unacceptable risk" that an intellectually disabled person will be executed, *id.* at 1044; and would lead "to the intolerable result of condoning an execution that violates the Eighth Amendment," *Webster–I*, 784 F.3d at 1139.

Furthermore, this Court has long held that "whether [§] 2255 is inadequate or ineffective" depends not on whether a petitioner has been able to "raise" his claim, but "on whether it allows the petitioner 'a reasonable opportunity to obtain a *reliable judicial determination* of the fundamental legality of his conviction and sentence.'" *Webster–I*, 784 F.3d at 1136 (quoting *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998)). And, although the Panel cast doubt on Bourgeois's allegation that the 2255 Court's adjudication of his claim is no longer "reliable," it ultimately determined that the constitutionality of the 2255 Court's review was *irrelevant*. Op. 26. Because Bourgeois was not "formally prevented" from arguing in § 2255

12

proceedings that he was ID and that diagnostic standards *should* be applied, the Panel concluded, § 2241 is unavailable. Op. 27–28. But the fact that Bourgeois relied on then-current scientific standards when he initially raised his ID claim does not render the determination of that claim "reliable" where the reviewing court rejected those very standards. *Moore–I* and *–II* make clear that, unless current diagnostic standards are actually applied by the reviewing court during an ID determination, the proceeding violates the Eighth Amendment. *Moore–I*, 137 S. Ct. at 1053; *Moore–II*, 139 S. Ct. at 672.

In any event, the Panel materially misread the 2255 Court's ruling as a "reliable" measure of Bourgeois's disability. First, the Panel erred in justifying the 2255 Court's prong-one determination on the ground that Bourgeois "did not put forth his best effort" on IQ testing, Op. 26, as that was not the basis for the court's decision. Rather, the 2555 Court did "*not invalidate* or ignore Bourgeois' IQ test scores," and recognized that both of these scores of 70 and 75 would have satisfied prong one under the standards employed by the psychological profession. GA87–88, 98. Nevertheless, the 2255 Court rejected the psychological standard in favor of a "legal" one and found "that a fuller view of [Bourgeois's] abilities does not correspond to a finding of significant intellectual limitations." GA88, 98. This "fuller view" amounted to nothing more than the court's contra-scientific lay assessment of Bourgeois's conduct in the courtroom and reliance on various

unsupportable stereotypes regarding intellectually disabled persons, such as that they cannot to hold a job or drive a truck. *See* GA89–99.

Additionally, the Panel observed that the 2255 Court "identified, and applied, the most recent medical guidance on" ID, citing to the court's recognition of the three-pronged clinical definition. Op. 25. But this remark ignores both the 2255 Court's express disavowal of diagnostic standards, *see* GA88, 104, and the fact that the Texas state court in Moore's case had similarly made findings on all three prongs for ID and the Supreme Court still held that its approach violated the Eighth Amendment. *See Moore–I*, 137 S. Ct. at 1049–53; *Moore–II*, 139 S. Ct. at 670–72.

Next, the Panel questioned whether the 2255 Court inappropriately discounted adaptive deficits in favor of adaptive strengths, disregarding the court's express statement that, notwithstanding the medical criteria directing otherwise, it would *intentionally* use Bourgeois's strengths to "blunt" the effect of his deficits. GA102. The Panel also credited the 2255 Court's finding that "the record did not 'conclusively link' Bourgeois's childhood problems to '[ID] rather than a culturally deprived upbringing, poverty, or abuse,'" endorsing a practice expressly rejected in *Moore–I*, as these elements of Bourgeois's background were known causes or "risk factors" for ID that support the diagnosis rather than undermine it. *See* Op. 25–26; 137 S. Ct. at 1051 (rejecting the use of risk factors for ID such as

14

Moore's "record of academic failure" and the "childhood abuse and suffering he endured" to explain away deficits). The Panel's determination that the § 2255 Court's analysis "did not view adaptive impairments as a zero-sum game, attributable to either one cause (e.g., childhood abuse) or another (e.g., intellectual disability), but not both," Op. 25–26, is similarly contrary to *Moore–I*. Risk factors such as childhood abuse, poverty, and a socially deprived upbringing are *causes* of intellectual disability, not alternate explanations for his deficits. *Moore–I*, *supra*, at 1051; PA466–67. Even if all of Bourgeois's impairments were caused by these risk factors, that would not undermine a diagnosis of ID.

