No. 20-1891

# In the United States Court of Appeals for the Seventh Circuit

---

**ALFRED BOURGEOIS,**
**PETITIONER-APPELLEE**

v.

**T.J. WATSON, WARDEN, AND UNITED STATES OF AMERICA,**
**RESPONDENTS-APPELLANTS**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, D. CT. NO. 2:19-CV-392 (HON. JANE MAGNUS-STINSON) **(CAPITAL CASE)**

---

**RESPONSE OF THE UNITED STATES TO APPELLANT'S PETITION FOR PANEL REHEARING OR REHEARING EN BANC**

---

JOSH J. MINKLER
    United States Attorney
    Southern District of Indiana

PAULA C. OFFENHAUSER
    Assistant United States Attorney
    Southern District of Texas

BRIAN C. RABBITT
    Acting Assistant Attorney General

ROBERT A. ZINK
    Acting Deputy Assistant
    Attorney General

CHRISTOPHER J. SMITH
    Attorney
    Appellate Section
    Criminal Division
    United States Department of Justice
    950 Pennsylvania Ave., NW
    Washington, DC 20530
    (202) 532-4154
    Christopher.J.Smith@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

STATEMENT ..................................................................................................................1

ARGUMENT ...................................................................................................................7

    I.     THE PANEL CORRECTLY HELD THAT THE SAVING CLAUSE DOES NOT PERMIT BOURGEOIS TO RELITIGATE HIS INTELLECTUAL-DISABLIITY CLAIM IN A § 2241 PETITION ....................................................................8

    II.    THE PANEL CORRECTLY HELD THAT THE FDPA DOES NOT ALLOW BOURGEOIS TO EVADE THE SAVING CLAUSE BY ATTEMPTING TO STYLE HIS CLAIM AS CHALLENGING THE EXECUTION OF HIS SENTENCE........... 12

CONCLUSION ..............................................................................................................15

CERTIFICATE OF SERVICE......................................................................................17

CERTIFICATE OF COMPLIANCE............................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Atkins v. Virginia,*
   536 U.S. 304 (2002) ................................................................. 2, 13

*Barr v. Lee,*
   140 S. Ct. 2590 (2020) ................................................................15

*Barr v. Roane,*
   140 S. Ct. 353 (2019) ............................................................. 1, 15

*Bourgeois v. United States,*
   547 U.S. 1132 (2006) ..................................................................2

*Bourgeois v. United States,*
   574 U.S. 827 (2014) ....................................................................4

*Busby v. Davis,*
   925 F.3d 699 (5th Cir. 2019) ...................................................14

*Ford v. Wainwright,*
   477 U.S. 399 (1986) ..................................................................14

*Garza v. Lappin,*
   253 F.3d 918 (7th Cir. 2001) .....................................................8

*Hall v. Florida,*
   572 U.S. 701 (2014) ............................................................. 5, 13

*In re Bourgeois,*
   902 F.3d 446 (5th Cir. 2018) .....................................................4

*In re Cathey,*
   857 F.3d 221 (5th Cir. 2017) ...................................................12

*In re Davenport,*
   147 F.3d 605 (7th Cir. 1998) .....................................................8

*In re Johnson,*
   935 F.3d 284 (5th Cir. 2019) ...................................................12

*In re Richardson*,
  802 F. App'x 750 (7th Cir. 2020) ...............................................................12

*Lee v. Watson*,
  964 F.3d 663 (7th Cir. 2020) ....................................................................8

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*,
  851 F.3d 1076 (11th Cir. 2017) (en banc) ...............................................10

*Moore v. Texas*,
  137 S. Ct. 1039 (2017) ...................................................................4, 5, 11

*Moore v. Texas*,
  139 S. Ct. 666 (2019) ....................................................................4, 5, 11

*Prost v. Anderson*,
  636 F.3d 578 (10th Cir. 2011) .................................................................10

*Purkey v. United States*,
  964 F.3d 603 (7th Cir. 2020) ..........................................................passim

