# SUPREME COURT OF THE UNITED STATES

No. 20A104 (20–6500)

## ALFRED BOURGEOIS *v.* T. J. WATSON, WARDEN, ET AL.

ON APPLICATION FOR STAY AND PETITION FOR WRIT OF
CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[December 11, 2020]

The application for stay of execution of sentence of death presented to JUSTICE BARRETT and by her referred to the Court is denied. The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN joins, dissenting from the denial of certiorari and application for stay.

The Federal Death Penalty Act (FDPA) provides that "a sentence of death shall not be carried out upon a person who is mentally retarded." 18 U. S. C. §3596(c). The Court today allows the execution of Alfred Bourgeois to proceed even though Bourgeois, who has an IQ between 70 and 75, argues that he is intellectually disabled under current clinical standards. I would grant his petition to address whether the FDPA prohibits his execution.

The District Court in this case applied currently prevailing diagnostic standards to find that Bourgeois had made a "strong showing" that he is intellectually disabled. See *Bourgeois* v. *Warden*, 2020 WL 1154575, \*4 (SD Ind., Mar. 10, 2020). The Court of Appeals for the Seventh Circuit reversed. 977 F. 3d 620, 638 (2020). It did not do so because Bourgeois is fit to be executed under the FDPA, but rather because, nearly a decade ago, a different Federal District Court found that Bourgeois was not intellectually disabled

under the standards in place at that time. See *United States* v. *Bourgeois*, 2011 WL 1930684 (SD Tex., May 19, 2011). That court, however, relied heavily on its own lay observations and assumptions about how people with intellectual disabilities act and what they are capable of doing. See, *e.g., id.,* at *29 ("Bourgeois graduated from high school"); *id.,* at *43 ("[H]e can engage in the give-and-take of normal conversation"). Both this Court and the medical community have since squarely rejected that type of inexpert analysis. See, *e.g., Moore* v. *Texas*, 581 U. S. ___, ___ (2017) (slip op., at 15) (holding it error to rely on "lay perceptions of intellectual disability"); *Moore* v. *Texas*, 586 U. S. ___, ___ (2019) (*per curiam*) (slip op., at 7) (finding the state court erred in relying on the defendant's ability to provide "'coherent' testimony"); Pet. for Cert. 17–18 (citing expert groups debunking these stereotypes).

In the Seventh Circuit's view, even if Bourgeois is intellectually disabled under today's standards, he is nonetheless procedurally barred from raising that claim anew due to the federal habeas statute's general prohibition on second or successive petitions. 28 U. S. C. §2255(h). As Bourgeois notes, however, that statute permits successive habeas petitions if the first was "inadequate or ineffective to test the legality of [an inmate's] detention." §2255(e). Bourgeois contends that his first petition was inadequate to determine whether he "is" an intellectually disabled person against whom "a sentence of death shall not be carried out," §3596(c), because his 2011 intellectual disability claim could not be assessed under the materially different standards now prevailing at the time of his execution.

The FDPA's text and structure lend significant support to Bourgeois' argument that the FDPA directs courts to look to current standards. Most limitations in the FDPA apply to imposing a death sentence, not implementing it. See, *e.g.,* 18 U. S. C. §3591 ("[N]o person may be sentenced to death who was less than 18 years of age at the time of the

offense"); §3591(a)(2) (crimes must be committed "intentionally" for a person to be "sentenced to death"); §3592(a) (listing mitigating factors to be considered "in determining whether a sentence of death is to be imposed"); §3593 (listing procedural requirements for sentencing hearings). By contrast, the FDPA separately forbids the execution of certain, limited categories of people: the pregnant, the mentally incapacitated, and the intellectually disabled. These prohibitions appear in a section titled "Implementation of a sentence of death," and are phrased in the present tense: "A sentence of death shall not be carried out upon" a woman "while she is pregnant," "a person who, as a result of a mental disability, lacks the mental capacity to understand the death penalty," and "a person who is mentally retarded." §§3596(b), (c).

The Government counters that, because intellectual disability, unlike pregnancy and capacity, is a permanent condition evidently present by the time a person reaches the age of majority, a federal prisoner raising an intellectual disability claim needs only one opportunity to prove his case. But while a prisoner's intellectual disability may not change, the medical standards used to assess that disability constantly evolve as the scientific community's understanding grows. See *Moore*, 581 U. S., at \_\_\_, (slip op., at 17) ("Reflecting improved understanding over time, . . . current [clinical] manuals offer the best available description of how mental disorders are expressed and can be recognized by trained clinicians" (internal quotation marks omitted)); see also *Hall* v. *Florida*, 572 U. S. 701, 712–714 (2014).

Bourgeois thus puts forth a strong argument that federal prisoners sentenced to death should be able to file new habeas petitions if they can show a potentially dispositive change in the diagnostic landscape following their first petition. The Seventh Circuit's position, on the other hand, seemingly allows the United States to "carr[y] out" a death sentence upon a person who "is" indisputably intellectually

disabled under current diagnostic standards, contrary to the FDPA's express terms. 18 U. S. C. §3596(c).

Without the benefit of full briefing and argument, I cannot say for certain whether Bourgeois is correct. But that is not the test for whether this Court should grant certiorari. Bourgeois presents a serious question that is likely to recur. Waiting to grant certiorari may mean permitting the illegal execution of people with intellectual disabilities. I would therefore resolve this open legal issue before sanctioning Bourgeois' execution. I respectfully dissent from the denial of certiorari.