The Panel notes that Bourgeois did not raise his challenges to the 2255 Court's opinion in his § 2255 appeal, suggesting this should preclude him from doing so now. Op. 26. However, prior to *Moore–I*, binding Fifth Circuit precedent directed the use of scientifically inappropriate standards in ID determinations; accordingly, such an appeal would have been doomed. *See, e.g.*, *United States v. Webster*, 421 F.3d 308, 313 (5th Cir. 2005) (treating risk factors for ID as alternative explanations for Webster's low functioning, weighing adaptive strengths against deficits, and relying on prison functioning and erroneous stereotypes for the intellectually disabled). This Court does not fault § 2241 petitioners for failing to pursue challenges in the past that were precluded by then-binding precedent. *See Davenport*, 147 F.3d at 610. Doing so "would just clog the

15

judicial pipes to require defendants, on pain of forfeiting all right to benefit from future changes in the law, to include challenges to settled law in their briefs on appeal and in postconviction filings." *Id.*

The Panel also accuses Bourgeois of attempting to make an end-run around § 2255(h)(2), given that the *Moore* decisions have not been made retroactive by the Supreme Court. But Bourgeois's successive application was not premised on applying *Moore–I* retroactively; his argument was that *Moore–I* made *Atkins* newly available to him. The Fifth Circuit did not address, much less reject, this argument when it denied Bourgeois's petition for authorization; it relied on § 2244(b) alone. Indeed, the Fifth Circuit has *twice* embraced the theory that subsequent changes in the law or diagnostic standards can render *Atkins* "newly available," and each time allowed a prisoner who never raised an *Atkins* claim to bring one in a successive petition. *See In re Cathey*, 857 F.3d 221, 232 (5th Cir. 2017); *In re Johnson*, 935 F.3d 284, 293 (5th Cir. 2019). Bourgeois, by contrast, was precluded from bringing a successive claim because of § 2244(b)'s relitigation bar. In other words, Bourgeois was prevented from filing a successive motion because he was *more* diligent than Cathey and Johnson. That result is no less "Kafkaesque" than the one this Court took pains to prevent in *Webster–I*. Finally, even assuming that § 2255(h), rather that § 2244(b), barred Bourgeois's way to a successive § 2255 motion, that would not undermine his claim for savings clause

16

review. As noted above, § 2255's failure to account for prisoners who are exempt from execution but unable to enforce this exemption through a successive motion on procedural grounds is precisely the structural defect that this Court identified in *Webster-I* and that requires savings clause review here. *See supra* at 9–11.

**B.      The Panel's Treatment of the FDPA Conflicts with Supreme Court Precedent.**

Bourgeois argued that the FDPA precludes his execution because the FDPA commands that a "sentence of death shall not be *carried out* upon a person who *is* [intellectually disabled]." § 3596(c). The Panel thought Bourgeois's position "unpersuasive" because he "makes much of the FDPA's use of the word 'is,'" "confuse[s] [ID] with the temporary condition of incompetency," and makes an argument without "no textual (or other) support." Op. 29. The Panel erred.

In disregarding Congress's plain language and clear choice to bar executions of all ID persons, the Panel ran afoul of the Supreme Court's recently-reaffirmed dictate that a statute be interpreted "in accord with the ordinary public meaning of its terms," as "only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1738 (2020). The plain meaning of the FDPA is that an execution cannot be carried out on any defendant who is ID.

Furthermore, contrary to the Panel's claim that there is no "other" support for Bourgeois's reading of the FDPA, the bar on executing an ID person appears in

17

§ 3596, entitled "[i]mplementation of a sentence of death," rather than in § 3594, entitled "[i]mposition of a sentence of death." *See United States v. Webster*, 162 F.3d 308, 352 (5th Cir. 1998) (finding Congress's "placement" of the intellectual-disability exemption among "restriction[s] on who could be executed . . . rather than in the earlier sections" to be significant). And the bar is immediately preceded by the following language: "When the sentence *is to be implemented*, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who *shall supervise implementation* of the sentence." § 3596(a). Section 3596(c)'s context thus confirms that it refers to the present tense, and therefore requires a determination of whether Bourgeois is ID under current standards. The legislative history further supports that Congress understood that the FDPA would allow defendants to raise such claims "at any time," including before execution. *See* 136 Cong. Rec. S6873–03, S6876, 1990 WL 69446, 101st Cong., 2d Sess. (May 24, 1990) (comments by Sen. Hatch).