*United States v. Bourgeois*,
  423 F.3d 501 (5th Cir. 2005) ....................................................................2

*United States v. Bourgeois*,
  537 F. App'x 604 (5th Cir. 2013) .............................................................4

*United States v. Webster*,
  421 F.3d 308 (5th Cir. 2005) ..................................................................12

*Valona v. United States*,
  138 F.3d 693 (7th Cir. 1998) ............................................................14, 15

*Webster v. Daniels*,
  784 F.3d 1123 (7th Cir. 2015) ............................................................8, 10

*Williams v. Kelley*,
  858 F.3d 464 (8th Cir. 2017) ..................................................................14

**Statutes**

18 U.S.C. § 7.................................................................................................................2

18 U.S.C. § 1111 ..........................................................................................................2

18 U.S.C. § 3596 ...................................................................................................2, 5, 13

28 U.S.C. § 2255 ...................................................................................................passim

Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181 ............................13

**Other Authorities**

134 Cong. Rec. 22,993 (1988)......................................................................................13

136 Cong. Rec. S6873-03 (daily ed. May 24, 1990), *available at* 1990 WL 69446 ..........13

The panel's decision that the saving clause, 28 U.S.C. § 2255(e), forecloses Petitioner-Appellee Alfred Bourgeois's habeas petition is correct, rests on a straightforward application of this Court's prior precedent, and does not conflict with any decision of the Supreme Court. There is no basis for either panel rehearing or rehearing en banc. Consistent with the Supreme Court's recent observation that capital cases should be resolved "with appropriate dispatch," *Barr v. Roane*, 140 S. Ct. 353, 353 (2019)—and with the panel's expedition of the en banc proceedings in this case—the government respectfully requests that the Court rule on Bourgeois's petition as promptly as feasible (if possible, within fourteen days).

1. On June 27, 2002, Bourgeois savagely beat his two-year-old daughter, JG, while on a United States Navy base. Bourgeois, a long-haul truck driver, had driven to the Corpus Christi Naval Air Station in his 18-wheeler truck to make a delivery. App. 27-28.[1] As the truck approached the warehouse on the naval base, JG tipped over her "training potty" in the truck. *Id.* at 28. Bourgeois grabbed JG by the shoulders and "slammed the back of her head into the front and side window area around the dashboard four times." *Id.* JG died the following day. *Id.*

Bourgeois's beating of JG on the naval base was the last of many that he inflicted

---

[1] "App." refers to the government's appendix. "Dkt." refers to the docket entries in No. 2:19-cv-392 (S.D. Ind.), and "S.D. Tex. Dkt." refers to docket entries in No. 2:02-cr-216 (S.D. Tex.). "Op." refers to this Court's slip opinion in this case, issued on October 6, 2020.

on the child. Bourgeois "relentlessly tortured JG by biting her all over her body, burning her, whipping her with belts, extension cords, and his hands; beating her with a baseball bat, shoes, and other objects; duct-taping her mouth; and forcing her to drink his urine." *Id.* at 266. There were also indications that JG had suffered sexual abuse. *Id.* at 268. Bourgeois told witnesses that he wanted JG dead "because he did not want to have to pay child support" to JG's mother. *Id.*

2. Following a jury trial in the Southern District of Texas ("Texas district court"), Bourgeois was convicted of first-degree murder on federal property, in violation of 18 U.S.C. §§ 7 and 1111. S.D. Tex. Dkt. 264. The jury recommended a death sentence. S.D. Tex. Dkt. 299. The district court imposed that sentence, S.D. Tex. Dkt. 303, and the Fifth Circuit affirmed, *United States v. Bourgeois*, 423 F.3d 501 (5th Cir. 2005). The Supreme Court denied certiorari. *Bourgeois v. United States*, 547 U.S. 1132 (2006).