Lastly, although Bourgeois's impairments have been present since early childhood and remained constant throughout his life, the legal and diagnostic standards under which those impairments are assessed have changed. That the § 2255 Court employed contra-scientific standards when adjudicating his ID claim in 2011 did not make him any less ID then, and does not make him any less ID now. *Moore–I* was issued precisely because people with ID frequently could not

18

meet the inappropriate analysis applied by the 2255 Court. *See* 137 S. Ct. at 1051 (noting that "by design and in operation," the practices rejected by *Moore–I* created an "unacceptable risk" that individuals with ID will be executed). Furthermore, *Moore–I* recognized that diagnostic standards improve over time and *current* standards reflect the most accurate understanding of the diagnosis. *Id.* at 1053. An assessment under current standards is needed so that Bourgeois's longstanding impairments can be reviewed in compliance with the Eighth Amendment.

Under Supreme Court jurisprudence and the plain language of the FDPA, the Government cannot "carry[] out" Bourgeois's execution if he "is" presently ID. And, because § 2255 is an inadequate vehicle for him to prove his ineligibility for execution under the FDPA, the district court should be permitted to proceed with a hearing under § 2241.

## II. BOURGEOIS'S CLAIM IS COGNIZABLE INDEPENDENT OF THE SAVINGS CLAUSE, AS § 2241 IS THE APPROPRIATE VEHICLE FOR CHALLENGES TO THE CARRYING OUT OF A FEDERAL DEATH SENTENCE.

Bourgeois argued in his petition and on appeal that the Eighth Amendment and the FDPA "forbid both the 'imposition' and the 'execution' of his death sentence." Op. 9. Claims that challenge the *execution*, or carrying out, of a sentence are cognizable under § 2241 regardless of whether there is a structural defect in § 2255 under *Webster*, *Purkey*, and this Court's other savings clause

19

jurisprudence. *E.g.*, *Valona*, 138 F.3d at 694. Bourgeois alleged that, *separate and apart from* the above arguments addressing the structural defect in § 2255, his ID claim is cognizable under § 2241 because he was also challenging the *execution* of his sentence.

Specifically, he asserted that the Eighth Amendment prohibits the *carrying out* of his death sentence because doing so would violate the substantive prohibition on the execution of ID persons set forth by *Atkins*, as well as *Moore–I*'s mandate that *current* diagnostic standards be used in an ID determination. *Atkins*, 536 U.S. at 321; *Moore–I*, 137 S. Ct. at 1050–53. The Panel failed to address this assertion. Bourgeois also argued that the plain language of the FDPA prohibited the *carrying out* of a death sentence on an ID defendant. As noted above, the Panel disagreed with this contention, but the Panel's analysis was contrary to Supreme Court precedent, the structure of the statute, and its legislative history. Because no court has adequately addressed this second theory of cognizability, rehearing is appropriate.

## CONCLUSION

For these reasons, the petition for rehearing or rehearing en banc should be granted.

Respectfully submitted,

/s/ *Peter Williams*
Peter Williams
    *Counsel of Record*
Victor J. Abreu
Katherine Thompson
Assistant Federal Defenders
Federal Community Defender Office for
    the Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215–928–0520

Dated: October 13, 2020

**<u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>**

1.      This petition complies with the type-volume limitations of Fed. R. App. P. 35(b)(2)(B) and 40(b)(1), as modified by this Court's order granting Petitioner-Appellee's Motion for Leave to File Overlength Petition for Rehearing En Banc, *see* Doc. 41, because it contains 4,717 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5),the type style requirements of Fed. R. App. P. 32(a)(6), and Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

*/s/ Peter Williams*
Peter Williams

## CERTIFICATE OF SERVICE

I, Peter Williams, hereby certify that on October 13, 2020, I electronically filed the foregoing petition with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Peter Williams*
Peter Williams