3. Bourgeois filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. S.D. Tex. Dkt. 396. He raised fourteen claims, including, as relevant here, that he cannot be executed pursuant to both *Atkins v. Virginia*, 536 U.S. 304 (2002), and the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3596(c), because he is intellectually disabled. *Id.* at 3. Following a week-long evidentiary hearing, App. 72-73, 150, the Texas district court denied the motion in a 225-page order, *id.* at 35-259. The court devoted more than 50 pages of its order to analyzing Bourgeois's intellectual-disability claim, applying the *Atkins* criteria for intellectual disability as defined by the 11th edition of the American Association on Intellectual and Developmental

Disabilities clinical manual ("AAIDD-11"), and the 4th edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association ("DSM-IV"). *Id.* at 79-80. Specifically, the court addressed the three criteria for intellectual disability: (1) significantly subaverage intellectual functioning; (2) related significant limitations in adaptive skill areas; and (3) the manifestation of those limitations before age eighteen. *Id.* at 80.

While the Texas district court found that the medical experts had scored Bourgeois's Full Scale IQ range at 70 to 75—within the presumptive range accepted by the medical community as a qualifying score for a diagnosis of intellectual disability, App. 83-85 & nn.31-34—the court accepted the testimony of the government's expert that the IQ tests did not measure Bourgeois's "true level" of intellectual functioning because, among other things, Bourgeois had not put forth his full effort on the tests, App. 89-93. Nevertheless, the court made clear that "[t]his is not a case where a man's life depends on a few points' difference in test results," and turned to the other relevant factors. *Id.* at 98; *see also id.* at 99-100 & n.48. It examined the experts' clinical reports pertaining to Bourgeois's adaptive skills and ultimately decided to credit the government expert's finding that Bourgeois has not manifested substantial adaptive deficits. *Id.* at 103, 124-25. Among other things, the court found that the defense expert had failed to assess the validity and credibility of lay witnesses, *id.* at 116, and it rejected the defense expert's clinical assessment based on a failure "to make a full review of available evidence relating to Bourgeois' adaptive abilities," *id.* at 124. The court also credited the

government expert's opinion that "while [Bourgeois's] functioning may have been relatively impaired in his early childhood, he appears to have developed greater independence of functioning by the time he finished high school." *Id.* at 124-25.

After the district court denied his § 2255 motion, Bourgeois sought a certificate of appealability from the Fifth Circuit on three issues, not including his intellectual-disability claim. *Id.* at 271-72 & n.17. The Fifth Circuit denied Bourgeois's request, *United States v. Bourgeois*, 537 F. App'x 604 (5th Cir. 2013) (per curiam) (unpublished), and the Supreme Court again denied certiorari, *Bourgeois v. United States*, 574 U.S. 827 (2014). Thereafter, Bourgeois sought, and the Fifth Circuit denied, authorization to file a second or successive § 2255 motion reviving his intellectual-disability claim on the basis of intervening Supreme Court's decisions applying *Atkins*, namely *Moore v. Texas*, 137 S. Ct. 1039 (2017) ("*Moore I*"), and *Moore v. Texas*, 139 S. Ct. 666 (2019) (per curiam) ("*Moore II*"). *See In re Bourgeois*, 902 F.3d 446 (5th Cir. 2018).

4. On August 15, 2019, shortly after the government had set a date for Bourgeois's execution in January 2020, Bourgeois filed a habeas petition pursuant to 28 U.S.C. § 2241, as well as a motion to stay his execution, in the Southern District of Indiana. Dkts. 1, 3. In that petition, Bourgeois again argued that he is intellectually disabled and ineligible for the death penalty under *Atkins* and the FDPA. Dkt. 1, at 10-45.

Ordinarily, a habeas petition filed by a federal prisoner "shall not be entertained." 28 U.S.C. § 2255(e). But under the "saving clause," a federal prisoner may seek habeas

relief if it "appears that the remedy by motion [under 28 U.S.C. § 2255] is inadequate or ineffective to test the legality of his detention." *Id.* Bourgeois asserted that relief is appropriate under § 2241 because, in his view, his claim relies on Supreme Court precedent (namely *Moore I* and *Moore II*), as well as diagnostic criteria that were not available to him in his § 2255 proceeding. Dkt. 1, at 24, 68-71. Bourgeois also argued that because he challenges the execution of his sentence pursuant to the FDPA, 18 U.S.C. § 3596(c), his petition may proceed under § 2241. Dkt. 1, at 71-73.

On March 10, 2020, the district court granted Bourgeois's motion to stay his execution pending the disposition of his habeas petition. App. 1-13. While that court recognized that Bourgeois had previously raised the same intellectual-disability claim under the Eighth Amendment and the FDPA in his § 2255 motion, *id.* at 3, it nevertheless concluded that Bourgeois had made a strong showing that he is likely to succeed on the merits of his claim, *id.* at 4-5. Because the government's lengthy response to Bourgeois's petition—which asserted that both the saving clause and the abuse-of-the-writ doctrine foreclosed the intellectual-disability claims in his habeas petition—did not expressly address the FDPA, the court found that the government had waived any argument that Bourgeois's FDPA claim cannot proceed under § 2241. *Id.* After finding that the claim could proceed based on waiver, the district court determined that Bourgeois had made a strong showing of intellectual disability. *Id.* at 7-8 (citing *Hall v. Florida*, 572 U.S. 701, 722 (2014)). Among other things, the court noted Bourgeois's IQ scores; evidence of adaptive deficits; and a report from a doctor that the onset of

Bourgeois's deficiencies began before age eighteen. *Id.* at 8-9.[2]

5. The government appealed the district court's entry of a stay of execution, and on October 6, 2020, a panel of this Court reversed the district court and held that Bourgeois could not bring his intellectual-disability claim in a § 2241 petition because his claim does not meet the requirements of the saving clause, 28 U.S.C. § 2255(e).

After holding that the government had neither waived nor forfeited arguments below, Op. 13-18, the panel rejected Bourgeois's contention that the Texas district court had "'eschewed medical standards'" in denying Bourgeois's intellectual disability claim, *id.* at 25. The panel explained that, among other things, the Texas "district court identified, and applied, the most recent medical guidance on intellectual disabilities," and it did not "r[u]n afoul of clinical diagnostic standards" in its analysis. *Id.* at 25-26.

The panel then held that, regardless, Bourgeois's claim cannot pass through the saving clause. *Id.* at 26-27. It emphasized that this Court has recently held that the words "inadequate or ineffective" in 28 U.S.C. § 2255(e) "'must mean something more than unsuccessful,'" and "'there must be a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem.'" Op. 20 (quoting *Purkey v. United States*, 964 F.3d 603, 615 (7th Cir. 2020)). The panel explained that "Bourgeois's § 2255 motion *did* raise the errors that he now seeks to correct," and "the savings clause does not apply every time the Supreme Court clarifies the law that

---

[2] The district court subsequently denied the government leave to file a surreply on the FDPA issue and denied its motion for reconsideration. Dkts. 20, 21, 22.

governed a prisoner's § 2255 motion, or, where intellectual disability is at issue, every time the medical community updates its diagnostic standards." *Id.* at 27. "Were that the case, we would truly be facing 'a never-ending series of reviews and re-reviews.'" *Id.* (quoting *Purkey*, 964 F.3d at 615). The panel further held that the text of the FDPA— which prohibits the execution of a defendant who "is" intellectually disabled—does not alter this conclusion. *Id.* at 29.

After reversing the district court, the panel shortened the time for Bourgeois to petition for rehearing to seven days and ordered that the mandate issue immediately upon the denial of any such petition. *See* Op. 32.

## ARGUMENT

The panel correctly determined that the Texas district court properly applied clinical diagnostic standards when denying the intellectual-disability claim in Bourgeois's § 2255 motion and that, in any event, Bourgeois's attempt to reassert the same intellectual-disability claim in a § 2241 habeas petition is foreclosed by the saving clause of § 2255(e). That provision permits a federal prisoner to seek habeas relief only if a § 2255 motion "is inadequate or ineffective to test the legality of his detention." Bourgeois cannot meet this standard. In his § 2241 petition, Bourgeois presented the exact same intellectual disability claim—without any new evidence or any retroactive change in the law—that he previously raised in his § 2255 motion. The Texas district court held a lengthy evidentiary hearing on the issue and rejected that claim a decade ago. Bourgeois did not appeal that decision, and he cannot relitigate it now. Bourgeois

cannot show that § 2255 was inadequate or ineffective. The panel decision is correct and does not conflict with the decisions of either the Supreme Court or this Court. To the contrary, the panel decision is a straightforward application of this Court's established precedent construing the saving clause. No further review is warranted.

## I. THE PANEL CORRECTLY HELD THAT THE SAVING CLAUSE DOES NOT PERMIT BOURGEOIS TO RELITIGATE HIS INTELLECTUAL-DISABLIITY CLAIM IN A § 2241 PETITION

This Court's cases construing the saving clause—including its two most recent cases construing the saving clause in capital cases—leave no doubt that § 2255 was neither inadequate nor ineffective for Bourgeois to raise his claim that he cannot be executed because he is intellectually disabled.

Prior to this year, this Court had examined the contours of the saving clause in three central cases, *In re Davenport*, 147 F.3d 605 (7th Cir. 1998); *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001); and *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015). As the government detailed in its opening brief (Br. 24-27), Bourgeois's claim does not align with any of the past instances where this Court has found the saving clause satisfied because, among other things, Bourgeois did not rely on a retroactive statutory decision (*Davenport*), a decision by an international court that did not exist at the time of his § 2255 motion (*Garza*), or new evidence that existed at the time of his trial but could not be obtained despite the diligence of defense counsel (*Webster*).

In its two most recent cases, *Purkey v. United States*, 964 F.3d 603 (7th Cir. 2020), and *Lee v. Watson*, 964 F.3d 663 (7th Cir. 2020), this Court confirmed that the saving

clause prevents defendants like Bourgeois from relitigating a claim that he could have—and did—raise in his § 2255 motion. In *Purkey*, for example, this Court confronted a capital defendant's attempt to litigate in a § 2241 petition new claims of ineffective assistance of counsel based on his theory that § 2255 is "structurally inadequate to test the legality of a conviction and sentence any time a defendant receives ineffective assistance of counsel in his [§ 2255] motion." 964 F.3d at 614. The Court rejected this argument, explaining that while *Davenport*, *Garza*, and *Webster* do not "create rigid categories delineating when the [saving clause] is available," those cases demonstrate, at a minimum, "that the words 'inadequate or ineffective,' taken in context, must mean something more than unsuccessful." *Id.* at 614-15. "[T]here must be a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem." *Id.* at 615. The Court emphasized that "the mechanisms of section 2255 gave [the defendant] an opportunity to complain about ineffective assistance of trial counsel, and he took advantage of that opportunity." *Id.* at 616-17. It therefore held that "[t]here was nothing structurally inadequate or ineffective about section 2255 as a vehicle to make those arguments." *Id.* at 617.

The panel's decision in this case represents a straightforward application of this precedent. As the panel explained, Bourgeois cannot "demonstrate that it was 'impossible' for [him], armed with *Atkins* and the latest clinical diagnostic standards, to demonstrate that he was intellectually disabled" in his § 2255 motion. Op. 28. Indeed, "Bourgeois's § 2255 motion *did* raise the errors that he now seeks to correct.*" Id.* at 27.

9

Bourgeois has presented no "newly discovered evidence," and he had "a full and fair opportunity to litigate his intellectual-disability claim before the district court that decided his § 2255 motion." *Id.* at 31. The decision is consistent with this Court's other cases construing the saving clause, including *Davenport*, *Garza*, and *Webster*.[3]

Bourgeois's arguments to the contrary are meritless. *First*, while Bourgeois argues (Pet. 11) that his claim may pass through the saving clause because intervening developments purportedly demonstrate he is categorically exempt from execution, he has presented neither new evidence, nor an intervening, retroactive decision of the Supreme Court. Although the Supreme Court decided the *Moore* cases after the Texas district court's decision, even putting aside the fact that those cases are not retroactive, nothing prevented Bourgeois from pursuing similar arguments in his § 2255 motion.

---

[3] Bourgeois's focus (Pet. 1) on *Webster*, 784 F.3d 1123, is misplaced. In that case, this Court allowed a defendant to proceed by way of a § 2241 petition when he presented newly discovered evidence that "existed before the time of the trial" and was unavailable "despite diligence on the part of the defense," not because of "missteps by" the defense. *Id.* at 1140 (emphasis omitted). Bourgeois, by contrast, has presented no new evidence.

We also note that, in the government's view, this Court's cases applying the saving clause—including *Davenport*, *Garza*, and *Webster*—are incorrectly decided. The government agrees with the Tenth Circuit's decision in *Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011) (Gorsuch, J.), the Eleventh Circuit's en banc decision in *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (en banc), and the dissent in *Webster*, 784 F.3d at 1146-54 (Easterbrook, J., dissenting), which concluded that the saving clause does not permit a defendant to challenge his conviction or sentence in a § 2241 habeas petition on the basis of an intervening judicial decision or newly discovered evidence. Thus, Bourgeois's habeas petition not only fails under what the government believes is the correct construction of the saving clause but also under the Court's much more defendant-favorable interpretation of that provision.

As the panel explained, "Bourgeois hired an expert [in his § 2255 proceeding] to testify to precisely what the Supreme Court eventually clarified in [those cases]—namely, that the adaptive functions inquiry focuses on adaptive deficits." Op. 28.

*Second*, Bourgeois criticizes (Pet. 13-15) the panel's conclusion that the Texas district court's decision was a reliable judicial determination of his intellectual-disability claim and consistent with subsequent developments, but the panel's determination is correct and, in any event, is fact-bound and does not merit this Court's review en banc. As an initial matter, the panel correctly concluded that "it is not for us to decide whether the § 2255 court got it right or wrong" but rather whether "there was something 'structurally inadequate or ineffective about section 2255 as a vehicle' for Bourgeois." Op. 26 (quoting *Purkey*, 964 F.3d at 616-17). Regardless, as the panel explained, "nowhere in *Moore I* or *Moore II* did the Supreme Court say that a court must accept an IQ score . . . when a psychological expert credibly testifies that the subject did not put forth his best effort on the test." *Id.* And the Texas district court did not depart from diagnostic standards on the adaptive-deficits prong because unlike "in the *Moore* cases, the § 2255 court did not view Bourgeois's other childhood problems as evidence that he was not intellectually disabled.*" Id.* at 25-26.

*Third*, contrary to Bourgeois's argument (Pet. 15-16) that he may proceed with his § 2241 petition because his pursuit of those claims in the Fifth Circuit would have been futile, Bourgeois *did* raise his claim in the Texas district court, and "'inadequate or ineffective,' taken in context, must mean something more than unsuccessful." *Purkey*,

11

964 F.3d at 615. Moreover, the sole case Bourgeois cites as demonstrating the purported futility of his claim—*United States v. Webster*, 421 F.3d 308, 313 (5th Cir. 2005)—merely affirmed a district court's fact-bound analysis and does not support Bourgeois's contention that Fifth Circuit precedent foreclosed his arguments.

*Fourth*, Bourgeois's argument that the *Moore* decisions rendered his claim viable by making *Atkins* newly available to him is equally meritless. *Atkins* was decided eight years before Bourgeois's § 2255 evidentiary hearing, so the retroactivity of that decision is irrelevant. And even if the *Moore* decisions were retroactive—an argument Bourgeois does not make—or somehow made *Atkins* newly retroactive, those would be retroactive *constitutional* decisions, and Bourgeois's remedy was to seek to file a second or successive § 2255 motion pursuant to 28 U.S.C. § 2255(h).[4]

## II. THE PANEL CORRECTLY HELD THAT THE FDPA DOES NOT ALLOW BOURGEOIS TO EVADE THE SAVING CLAUSE BY ATTEMPTING TO STYLE HIS CLAIM AS CHALLENGING THE EXECUTION OF HIS SENTENCE

The panel also correctly concluded that Bourgeois cannot evade the saving clause

---

[4] Bourgeois suggests that the Fifth Circuit incorrectly denied him the opportunity to file a second § 2255 motion by highlighting two cases where that court allowed a defendant to file such a motion because *Atkins* had become newly available to him. *See* Pet. 16 (citing *In re Johnson*, 935 F.3d 284, 293 (5th Cir. 2019), and *In re Cathey*, 857 F.3d 221, 232 (5th Cir. 2017) (per curiam)). "*Cathey* and *Johnson* involved states that applied a strict cutoff [IQ] score of 70, and habeas petitioners that had *never* presented an intellectual disability claim in a § 2254 petition." *In re Richardson*, 802 F. App'x 750, 757 n.3 (7th Cir. 2020) (per curiam). By contrast, Bourgeois actually did previously raise an intellectual-disability claim that did not implicate a rigid IQ cutoff, and, in any event, the panel correctly noted that it could not "overrule the Fifth Circuit." Op. 28.

and applicable procedural requirements by attempting to characterize his claim as challenging the execution of his sentence under the FDPA, which provides that "[a] sentence of death shall not be carried out upon a person who is mentally retarded." 18 U.S.C. § 3596(c). Bourgeois's arguments to the contrary (Pet. 17-20) are meritless.

*First*, the FDPA's language is, in substance, no different than the language that the Supreme Court used in *Atkins* and its progeny. *See, e.g.*, *Hall*, 572 U.S. at 708 ("[P]ersons with intellectual disability may not be executed."). The FDPA thus does not permit seriatim relitigation of a defendant's intellectual disability any more than *Atkins* does.

*Second*, the FDPA's legislative history also cuts against Bourgeois's argument. Section 3596(c) originally derives from language in the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7001(*l*), 102 Stat. 4181, 4390. *See, e.g.*, *Atkins*, 536 U.S. at 314 & n.10. During debate on that legislation, the sponsor of the relevant amendment was clear that a defendant's intellectual-disability claim "would be handled *as any other defense* would be when it came to this kind of a crime or the sentencing thereof." 134 Cong. Rec. 22,993 (1988) (statement of Rep. Levin) (emphasis added).[5]

---

[5] Bourgeois highlights (Pet. 18) comments by Senator Orrin Hatch, which he asserts support the notion that he can raise his claim "at any time." Senator Hatch made the cited statement in support of an amendment to allow imposition of the death penalty on certain intellectually disabled defendants. 136 Cong. Rec. S6873-03, S6876 (daily ed. May 24, 1990), *available at* 1990 WL 69446. That amendment failed, and further debate revealed no intention by the proponents of the FDPA to allow a defendant to raise a claim "at any time." *Id.* at S6873-83.

*Third*, courts have rejected similar attempts to relitigate intellectual-disability claims. In *Williams v. Kelley*, 858 F.3d 464 (8th Cir. 2017) (per curiam), for example, the Eighth Circuit rejected the argument that an intellectual-disability claim did not ripen until the issuance of an execution warrant because, unlike an incompetency claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), "an *Atkins* claim ripens before an execution is imminent and thus is governed by the requirements of [28 U.S.C.] § 2244(b) if raised in a second or successive habeas petition." *Williams*, 858 F.3d at 472. By contrast, "*Ford* and its progeny focus on the inmate's competency at the time of execution," which "makes sense because competency can be lost or regained over time." *Id.* (internal quotation marks omitted). *See also Busby v. Davis*, 925 F.3d 699 (5th Cir. 2019).

Therefore, contrary to Bourgeois's argument (Pet. 19-20), the FDPA does not provide an avenue for him to evade the saving clause merely by framing his claim as challenging the carrying out of his sentence. "A person who is found to be intellectually disabled is permanently ineligible to be executed, and the sentence of death is vacated." *Busby*, 925 F.3d at 713. However framed, Bourgeois's claim challenges the legality of his sentence; indeed, he sought in his petition "habeas relief from [his] convictions and sentences, including his sentence of death." Dkt. 1, at 74. As such, this Court's decision in *Valona v. United States*, 138 F.3d 693 (7th Cir. 1998), confirms that Bourgeois cannot evade the saving clause to press this claim in a § 2241 petition. In *Valona*, the Court explained that while a claim pertaining to the execution of a sentence may be brought under § 2241, nothing "implies that a federal prisoner may use a petition under § 2241

to call into question the validity of a conviction or sentence that has already been subject to collateral review." *Id.* at 694.

As the panel explained, Bourgeois's statutory argument has "no textual (or other) support." Op. 29. Accordingly, the panel correctly declined to "accept Bourgeois's sweeping argument that a fresh intellectual-disability claim arises every time the medical community updates its literature." *Id.* Concluding otherwise would preclude the finality of federal capital sentences.

* * *

Bourgeois was convicted more than sixteen years ago of a horrific federal crime. His execution date was initially announced more than fifteen months ago, and his execution was initially scheduled for more than nine months ago. The other four federal death-row inmates whose executions were scheduled at the same time—all of whom, like Bourgeois, murdered children—have since been executed. *See, e.g., Barr v. Lee*, 140 S. Ct. 2590 (2020). No other impediments to Bourgeois's execution exist, and the government is prepared to reschedule it promptly. In light of both the need for dispatch in capital cases, *see Roane*, 140 S. Ct. at 353, and the panel's expedition of en banc proceedings in this case, the government respectfully requests that the Court rule as promptly as feasible on Bourgeois's petition (if possible, within fourteen days).

## CONCLUSION

For the foregoing reasons, this Court should deny Bourgeois's petition for rehearing or rehearing en banc.

15

Respectfully submitted,

JOSH J. MINKLER
    United States Attorney
    Southern District of Indiana

PAULA C. OFFENHAUSER
    Assistant United States Attorney
    Southern District of Texas

BRIAN C. RABBITT
    Acting Assistant Attorney General

ROBERT A. ZINK
    Acting Deputy Assistant
    Attorney General

/s/Christopher J. Smith
CHRISTOPHER J. SMITH
    Attorney
    Appellate Section
    Criminal Division
    United States Department of Justice
    950 Pennsylvania Ave., NW
    Washington, DC 20530
    (202) 532-4154
    Christopher.J.Smith@usdoj.gov

# CERTIFICATE OF SERVICE

I certify that on October 30, 2020, I caused the foregoing response to be served upon the Filing Users identified below through the Court's Case Management/Electronic Case Files ("cm/ecf") system:

Victor J. Abreu
Katherine Thompson
Peter K. Williams
Office of the Federal Public Defender
*Attorneys for Alfred Bourgeois*

s/Christopher J. Smith
CHRISTOPHER J. SMITH
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 532-4154
Christopher.J.Smith@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1.  This response complies with the type-volume limitations of Fed. R. App. P. 35(b)(2) and 40(b), as modified by this court's October 27, 2020 order requiring the response be no longer than 15 pages, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This response complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) and Seventh Circuit Rule 32(b) because it has been prepared in a proportionally spaced 14-point typeface using Microsoft Word.

DATED:    OCTOBER 30, 2020

s/Christopher J. Smith
CHRISTOPHER J. SMITH
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 532-4154
Christopher.J.Smith@usdoj.gov
